**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TIFFIN EPS, LLC** and **TIFFIN MOUNT AIRY, LLC**, on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br>   v.<br><br>**GRUBHUB INC.,**<br><br>   Defendant. | Case No. _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Tiffin EPS, LLC and Tiffin Mount Airy, LLC ("Plaintiffs"), by and through their undersigned counsel, bring this class action on behalf of themselves and a proposed class of all others similarly situated, against Defendant Grubhub Inc. ("Grubhub").  Plaintiffs make the following allegations based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation undertaken by their counsel of the contracts at issue, Grubhub financial records, public records, Grubhub's filings with the Securities and Exchange Commission ("SEC"), and online postings and articles.

## I.    NATURE OF THE CASE

1.    For at least seven years, if not longer, Grubhub has been withholding commissions for sham telephone food orders, depriving more than 80,000 restaurants of revenues and profits that rightfully belong to them.

2.    While Grubhub boasts that it is "the leading online and mobile platform" for restaurant takeout orders and brags that by using the platform "diners do not need to place their orders over the phone," Grubhub has nevertheless been charging restaurants commissions on

telephone calls, regardless of whether those calls were actually made to place orders for takeout. Grubhub has done this, even though the restaurants— *not Grubhub*— take the telephone orders, process them, and prepare the food.

3.      Moreover, Grubhub charges these commissions without verifying whether the calls generated actual food orders and has instead relied solely on the length of the call to justify its withholding of revenues and profits that belong to the restaurants—not Grubhub.

4.      In fact, Grubhub has admitted that restaurants "may have been incorrectly charged" for these sham telephone orders.

5.      Grubhub's wrongful conduct includes: (1) failing to disclose in its standard form contracts that Grubhub does not take telephone orders and that instead it issues a new telephone number per restaurant that is advertised on Grubhub's microsite and, when dialed, Grubhub redirects the call to the restaurant itself and records the call; (2) misrepresenting that commissions will only be charged on actual food and beverage orders; (3) failing to disclose in its standard form contract Grubhub's method, if any, for determining which phone calls generate actual food and beverage orders; (4) failing to disclose that Grubhub does not undertake any analysis to determine which telephone calls actually result in food and beverage orders before charging commissions for them; and (5) misrepresenting that commissions are being charged for orders placed through GrubHub.com and generated by Grubhub.

6.      Grubhub's actions, and failure to act when required, have caused Plaintiffs and tens of thousands of other restaurants across the country to suffer harm, including but not limited to lost profits in the tens of millions of dollars over the past seven years.

7.      Plaintiffs seek to remedy these harms and prevent their future occurrence, individually and on behalf of themselves and a proposed class of all other similarly situated

consumers who were wrongfully charged for telephone orders by Grubhub. Plaintiffs assert claims for themselves and on behalf of a nationwide class of consumers for Grubhub's (1) breach of contract, (2) conversion, and (3) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act.

8.      Plaintiffs seek to recover, for themselves and a proposed class of all others similarly situated, actual and statutory damages, injunctive relief, restitution, disgorgement, costs, and reasonable attorneys' fees.

## II.    JURISDICTION AND VENUE

9.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2) because: (i) there are 100 or more members of the Class; (ii) the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; and (iii) at least one member of the Class is a citizen of a State different from Grubhub.

10.     This Court has personal jurisdiction over Grubhub because Grubhub is authorized to do business and regularly conducts business throughout the United States, including Pennsylvania.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, Grubhub is authorized to conduct business in this District, and Grubhub regularly conducts and transacts business in this District and is therefore subject to personal jurisdiction in this District.

## III.   THE PARTIES

12.     Tiffin EPS, LLC is a Pennsylvania Limited Liability Company with its principal place of business located at 8080 Old York Road, Elkins Park, Pennsylvania 19027 ("**Tiffin Elkins Park**"). Tiffin Elkins Park owns and operates a restaurant, Tiffin Indian Cuisine, at that location. Tiffin Elkins Park was injured as a result of Grubhub's conduct described herein.

13.     Tiffin Mount Airy, LLC is a Pennsylvania Limited Liability Company with its principal place of business located at 7105 Emlen Street, Philadelphia, Pennsylvania 19119 ("**Tiffin Mount Airy**"). Tiffin Mount Airy owns and operates a restaurant, Tiffin Indian Cuisine, at that location. Tiffin Mount Airy was injured as a result of Grubhub's conduct described herein.

14.     Grubhub Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 111 W. Washington Street, Suite 2100, Chicago, Illinois 60602.

## IV.     FACTUAL BACKGROUND

### A.     Grubhub's Business Model And Ordering Platform

15.     Grubhub considers itself to be "the leading online and mobile platform for restaurant pick-up and delivery orders, which the Company refers to as takeout."  Grubhub's Form 10-K, dated February 28, 2018, at 3 [hereinafter, "2018 Form 10-K"].[1] Grubhub uses its platform to connect more than 80,000 restaurants with diners in more than 1,600 cities across the United States. *Id.* Grubhub contends that its "powerful two-sided network" creates enhanced value for both diners and restaurants.  *Id.*

#### 1.     Grubhub's Service To Diners

16.     With respect to diners, Grubhub contends that it "makes takeout accessible, simple and enjoyable, enabling them to discover new restaurants and accurately and easily place their orders anytime and from anywhere." *Id.* at 5.

17.     Grubhub's platform helps diners search for and locate local restaurants and place food orders with those restaurants "from any internet-connected device." *Id.* at 3. Grubhub

---

[1]  Grubhub's Form 10-K, dated February 28, 2018, is incorporated by reference as if fully set forth herein.

"generates revenues primarily when diners place an order on its platform." *Id.* Indeed, the number of diners using Grubhub's platform "is a key revenue driver." *Id.* at 29.

18.     Simply put, a hungry diner visits Grubhub's ordering platform—either the website or the mobile app—and searches for restaurants according to various parameters, such as type of food or location.  The diner can then browse the restaurant's menu and place an order for takeout via Grubhub's platform.  Grubhub processes the order and transmits it to the restaurant to be fulfilled.  The restaurant prepares the food and delivers it to the diner, though Grubhub offers delivery services as well.

19.     Grubhub boasts that by using the platform, "diners do not need to place their orders over the phone" which allows diners to order food "without having to talk to a distracted order-taker in an already error-prone process."  *Id.* at 5.

20.     As of December 31, 2017, Grubhub claimed to have 14.5 million "active diners" and more than 334,000 "daily average grubs."  *Id.*

## 2.     Grubhub's Service To Restaurants

21.     For restaurants, Grubhub contends that it provides them "with more orders, helps them serve diners better, facilitates delivery logistics in many markets, and enables them to improve the efficiency of their takeout business."  *Id.* at 4-5.

22.     Diners use Grubhub's platform to place takeout orders with restaurants that have enlisted Grubhub's services.   In turn, restaurants pay a commission on food orders that are processed through Grubhub's platform.  *Id.* at 3.  Grubhub contends that it only gets paid on food orders it generates for restaurants that use its services.  *Id.*

23.     The commissions can vary by restaurant but are "typically a percentage" of each transaction, ranging from 15% to 20% per order.  To increase their prominence and exposure to diners on Grubhub's platform, restaurants can opt to pay a higher commission rate. *See id.* at 4-5.

24.     Though Grubhub primarily markets its online and mobile platforms, it also charges commissions on food orders taken over the telephone. However, Grubhub contracts require that an actual food order must be placed through Grubhub.com for any commission obligation to arise.

25.     For example, the Grubhub contracts with Plaintiffs Mount Airy and Elkins state:

> I agree to pay the advertising fee provided circled above for each "order" (term defined as food and beverage subtotal, including delivery fee, placed through GrubHub.com to my restaurant).

26.     The Plaintiff Mount Airy Grubhub contract further states that:

> In the event orders are placed by telephone using contact information from GrubHub.com the fee shall be determined by my restaurant's monthly fee average as determined from month to month.

27.     Plaintiff Elkins' Grubhub contract permits commissions on "orders" but contains no language about orders placed by telephone through Grubhub.com.

28.     In reality, there is no Grubhub telephone food ordering system. As set forth more fully below, Grubhub creates a local telephone number for each restaurant and advertises that number on the restaurant's microsite on the Grubhub platform.  When a diner uses that telephone number to place a food order (as opposed to ordering on Grubhub's online or mobile platforms), the diner's call is rerouted to the restaurant itself, and Grubhub does not interface with the diner at all. In fact, Grubhub does not play any role in the processing of telephone food orders. Moreover, because the restaurant, rather than Grubhub, handles the telephone calls, Grubhub does not know whether the call actually resulted in a food order or whether it was another type of

phone call. Because Grubhub is not privy to these phone calls as they are taking place, Grubhub simply assumes that any conversation longer than 45 seconds is a food order and charges a commission without verifying whether an order for food was actually placed.

29.     Diners typically pay for their meals via credit card. *See* 2018 Form 10-K. After a diner places an order on Grubhub's online or mobile platform, Grubhub "collects the total amount of the diner's order net of payment processing fees from the payment processor and remits the net proceeds to the restaurant less [Grubhub's] commission." *Id.* Grubhub "also deducts commissions for other transactions that go through its platform, such as cash transactions for restaurant partners, from the aggregate proceeds received." *Id.* Grubhub then "accumulates" these funds and "remits the net proceeds to the restaurants on at least a monthly basis." *Id.*

30.     For the calendar year ending December 31, 2017, Grubhub served more than 80,000 restaurants and generated $683.1 million in revenue. *Id.* at 8, 31. Grubhub is on track to generate over $1 billion in revenue for the 2018 calendar year.

B.     **Grubhub Creates Misleading Telephone Numbers Taking Advantage Of Unsuspecting Restaurants**

31.     Grubhub touts that it "offers a more targeted marketing opportunity than the yellow pages, billboards or other local advertising mediums since diners typically access the Company's platform when they are looking to place a takeout order[.]" *Id.* at 8.

32.     As part of its marketing services to restaurants, Grubhub creates and has sole editorial control over a restaurant's microsite on the Grubhub platform.  While the restaurant provides restaurant-specific content that includes menus, photos, trademarks, and logos, Grubhub ultimately controls how the restaurant's content is presented on the Grubhub platform. *Id.*

7

33.     Unbeknownst to many of its restaurant customers, however, Grubhub also creates content for restaurants' microsites on Grubhub's platform. Specifically, Grubhub obtains a local telephone number for each restaurant and lists that phone number on the restaurant's Grubhub landing page. For the most part, restaurants are unaware that Grubhub is not advertising their actual phone numbers and instead promotes these Grubhub-issued local telephone numbers.

34.     Likewise, many diners are unaware that they are calling a Grubhub-issued local telephone number. Because the Grubhub-issued telephone numbers are local telephone numbers, diners searching for restaurants believe that the phone numbers they see on Grubhub's platform are the actual telephone numbers for the restaurants. They are not.

35.     One of Grubhub's founders, Mike Evans, explains:



Quora, *available at* https://www.quora.com/How-does-GrubHub-monitor-orders-and-accordingly-charge-fees-to-the-restaurants-when-the-diner-directly-phones-in-the-restaurant-

using-the-restaurants-phone-number-appearing-on-its-GrubHub-page (last visited Dec. 31, 2018).

36.     In addition, some diners may use these Grubhub-issued telephone numbers without even intending to place an order via Grubhub's platform.  For example, if a diner uses a search engine like Google to search for a specific restaurant, that diner will invariably click onto the restaurant's Grubhub landing page, as Grubhub has secured primary placement with all popular search engines. Typically, a restaurant's microsite on Grubhub is the first search result that appears, even above the restaurant's own website. After landing on the Grubhub page, the diner would then dial the telephone number advertised there, mistakenly believing that he/she is contacting the restaurant directly. Instead, Grubhub diverts these calls to the restaurants and records the calls.

37.     Conversely, restaurants are unaware that they are receiving a telephone food order diverted to them from a Grubhub-issued local telephone number masquerading as the local restaurants' phone numbers on Grubhub microsites, as opposed to receiving a call from a diner directly.

**C.      Grubhub Impermissibly Charges Commissions For Telephone Calls That Do Not Generate Food Orders**

38.     As set forth above, Grubhub creates its own local phone number for each restaurant in order to "track the calls and bill accordingly."  When diners use those numbers, those calls are then diverted to the restaurant and recorded.

39.     With respect to the telephonic food orders, the restaurants do all of the work:  they take the phone order; they process the order; they prepare the food; and they deliver it.  Grubhub plays no role in the process.  In fact, because Grubhub is not involved in with the food orders placed over the phone, it charges the restaurants a commission based upon the average

commissions charged to the restaurant a "monthly fee average as determined from month to month."

40.     Even though Grubhub records the calls that are placed via the Grubhub-issued phone numbers, Grubhub does not listen to those recordings to verify that the calls are actually calls to place food orders.  Instead, Grubhub merely assumes which calls are food orders—as opposed to other types of calls—based upon the length of the call.

41.     Grubhub has acknowledged that it does not verify which calls are for food orders. In 2013, when asked how Grubhub differentiates between phone calls generating food orders and other types of calls, Grubhub's founder explained:

GrubHub (product)

## GrubHub: How does grub hub differentiate between phone calls for delivery and phone calls for inquiry?

Ad by Zoho

**Run your entire business with Zoho One.**

Reach customers, grow sales, balance your books and work in collaboration from any device.

Sign up at zoho.com

1 Answer

 **Mike Evans, Founder at GrubHub**
Answered May 20, 2013 · Upvoted by Casey Winters, worked at GrubHub · Author has **68** answers and **262.3k**

There are a few key indicators that tell if a call is an order or not. Among them are time of call (during business hours), duration of call, exclusion of multiple call from same number, etc.  It turns out to be possible to predict with a high degree of accuracy which calls are orders or not.  Once that's done, a simple statistical model using standard deviations can be built to ensure that less orders are charged than actually completed.

Phone orders aren't added to user's history as they can't be accurately matched with a high enough degree of confidence.

1.6k Views · View Upvoters · Answer requested by Natalie Frunze

Quora, *available at* https://www.quora.com/GrubHub-How-does-grub-hub-differentiate-between-phone-calls-for-delivery-and-phone-calls-for-inquiry (last visited Dec. 31, 2018).

42.     More recently, a Grubhub representative explained that Grubhub's "algorithm determines whether a call results in an order; the length of the call is one factor that goes into that determination.  The review system is in place so that if our algorithm makes a mistake, we can rectify that with the restaurant."  Tribeca Citizen, Why Restaurants Hate GrubHub Seamless, *available at* https://tribecacitizen.com/2016/03/01/why-restaurants-hate-grubhub-seamless/ (last visited Dec. 31, 2018).

43.     For at least six years, however, the length of the call has been the **only** factor that Grubhub considers when determining whether a call is a food order or not.  Indeed, as set forth more fully below, a Grubhub account advisor made clear that Grubhub automatically charges a telephone commission for any phone call that exceeds 45 seconds in length—regardless of whether that call is to place a food order or not.  In fact, most telephone calls are not food orders.

44.     Thus, Grubhub has been unlawfully charging commissions and withholding restaurants' receivables under the guise that Grubhub generated food orders by telephone.  On the contrary, Grubhub merely created a local telephone number for the restaurant, diverted diners' calls to the restaurant, and played no part in taking, processing, or delivering the order—if one was even made.

45.     Grubhub claimed that restaurants had access to all telephone recordings, but in reality no restaurant had any access to a single telephone recording because Grubhub had universally disabled such access in an effort to conceal Grubhub's unlawful business practice.  Moreover, one of Grubhub's account advisors acknowledged that without these recordings,

restaurant orders cannot review the calls and audit them to determine which calls actually generated food orders.

        **D.**      **Plaintiffs' Experiences With Grubhub and Sham Telephone Orders**

        **1.**      **Plaintiffs' Contract With Grubhub**

46.     Munish Narula ("Narula") is the President and CEO of Tiffin.com, Inc. ("Tiffin.com") which owns various restaurants in Pennsylvania and New Jersey, including Plaintiffs Tiffin Elkins Park and Tiffin Mount Airy.

47.     Narula's restaurants first contracted with Grubhub in 2011, and Grubhub orders make up nearly 15% of Tiffin.com's revenues.

48.     On or about April 26, 2011, Tiffin Elkins Park and Tiffin Mount Airy each executed a "Grubhub Sign-up Form" with Grubhub. These contracts between Grubhub and Tiffin Elkins Park and Tiffin Mount Airy are "governed by and interpreted in accordance with the laws of Illinois."

49.     As part of their contracts with Grubhub, Tiffin Elkins Park and Tiffin Mount Airy agreed to pay a commission, or "advertising fee," on each "order."  An "order" is defined as the "food and beverage subtotal, including delivery fee, placed through GrubHub.com to [the] restaurant."

50.     Grubhub's contracts with Plaintiffs do not provide for the imposition of a commission or fee for telephone orders *taken by and placed with the restaurant itself*.  Indeed, the Tiffin Elkins Park contract does not even reference telephone orders.

51.     At no point did Grubhub advise Narula or his restaurants that it would create local phone numbers for each of the restaurants and advertise those numbers on the restaurants' Grubhub microsites.

52.     For example, Tiffin Elkins Park's actual phone number is 215-635-9205, yet the Grubhub landing page for this restaurant lists the Grubhub-issued phone number, 215-948-9308.



53.     Consistent with Grubhub's practices, when diners visit the Grubhub page and use this number to call to place a food order over the telephone, the call is redirected to Tiffin Elkins Park.  There, Tiffin staff members take and process the order.  Grubhub does nothing.

54.     Likewise, Tiffin Mount Airy's actual phone number is 215-242-3656, while the Grubhub-issued number, 215-948-9309, is the only number listed on the landing page.



55.     Again, diners who end up on Grubhub's page use this number to place food orders over the telephone. Grubhub merely forwards those calls to Tiffin Mount Airy, where the restaurant staff do all of the work to both take the order and prepare it.

56.     Grubhub charges a commission on these telephone food orders, even though it does ***nothing*** to generate them.

### 2.     Plaintiffs Discover Grubhub's Scheme

57.     On March 15, 2018, while reviewing the Grubhub ledgers online, a member of Narula's team questioned the telephone order commissions charged by Grubhub. Narula explained his belief that Grubhub takes orders by telephone and transmits those orders to the restaurants; however, he was unsure about how those orders were being transmitted. Narula tested the system by placing an order through Grubhub's telephone system. He was shocked to learned that when he dialed the Grubhub-issued telephone number associated with one of his restaurants, that he was redirected to his own restaurant and the restaurant's caller identification displayed Narula's own cell phone number.

58.     Narula then noticed that any call over a certain amount of time was automatically treated like an actual food order on the Grubhub ledger for the restaurant. For example, he dialed the Grubhub-issued phone number, had the restaurant place the call on hold for 2 minutes, and then hang up. Just minutes later, this call had been recorded by Grubhub as a legitimate food order for which a commission was assessed.

59.     That same day, a female customer called the Grubhub-issued phone number to one of the Tiffin restaurants to ask questions about the menu because she had food allergies. Narula observed that this telephone call about food allergies was also treated by Grubhub as an actual food order for which commissions were assessed. That same woman proceeded to place a food order online at Grubhub.com shortly after her call to the restaurant, and Grubhub charged

the restaurant two commissions - once for her call about food allergies and the other for the online order placed by the woman immediately after the phone call. Finally, Narula observed that during time frames where no delivery orders had been placed, Grubhub was charging its restaurants telephone order commissions.

60.     Narula then sought to listen to the telephone recordings and discovered that he was unable to access the recordings. He sought to access recordings that went as far back as 2011, to no avail. None of the recordings were accessible. Narula confirmed with at least four other restaurants that they likewise could not access these so-called telephone order recordings. The inability for restaurants to listen to recordings was a system-wide issue.

61.     By intentionally disabling the restaurants' ability to listen to these recordings, Grubhub was able to conceal that: (1) it had no role in placement of food orders over the telephone; and (2) Grubhub was charging restaurants a commissions on any telephone call over 45 seconds regardless of whether or not a food order was placed.

62.     That same day, March 15, 2018, Narula contacted a Grubhub account advisor to object to the imposition of telephone commissions on orders taken by the restaurants themselves, not Grubhub. Narula also objected to the fact that he was unable to listen to any of the recordings of calls made through the Grubhub-issued telephone number.

63.     A Grubhub account advisor told Narula that Grubhub's system is automated to charge a telephone order commission on each and every call made to the restaurants via the Grubhub-issued telephone number that exceeds 45 seconds in length, regardless of whether a food order is actually placed. The Grubhub account advisor also claimed that the recordings were not accessible due to a glitch impacting only Tiffin restaurants when this was clearly false as confirmed by at least four different restaurants that Narula had contacted earlier that same day.

That same account advisor then threatened to suspend Grubhub's services for all of Narula's restaurant locations if Narula took legal action or went to the media about Grubhub's telephone order scheme, threatening to cut off 15% of Narula's revenues.

64.     When Narula elevated his complaint to a Grubhub manager, the manager promised to investigate why the recordings could not be accessed and respond to Narula's complaint within 24 hours. Instead of explaining why the recordings could not be accessed or correcting the disabled recordings, Grubhub's manager had the same account advisor contact Narula the next day to offer to waive all future telephone commissions for Tiffin restaurants, proposing "to just make all calls .01 cents. That way it will make up for any **calls you may have been incorrectly charged** in the past. . . ."

65.     On or around August 2018, Grubhub started making recordings available to restaurants but continued assessing commissions on phony telephone food orders.

66.     Narula reviewed the available recordings of calls made to his restaurants via the Grubhub-issued phone numbers. Those recordings revealed that Grubhub's "algorithm" for determining which calls are food orders is deeply flawed. For example, the following calls were all made to Narula's restaurants via the Grubhub-issued numbers, and each of the calls exceeded 45 seconds in length.  Thus, according to Grubhub's policy, they were all charged as food orders, though—quite clearly—none of them were.

| | |
|---|---|
| August 20, 2018, 5:45pm: | Hi, um I just placed an order through Grubhub but I didn't get a confirmation text or email but I just wanted to make sure it went through. |
| August 21, 2018, 8:05pm: | Hi.  I ordered a delivery to Manton Street like, an hour and twenty minutes ago, and it's still not here. |
| August 24, 2018, 8:15pm: | Hi.  I'm ordering off of Grubhub and I was wondering if you guys had tofu.  Do you carry tofu? |

| | |
|---|---|
| August 31, 2018, 11:20am: | Hi. Is this Tiffin?  Okay, I just wanted to know what time you guys started – start to, um, do delivery. |
| September 3, 2018, 3:55pm: | Yeah, I have a question.  You guys are delivering through Grubhub, right?  On your menu, do you have any hummus?  Do you make hummus there? |
| September 9, 2018, 5:20pm: | Hi.  We're . . . placing an order on Grubhub and wanted to know if the curries comes with rice or if that's separate. |
| September 12, 2018, 5:00pm: | Yes, um, are you guys non-vedge and vedge?  Do you have non-vedge as well?  Okay, I just wanted to…See, I'm a vegetarian, so I wanted to make sure, you know, the cooking is okay.  So do you guy – does the chef cook separately or use separate containers? |

67.     These recordings are fair representations of the types of calls that the restaurants usually receive. In fact, diners primarily call the restaurants to check on the status of their delivery orders or to ask questions about the menu. These recordings also showed that Grubhub continued charging phony telephone commissions to Narula's restaurants on the basis of telephone calls that exceeded 45 seconds despite that they resulted in no food orders.

68.     Given the primary placement of Grubhub's restaurant pages with popular search engines and the frequency with which diners place non-food-order calls, the amount of false food order fees charged by Grubhub is likely substantial. Indeed, Narula estimates that 80% of the telephone commissions that his restaurants were charged were not linked to an actual food order.

**E.     Other Restaurants' Experiences With Grubhub And Charges For Sham Telephone Orders**

69.     Grubhub provides its services to over 80,000 restaurants across the country, and imposes commissions for sham telephone orders on other restaurants as well.

70.     For example, in 2016, an anonymous restaurateur in New York complained that Grubhub "charge[s] us a minimum of $3 for any call under 30 seconds.  If the call is longer, the fee can be up to $7."  Tribeca Citizen, Why Restaurants Hate GrubHub Seamless, *available at*

https://tribecacitizen.com/2016/03/01/why-restaurants-hate-grubhub-seamless/ (last visited Dec. 31, 2018).

71.     More recently, another New York restaurant owner voiced similar allegations, complaining that "the site never show our real number to contact, and if someone called us from their website, Grubhub will charge us 3$ for phone order no matter what that phone call is about."  Medium, Why my restaurant stop doing delivery through Seamless/Grubhub/ Eat24, *available at* https://medium.com/@mynguyen_66342/why-my-restaurant-stop-doing-delivery-through-seamless-grubhub-eat24-47f3ab83c332 (last visited Dec. 31, 2018).

## V.     CLASS ACTION ALLEGATIONS

72.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring their claims against Grubhub for breach of contract, conversion, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "**Illinois Act**") on behalf of themselves and the following "**Class**" defined as follows:

> All restaurants in the United States who were improperly charged by Grubhub for a telephone food order.

73.     Grubhub, its officers and directors, as well as the judge to whom this case is assigned are excluded from the Class.

74.     The Class consists of millions of individuals, making joinder impractical, in satisfaction of  Fed. R. Civ. P. 23(a)(1).  The exact size of the Class and the identities of the individual members thereof are ascertainable through Grubhub's records.

75.     The claims of Plaintiffs are typical of the claims of the other Class members. Plaintiffs' claims and those of the Class members are based on the same legal theories and arise from the same unlawful conduct, resulting in the same injury to Plaintiffs and the Class members.

76.     The respective class has a well-defined community of interest.  Grubhub has acted, and failed to act, on grounds generally applicable to Plaintiffs and the Class members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class.

77.     There are many questions of law and fact common to the claims of Plaintiffs and of the other Class members, and those questions predominate over any questions that may affect only individual Class members. Common questions of fact and law affecting members of the Class that predominate over any individualized questions include, but are not limited to, the following:

a)  Whether Grubhub breached its contracts with Plaintiffs and the other Class members by charging commissions for sham telephone orders that did not actually result in food and beverage orders;

b)  Whether Grubhub converted proceeds belonging to Plaintiffs and the other Class members when it withheld those funds as commissions for sham telephone orders that did not actually result in food and beverage orders;

c)  Whether Grubhub engaged in unconscionable, unfair, and/or deceptive acts or practices when it failed to disclose in its standard form contracts with Plaintiffs and the other Class members that Grubhub would create entirely new phone numbers that it would use to advertise on the Grubhub microsite and to track phone orders to the restaurants;

d)  Whether Grubhub engaged in unconscionable, unfair, and/or deceptive acts or practices when it misrepresented to Plaintiffs and the other Class members that commissions would only be charged on actual food and beverage orders;

e) Whether Grubhub engaged in unconscionable, unfair, and/or deceptive acts or practices when it failed to disclose in its standard form contract Grubhub's "algorithm" for determining which phone calls generate actual food and beverage orders;

f) Whether Grubhub engaged in unconscionable, unfair, and/or deceptive acts or practices when it failed to disclose that Grubhub does not undertake any analysis to determine which telephone calls actually result in food and beverage orders before charging commissions for them;

g) Whether Grubhub engaged in unconscionable, unfair, and/or deceptive acts or practices when it purposefully disabled restaurants' ability to listen to telephone recordings and whether by disabling these recordings Grubhub sought to intentionally conceal its illegal telephone ordering scheme;

h) Whether, in some instances, Grubhub engaged in unconscionable, unfair, and/or deceptive acts or practices when it misrepresented that commissions would only be charged for orders placed through GrubHub.com and failed to disclose that commissions would be charged for telephone orders as well;

i) Whether Grubhub's conduct renders it liable for breach of contract, conversion, and violations of the Illinois Act;

j) Whether, as a result of Grubhub's conduct, Plaintiffs and the other Class members have been injured, and, if so, the appropriate measure of damages to which they are entitled; and

k) Whether, as a result of Grubhub's conduct, Plaintiffs and the other Class members are entitled to injunctive, equitable and/or other relief, and, if so, the nature of such relief.

78.     Absent the certification of a class, most of the Class members would find the cost of litigating their claims to be prohibitive and would have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

79.     Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(a) and (b)(3). The aforementioned common questions of law and fact predominate over any questions affecting individual Class members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

80.     Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(a) and (b)(2), because Grubhub has acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

81.     Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex commercial litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other Class members and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the other Class members.

## VI.     LEGAL CLAIMS

### COUNT I – BREACH OF CONTRACT

82.     Plaintiffs repeat and reallege each and every factual allegation set forth above, as if fully set forth herein.

83.    Plaintiffs and the other Class members entered into contracts with Grubhub to use Grubhub's platform and advertising services to increase takeout orders at their respective restaurants.   Relevant here, Plaintiffs and the other Class members never agreed to pay a commission or advertising fee for phone calls that did not result in an "order."  An "order" is the "food and beverage subtotal, including delivery fee, placed through GrubHub.com to [the] restaurant."

84.    Plaintiffs and the other Class members substantially performed their obligations under their contracts with Grubhub.

85.    Grubhub breached its agreement with Plaintiffs and the other Class members by charging commissions for telephone orders that were not placed with Grubhub, but rather with the restaurants themselves.  Grubhub breached its agreement with Plaintiffs and the other Class members by automatically charging commissions any time that a diner called the restaurants and the call lasted 45 seconds or more, regardless of whether the caller ordered any food or beverage from the restaurant.

86.    Indeed, for Grubhub to charge *any* commission for telephone orders, regardless of whether the phone calls generated food and beverage orders, is improper given that the restaurants – not Grubhub— are taking and processing all telephone orders. Indeed, the contract between Grubhub and Tiffin Elkins Park does not even reference telephone orders, and the contract between Grubhub and Tiffin Mount Airy specifies that commissions on telephone orders are only allowable when telephone orders are placed through Grubhub.com and result in "orders."

87.    Plaintiffs and the other Class members have been injured as a direct and proximate result of Grubhub's illegal business practices and breach of its contracts.  Indeed, as a

result of Grubhub's wrongful conduct as described herein, Plaintiffs and the other Class members have suffered lost profits in the tens of millions of dollars over the past seven years.

## COUNT II – CONVERSION

88.     Plaintiffs repeat and reallege each and every factual allegation set forth above, as if fully set forth herein.

89.     "For most orders, diners use a credit card to pay [Grubhub] for their meal when the order is placed." 2018 Form 10-K, at 3.  Grubhub "accumulates" these funds and remits the net proceeds to the restaurants, subtracting Grubhub's commissions and payment processing fees charged by third parties like credit card companies.  *Id.*

90.     Because Grubhub does not actually process telephone orders, Grubhub does not receive payment for those orders directly from diners.   Instead, Grubhub calculates the commissions it believes it is entitled to for telephone orders and simply withholds those proceeds when it remits the net proceeds to the restaurants each month.

91.     Upon information and belief, Grubhub "accumulates" these funds in specific accounts from which it remits the net proceeds to the restaurants.

92.     Plaintiffs and the other Class members have the right to all funds Grubhub has withheld as commissions for the sham telephone orders. Those funds belong to Plaintiffs and the other Class members, and they have the right to immediately possess them.

93.     By withholding funds as commissions for telephone calls that were not generated by Grubhub or did not result in an actual food order, Grubhub has engaged in the unauthorized and wrongful assumption of control, dominion, and/or ownership over the proceeds that belong to Plaintiffs and the other Class members.

94.     Moreover, demand would be futile because when Narula complained about the scheme, Grubhub did not offer to refund all improperly assessed fees. Grubhub's refusal to address the wrongdoing coupled with its continued misconduct, demonstrate that demand on behalf of the entire Class would be futile. Moreover, upon information and belief, Grubhub has likely already used these improperly converted funds.

95.     Plaintiffs and the other Class members have been injured as a direct and proximate result of Grubhub's wrongful assumption of ownership over funds that belong to Plaintiffs and the other Class members by withholding such funds as commissions for sham telephone orders.  Grubhub's withholding of any proceeds as commissions for any telephone orders was unauthorized.  As a result of Grubhub's wrongful conduct as described herein, Plaintiffs and the other Class members have suffered lost profits in the tens of millions of dollars over the past seven years.

## COUNT III – VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

96.     Plaintiffs repeat and reallege each and every factual allegation set forth above, as if fully set forth herein.

97.     Under the Illinois Act:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

> 815 ILCS 505/2.

98.     Grubhub engaged in unfair and deceptive acts and practices in at least the following ways:

   a) Failing to disclose in its standard form contracts with restaurants that Grubhub will create an entirely new phone number that it will use to advertise on the Grubhub microsite and to track phone orders to the restaurant;

   b) Misrepresenting that commissions will only be charged on food and beverage orders placed through Grubhub.com;

   c) Failing to disclose in its standard form contract Grubhub's "algorithm" for determining which phone calls generate actual food and beverage orders;

   d) Failing to disclose that Grubhub does not undertake any analysis to determine which telephone calls actually result in food and beverage orders before charging commissions for them;

   e) Misrepresenting that Grubhub takes orders by telephone when in reality all phone calls are rerouted and placed by the restaurants themselves; and

   f) Concealing the telephone order sham by intentionally disabling the restaurants' ability to listen to these recordings.

99.     Grubhub intended that Plaintiffs and the other Class members would rely upon Grubhub's deception and unfair acts and practices.

100.    Moreover, Grubhub engaged in the aforementioned unfair and deceptive acts and practices during the course of trade and commerce.  Specifically, Grubhub engaged in deception and unfair acts and practices when it advertised, offered for sale, sold, and distributed its advertising and order-processing services to tens of thousands of restaurants all over the country to increase takeout orders at their places of business.

101. Plaintiffs and the other Class members have been injured as a direct and proximate result of Grubhub's unfair and deceptive acts and practices. In fact, as a result of Grubhub's wrongful conduct as described herein, Plaintiffs and the other Class members have suffered lost profits in the tens of millions of dollars over the past seven years.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the other Class members, respectfully request that this Honorable Court enter judgment in their favor and against Grubhub by:

a) Certifying this action as a class action pursuant to Fed. R. Civ. P. 23; declaring that Plaintiffs are proper class representatives; and appointing Plaintiffs' attorneys as class counsel;

b) Granting permanent injunctive relief to prohibit Grubhub from continuing to engage in the unlawful acts, omissions, and practices described herein;

c) Awarding Plaintiffs and the other Class members compensatory, consequential, and general damages in an amount to be determined at trial;

d) Adjudging and decreeing that the unlawful acts, omissions, and practices described herein constitute breach of contract, conversion, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act;

e) Awarding treble damages pursuant to the Illinois Consumer Fraud Act and Deceptive Business Practices Act;

f) Ordering disgorgement and restitution of all earnings, profits, compensation, and benefits received by Grubhub as a results of its unlawful acts, omissions, and practices described herein;

g) Awarding statutory, punitive, and exemplary damages to the fullest extent permitted by law;

h) Awarding Plaintiffs and the other Class members the costs and disbursements of this action, along with reasonable attorneys' fees and expenses, to the extent permitted by law;

i)   Awarding pre- and post-judgment interest at the maximum legal rate; and

j)   Granting all such other relief as the Court deems just and proper.

Respectfully submitted,

Dated:  December 31, 2018

By: _____
Catherine Pratsinakis, Esq.
(PA ID No. 88086)
Marie-Theres DiFillippo, Esq.
(PA ID No. 316012)
DILWORTH PAXSON LLP
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Telephone:  (215) 575-7000
Facsimile:  (215) 575-7200
cpratsinakis@dilworthlaw.com
mdifillippo@dilworthlaw.com
*Attorneys for Plaintiffs*