# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIFFIN EPS, LLC *and* TIFFIN MOUNT AIRY, LLC, *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> GRUBHUB INC., <br><br> Defendant. | No. 2:18-cv-05630-PD |

## DEFENDANT GRUBHUB INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

Rebekah B. Kcehowski
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA  15219
T:  (412) 391-3939
F:  (412) 394-7959
rbkcehowski@jonesday.com

*Attorney for Defendant*
*Grubhub Inc.*

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................1

ALLEGATIONS ....................................................................................4

ARGUMENT .........................................................................................7

    I.      PLAINTIFFS' CONVERSION CLAIM FAILS AS A MATTER OF LAW..........................................................................................7

          A.    Plaintiffs' Conversion Claim Improperly Recycles Their Contract Claim ..........................................................8

          B.    Plaintiffs' Conversion Claim Is Legally Insufficient Because It Seeks To Enforce A Mere Obligation To Pay Money ...........................................................................12

    II.    PLAINTIFFS FAIL TO ALLEGE A PLAUSIBLE ILLINOIS CONSUMER FRAUD ACT CLAIM .................................................13

          A.    These Non-Illinois Plaintiffs Cannot Bring A Consumer Fraud Act Claim........................................................13

          B.    Plaintiffs' Consumer Fraud Act Claim Improperly Rehashes Plaintiffs' Breach Of Contract Claim...........................16

          C.    Plaintiffs' Consumer Fraud Act Claim Is Untimely On Its Face .................................................................18

          D.    Plaintiffs' Consumer Fraud Act Claim Is Legally Insufficient On The Merits As Well.................................................21

    III.    PLAINTIFFS' CONTRACT CLAIM BASED ON "ORDERS" ALSO FAILS AS TO MOUNT AIRY .............................................24

CONCLUSION ....................................................................................25

# TABLE OF AUTHORITIES

**Page**

CASES

*A/Z Corp. v. Lowe's Home Ctr., LLC*,
    2016 WL 1271356 (M.D. Pa. Mar. 31, 2016) .....................................................9

*Am. Hearing Aid Assocs., Inc. v. GN ReSound N. Am.*,
    309 F. Supp. 2d 694 (E.D. Pa. 2004).................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................7

*Avery v. State Farm Mut. Auto. Ins. Co.*,
    835 N.E.2d 801 (2005) ................................................................................16, 17

*Bachman v. Bear, Stearns & Co.*,
    57 F. Supp. 2d 556 (N.D. Ill. 1999)..................................................................21

*Branch Banking & Tr. Co. v. Angino Law Firm, P.C.*,
    2016 WL 7117476 (M.D. Pa. Dec. 7, 2016).......................................................8

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ...........................................................................24

*Chrysler Credit Corp. v. Smith*,
    643 A.2d 1098 (Pa. Super. Ct. 1994)...........................................................11, 12

*Cleo Bridges v. 7303 Inc.*,
    2016 WL 1065657 (Ill. App. Ct. Mar. 15, 2016) ..............................................21

*De Lage Landen Fin. Servs. v. Cardservice Int'l*,
    2001 WL 799870 (E.D. Pa. July 12, 2001) .......................................................15

*DeGennaro v. Am. Bankers Ins. Co.*,
    737 F. App'x 631 (3d Cir. 2018) ......................................................................21

# TABLE OF AUTHORITIES

## (cont'd)

**Page**

*Downs v. Andrews*,
639 F. App'x 816 (3d Cir. 2016) ...................................................................9

*Endless Summer Prods., LLC v. Mirkin*,
2016 WL 807760 (E.D. Pa. Mar. 2, 2016) ...........................................9

*Excavation Techs., Inc. v. Columbia Gas Co.*,
985 A.2d 840 (Pa. 2009)...........................................................................11

*Gater v. Bank of Am., N.A.*,
2013 WL 5700595 (N.D. Ill. Oct. 18, 2013) .................................18, 20

*Hammarquist v. United Cont'l Holdings, Inc.*,
809 F.3d 946 (7th Cir. 2016) .................................................................25

*Hawk Mountain LLC v. Ram Capital Grp. LLC*,
689 F. App'x 703 (3d Cir. 2017) ...........................................................18

*Haywood v. Massage Envy Fran'g, LLC*,
887 F.3d 329 (7th Cir. 2018) ........................................................21, 22, 23

*In re Rockefeller Ctr. Props. Sec. Litig.*,
311 F.3d 198 (3d Cir. 2002) ...................................................................21

*In re Sears, Roebuck & Co.*,
2006 WL 1443737 (N.D. Ill. May 17, 2006)........................................16

*Koken v. Commonwealth Prof'l Grp., Inc.*,
2006 WL 334787 (Pa. Ct. Com. Pl. Feb. 9, 2006) .......................10, 11

*LaSalle Bank, N.A. v. Paramount Props.*,
588 F. Supp. 2d 840 (N.D. Ill. 2008).....................................................25

# TABLE OF AUTHORITIES

## (cont'd)

**Page**

*Montgomery v. Fed. Ins. Co.*,
836 F. Supp. 292 (E.D. Pa. 1993)......................................................12

*Peoples Mortg. Co. v. Fed. Nat. Mortg. Ass'n*,
856 F. Supp. 910 (E.D. Pa. 1994)......................................................11

*Phillips v. Bally Total Fitness Holding Corp.*,
865 N.E.2d 310 (Ill. App. Ct. 2007)............................................14, 15

*Phillips v. DePaul Univ.*,
19 N.E.3d 1019 (Ill. App. Ct. 2014).................................................23

*Pier Transp., Inc. v. Braman Agency, LLC*,
2015 WL 9590287 (Ill. App. Ct. Dec. 31, 2015)..............................21

*Pittsburgh Constr. Co. v. Griffith*,
834 A.2d 572 (Pa. Super. Ct. 2003)..................................................10

*Rahemtulla v. Hassam*,
539 F. Supp. 2d 755 (M.D. Pa. 2008)................................................10

*Reardon v. Allegheny Coll.*,
926 A.2d 477 (Pa. Super. Ct. 2007)...............................................8, 9

*Robinson v. Toyota Motor Credit Corp.*,
775 N.E.2d 951 (Ill. 2002)...............................................................23

*Rohlfing v. Manor Care, Inc.*,
172 F.R.D. 330 (N.D. Ill. 1997)........................................................14

*Scott v. Philadelphia Hous. Auth.*,
2011 WL 1791095 (E.D. Pa. May 11, 2011)....................................12

# TABLE OF AUTHORITIES

## (cont'd)

**Page**

*Shaw v Blue Mountain Consumer Discount Co.*,
2011 WL 7758354 (Pa. Ct. Com. Pl. 2011) ......................................................10

*Shaw v. Hyatt Int'l Corp.*,
461 F.3d 899 (7th Cir. 2006) ...............................................................................17

*Sklodowski v. Countrywide Home Loans, Inc.*,
832 N.E.2d 189 (Ill. App. Ct. 2005) ..................................................17, 23, 24

*Thompson v. Illinois Dep't of Prof'l Regulation*,
300 F.3d 750 (7th Cir. 2002) ...............................................................................25

*Van Tassell v. United Mktg. Grp., LLC*,
795 F. Supp. 2d 770 (N.D. Ill. 2011)..................................................................15

*Wells Fargo Bank, N.A. v. Girouard*,
2018 WL 4682162 (Ill. App. Ct. Sep. 25, 2018) ...............................................20

*Werwinski v. Ford Motor Co.*,
286 F.3d 661 (3d Cir. 2002) ................................................................................12

*Zankle v. Queen Anne Landscaping*,
724 N.E.2d 988 (Ill. App. Ct. 2000) ...................................................................17

*Zavecz v. Yield Dynamics, Inc.*,
2004 WL 2600831 (E.D. Pa. Nov. 15, 2004) ......................................................8

*Zummo v. City of Chicago*,
2018 WL 5718034 (N.D. Ill. Nov. 1, 2018) .......................................................23

**STATUTES**

Ill. Comp. Stat. 505/1 ...............................................................................................13

# TABLE OF AUTHORITIES

## (cont'd)

**Page**

Ill. Comp. Stat. 505/2 ....................................................................................1

Ill. Comp. Stat. 505/10 ...............................................................................18

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 8 ..............................................................7

Federal Rule of Civil Procedure 9(b)......................................2, 21, 23, 24

Federal Rule of Civil Procedure 12(b)(6) ..................................................3

Federal Rule of Civil Procedure 21 ............................................................1

## INTRODUCTION

Two related Philadelphia-area restaurants—Tiffin EPS, LLC ("EPS") and Tiffin Mount Airy, LLC ("Mount Airy")—bring this putative nationwide class action against Grubhub Inc.,[1] alleging that Grubhub improperly charged commissions for "phony telephone food orders."  Compl. ¶ 65.  They assert breaches of two different contracts with Grubhub that plaintiffs signed more than seven years ago.  *Id.* ¶¶ 25–27, 48.  But they also seek double—and even triple—recoveries on the same set of (alleged) facts by asserting redundant claims for conversion and for purportedly "deceptive" acts under the Illinois Consumer Fraud Act (the "Consumer Fraud Act" or "Act"), 815 Ill. Comp. Stat. 505/2.

The face of the complaint makes this much clear, however:  There has been no "deception" on Grubhub's part in this matter.  Grubhub has performed in accordance with the contracts at all times.  Plaintiffs' own allegations demonstrate that Grubhub has disclosed the challenged telephone commissions to plaintiffs—in, for example, monthly statements, online ledgers, public disclosures, and even in Mount Airy's contract—for the past seven years.  Compl. ¶¶ 35–41, 57–58.  Moreover,

---

[1] Plaintiffs named Grubhub Inc. as defendant, but the relevant party is Grubhub Holdings Inc.  *See* Fed. R. Civ. P. 21.

plaintiffs' relationships with Grubhub have provided plaintiffs (and their sister companies) more customers and increased revenues.  *See id*. ¶¶ 46–47.  In fact, Tiffin.com entities have signed contracts with Grubhub for at least seven other restaurants, yet these seven entities are not named here, and they have alleged no breaches.

Plaintiffs' claims are legally insufficient, and this Court should dismiss them with prejudice.  *First*, plaintiffs' conversion claim is built upon the same allegations and purported duties that support their breach of contract claim.  Redundancy of this kind is impermissible under both the gist of the action and economic loss doctrines.  In all events, plaintiffs' conversion claim fails because it is based solely upon a contractual obligation to pay money.

*Second*, plaintiffs' claim under the Illinois Consumer Fraud Act fails for at least four independent reasons.  Most fundamentally, under well-established principles of extraterritoriality, the Act does not extend to non-Illinois plaintiffs.  EPS and Mount Airy reside and operate in Pennsylvania, and their individual claim under the Act alleges impacts that occurred solely in Pennsylvania—not in Illinois.  Likewise, their Consumer Fraud Act claim, just like their conversion claim, impermissibly duplicates their breach of contract claim, in search of a double recovery.  Separately, plaintiffs' claim under the Act is time-barred on the face of the complaint.  And even if plaintiffs could overcome these threshold issues, their claim would *still* fail on the merits under the Act and Rule 9(b)'s heightened pleading standards, as the complaint

is devoid of particularized allegations of "deceptive" practices or of any intent that plaintiffs rely on such alleged practices.

*Finally*, plaintiffs appear to allege a breach of contract claim based on even completed telephone orders, asserting that Grubhub should be paid nothing for telephone orders (even as plaintiffs define them) directed to plaintiffs' restaurants through Grubhub's platforms and promotional efforts. *E.g.*, Compl. ¶ 86 ("[F]or Grubhub to charge **any** commission for telephone orders, regardless of whether the phone calls generated food and beverage orders, is improper." (bold in original)). This assertion directly contradicts the plain language of Mount Airy's contract, which plaintiffs concede authorizes commissions for "orders" that are "placed by telephone using contact information from GrubHub.com." *Id.* ¶ 26. Plaintiffs thus fail to state a plausible breach of contract claim as to completed phone orders.

These claims should be dismissed with prejudice under Rule 12(b)(6).[2]

---

[2] Grubhub's Terms of Use, incorporated into the contracts with plaintiffs, include arbitration provisions with class waivers. Grubhub is currently investigating the applicability of these arbitration provisions to this case and files this Rule 12 motion in compliance with the Court's Order denying Grubhub's request for an extension of the filing deadline (ECF 7), without prejudice to Grubhub's right to seek individual nonclass arbitration of plaintiffs' (or putative class members') claims. In all events, Grubhub intends to file a motion to compel arbitration as soon as possible—at most, within 21 days.

## ALLEGATIONS

Grubhub is the "'leading online and mobile platform for restaurant pick-up and delivery orders.'" Compl. ¶ 15.  Diners use Grubhub's website or mobile application to "place takeout orders with restaurants that have enlisted Grubhub's services." *Id.* ¶¶ 18, 19–22.  Once an order is placed, Grubhub "processes the order and transmits it to the restaurant to be fulfilled." *Id.* ¶ 18.  Grubhub's easy-to-use platform attracts more diners, generates more orders, and increases efficiency for restaurants. *Id.* ¶¶ 16–17, 22.  In exchange for these services, plaintiffs allege, restaurants pay Grubhub a "commission" on takeout orders placed through Grubhub's platforms. *Id.* ¶ 22.

Plaintiffs own two Pennsylvania restaurants, both called Tiffin Indian Cuisine, operating in and near Philadelphia. *Id.* ¶¶ 12–13.  Plaintiffs entered into two different contracts with Grubhub more than seven years ago and have received increased business as a result of Grubhub's services, customers, and referral platforms. *Id.* ¶¶ 25-26, 46–49.  Indeed, Tiffin.com (plaintiffs' parent company)—and the owner of other restaurants that have contracted with Grubhub—receives "nearly 15%" of its revenues through Grubhub orders. *Id.* ¶ 47.  In fact, at least nine total Tiffin.com restaurants (including plaintiffs) have separately signed contracts with Grubhub.

As part of their April 2011 contracts with Grubhub, plaintiffs "agreed to pay a commission, or 'advertising fee,' on each 'order.'" *Id.* ¶ 49.  Further, at least one

of the plaintiffs (Mount Airy) specifically agreed to pay Grubhub a commission for "orders . . . placed by telephone using contact information from GrubHub.com." *Id.* ¶ 26. Plaintiffs admit that telephone orders are made using contact information found on Grubhub's website—which is "[t]ypically" the "first search result" that appears when diners search for plaintiffs' restaurants on "all popular search engines." *Id.* ¶¶ 36, 52–56. "Through Grubhub," restaurants thus "receive more orders at full menu prices" and "gain an online and mobile presence with the ability to reach their most valuable target audience." Grubhub's Form 10-K, dated Feb. 28, 2018, at 5 ("incorporated by reference" in full in complaint at n.1). Grubhub also "provides restaurants with 24/7 service" and "[c]ustomer care," with representatives "able to assist with problems that may arise" for diners. *Id.* at 6-7. Despite these undisputed marketing benefits, plaintiffs say Grubhub does "nothing" to generate telephone orders. Compl. ¶ 56 (emphasis removed).

Plaintiffs say that the contracts define an "order" as a "food and beverage subtotal . . . placed through GrubHub.com to the restaurant." *Id.* ¶ 49 (citation omitted). According to plaintiffs, however, Grubhub charged them "commissions on telephone calls" that were not "actually made to place orders for takeout." *Id.* ¶ 2. These "phony telephone commissions," plaintiffs contend, breached the parties' contracts. *Id.* ¶ 67; *see id.* ¶¶ 82–87 (claiming plaintiffs "never agreed to pay a commission" for "phone calls that did not result in an 'order'").

-5-

For more than seven years, however, plaintiffs have received monthly state-ments clearly identifying commissions paid to Grubhub for phone orders.  *See id.* ¶¶ 29, 39, 90.  Yet now—after receiving more than one hundred of these statements from Grubhub, and in the face of a contract requiring commissions for orders "placed by telephone using contact information from GrubHub.com"—plaintiffs claim they learned, for the very first time, about Grubhub's procedures for phone orders and commissions.  *Id.* ¶¶ 26, 57–68.  Plaintiffs make this claim despite also alleging that Grubhub made its procedures accessible and published them on the internet.  *See, e.g.*, *id.* ¶¶ 35, 41 (excerpts of online posts from one of Grubhub's cofounders), ¶ 36 (alleging that "Grubhub has secured primary placement with all popular search en-gines").

On December 31, 2018, plaintiffs filed this putative nationwide class action alleging that Grubhub wrongfully charged restaurants commissions on telephone calls that did not result in an actual takeout "order."  *Id.* ¶ 2.  Grubhub's alleged conduct, plaintiffs say, breached the contracts with plaintiffs.[3]  *Id.* ¶ 83.  Based on these same allegations of contractually unauthorized conduct, plaintiffs allege that

---

[3] Notably, at least seven of Grubhub's contracts with plaintiffs' sister restau-rants vary from the plaintiffs' contracts in material ways, making clear that plaintiffs strategically selected EPS and Mount Airy for purposes of this putative nationwide class action.  Such material differences among contracts will preclude certification of the putative class alleged by plaintiffs.

Grubhub is liable to plaintiffs, as Pennsylvania residents, for the common law tort of conversion and for violating the Illinois Consumer Fraud Act. Plaintiffs seek lost profits and other damages.[4] *Id.* ¶¶ 88–101.

## ARGUMENT

Plaintiffs' complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Claims are plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Plaintiffs fail to meet Rule 8's pleading requirements, and their conversion, Consumer Fraud Act, and contract claims should be dismissed with prejudice under Rule 12(b)(6).

## I.   PLAINTIFFS' CONVERSION CLAIM FAILS AS A MATTER OF LAW

Two doctrines each independently prevent plaintiffs from recasting their contract claim as a tort claim for conversion: the "gist of the action" doctrine and the economic loss doctrine.[5] And in all events, the conversion claim fails as a matter of

---

[4] Grubhub's Terms of Use, incorporated into plaintiffs' contracts, include limitation of liability provisions that preclude recovery of lost profits and other damages claimed beyond amounts plaintiffs paid to Grubhub or $1,000, whichever is less.

[5] Plaintiffs' conversion claim is asserted in Pennsylvania by Pennsylvania restaurants to recover money that allegedly should have been paid in Pennsylvania.

law because it seeks to enforce a mere obligation to pay money, in violation of established tort law.  The conversion claim must be dismissed.

**A.      Plaintiffs' Conversion Claim Improperly Recycles Their Contract Claim**

Pennsylvania's "gist of the action" doctrine forecloses tort claims (1) arising solely from a contractual relationship between the parties, (2) when the alleged duties breached are grounded in the contract itself, (3) where any liability stems from the contract, and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.  *Reardon v. Allegheny Coll.*, 926 A.2d 477, 486 (Pa. Super. Ct. 2007).  "The nature of the allegedly breached duty is the decisive factor:  if the duty would not exist without the contract, then the claim sounds in contract alone."  *Branch Banking & Tr. Co. v. Angino Law Firm, P.C.*, 2016 WL 7117476, at *3 (M.D. Pa. Dec. 7, 2016) (citing *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014),

---

Pennsylvania conversion law therefore governs, as Pennsylvania has a greater interest in this claim's resolution.  *See* Compl. ¶¶ 12–13; *Zavecz v. Yield Dynamics, Inc.*, 2004 WL 2600831, at *1 (E.D. Pa. Nov. 15, 2004) (applying Pennsylvania conversion law because plaintiff lived in Pennsylvania and alleged that the disputed property should have been delivered to her in Pennsylvania); *Am. Hearing Aid Assocs., Inc. v. GN ReSound N. Am.*, 309 F. Supp. 2d 694, 704 n.14 (E.D. Pa. 2004) (Pennsylvania law governed plaintiff's tortious conversion claim despite contractual choice-of-law clause stating that California governed the contract).

and applying the gist of the action doctrine to a punitive damages claim where parties' "disagreement [was] purely one of contract"); *see Reardon*, 926 A.2d at 486.

Where, as here, the alleged duties at issue arise from a contract—for instance, where the tort claim depends on the outcome of a contract claim, where it is based on the same factual predicates as the contract claim, or where it seeks the same damages as would be recoverable in contract—the gist of the action doctrine bars recovery in tort. *See id.*; *Downs v. Andrews*, 639 F. App'x 816, 819–21 (3d Cir. 2016) (affirming dismissal of tort claims under the "gist of the action" doctrine where the "crux" of plaintiffs' action alleged a failure to perform the contract); *A/Z Corp. v. Lowe's Home Ctr., LLC*, 2016 WL 1271356, at *3–4 (M.D. Pa. Mar. 31, 2016) (dismissing a fraud claim that incorporated breach of contract allegations by reference and "demand[ed] the same amount of recovery"). "[P]ermit[ting] a promisee to sue his promisor in tort for breaches of contract *inter se* would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions." *Reardon*, 926 A.2d at 486 (citation omitted).

Because gist of the action law is clear in this regard, courts routinely dismiss conversion claims that are duplicative of contract claims. *See Endless Summer Prods., LLC v. Mirkin*, 2016 WL 807760, at *2–3 (E.D. Pa. Mar. 2, 2016) (dismissing a conversion claim where the alleged conversion was not "independent of the

-9-

contract" but occurred in the course of performance); *Shaw v Blue Mountain Consumer Discount Co.*, 2011 WL 7758354 (Pa. Ct. Com. Pl. 2011) (the gist of the action doctrine barred a conversion claim whose success "depend[ed] entirely on the obligations as defined by the [parties'] contract" (citation omitted)); *Rahemtulla v. Hassam*, 539 F. Supp. 2d 755, 777 (M.D. Pa. 2008) ("[C]ourts have applied the 'gist of the action' doctrine to conversion claims when entitlement to the chattel is predicated solely on the agreement between the parties." (collecting cases)); *Koken v. Commonwealth Prof'l Grp., Inc.*, 2006 WL 334787, at *1 (Pa. Ct. Com. Pl. Feb. 9, 2006) ("Where the claim is that the defendant failed to pay money that was due to plaintiff under a contract . . . the gist of the action doctrine bars a claim for conversion."); *Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 584 (Pa. Super. Ct. 2003) (a conversion claim was barred by gist of the action doctrine where "the basis of the duty allegedly breached by the [defendants], their duty to pay [plaintiff] according to the draw schedule, was created by and defined by the contract itself").

Here, the duty that Grubhub allegedly breached improperly derives solely from the parties' contracts—not from any broader social duty imposed by tort law. Plaintiffs allege that Grubhub is liable in tort for conversion because Grubhub purportedly did not pay them money it was obligated to pay under the parties' contracts. *See* Compl. ¶¶ 88–95. Any such obligation arises *solely* from the parties' contracts and would not exist without these contracts. *Id*. ¶¶ 25–26, 83–87. Moreover, the

-10-

conversion claim expressly incorporates plaintiffs' contract allegations, is based on the same factual predicates, and seeks to recover the same damages. *See id.* ¶¶ 87–88, 95 (claiming that *both* Grubhub's alleged contract breaches and conversion have caused plaintiffs to suffer "lost profits in the tens of millions of dollars"). Indeed, if Grubhub is successful in its interpretation of the parties' agreements, there is "consent" from plaintiffs and "lawful justification" (a binding contract) for Grubhub's conduct, negating necessary elements of plaintiffs' conversion claim. *See Chrysler Credit Corp. v. Smith*, 643 A.2d 1098, 1100 (Pa. Super. Ct. 1994). Plaintiffs do not otherwise raise any allegations independent from the contracts that would support a claim for conversion. Because plaintiffs claim that Grubhub converted money that it was contractually obligated to pay, their conversion claim fails under the gist of the action doctrine. *See Koken*, 2006 WL 334787, at *1.

The economic loss doctrine presents a similar but independent ground to dismiss the conversion claim. That doctrine "generally precludes recovery" for negligence and related tort claims where, as here, the purported injuries "are solely economic." *Excavation Techs., Inc. v. Columbia Gas Co.*, 985 A.2d 840, 841 (Pa. 2009); *see Peoples Mortg. Co. v. Fed. Nat. Mortg. Ass'n*, 856 F. Supp. 910, 929 (E.D. Pa. 1994) (noting that "Pennsylvania courts, state and federal, have consistently rejected tort remedies for conduct that is remediable as a breach of contract"). The Third Circuit—interpreting Pennsylvania law—has held that Pennsylvania's

economic loss doctrine would apply to intentional torts such as fraud, where those torts duplicate contract claims. *See Werwinski v. Ford Motor Co.*, 286 F.3d 661, 679 (3d Cir. 2002). Plaintiffs here allege purely economic losses ("lost profits") flowing from Grubhub's alleged contract breaches. Compl. ¶ 95. Plaintiffs' conversion claim should thus be dismissed under the economic loss doctrine as well.

### B.   Plaintiffs' Conversion Claim Is Legally Insufficient Because It Seeks To Enforce A Mere Obligation To Pay Money

To state a claim for conversion, a plaintiff must plausibly allege that (1) the defendant deprived the plaintiff or interfered with his right, (2) to a chattel, (3) without the plaintiff's consent or without lawful justification. *Chrysler*, 643 A.2d at 1100-01. "Conversion will not lie to enforce a mere obligation to pay money." *Montgomery v. Fed. Ins. Co.*, 836 F. Supp. 292, 301 (E.D. Pa. 1993). Otherwise, every breach of contract for nonpayment would result in a conversion. *See id.* (to allow a conversion claim for an unpaid debt "would be equivalent to saying that every unpaid debt carries with it the implication of fraud on the part of the debtor" (citation omitted)); *Scott v. Philadelphia Hous. Auth.*, 2011 WL 1791095, at *12 (E.D. Pa. May 11, 2011) ("If a plaintiff's rights to property are defined by a contract with a defendant, then that plaintiff may not sue that defendant in tort for conversion of that property.").

Plaintiffs have no right to funds that Grubhub lawfully deducted as commissions for telephone orders placed using phone numbers on Grubhub's website. *E.g.*,

Compl. ¶¶ 26–27 (contract terms obligating plaintiffs to pay fees for orders placed through Grubhub), 29 (noting without objection that Grubhub "deducts commissions" for "transactions that go through its platform").

But even if plaintiffs could establish a right to payment of those funds, their conversion claim would still fail because it is premised solely on Grubhub's alleged withholding of funds to which plaintiffs claim a contractual right. *See, e.g.*, Compl. ¶ 89 (alleging Grubhub "accumulates . . . funds and remits the net proceeds to the restaurants, subtracting Grubhub's commissions and payment processing fees"); *id.* ¶ 90 (alleging that "Grubhub calculates the commissions it believes it is entitled to for telephone orders and simply withholds those proceeds when it remits the net proceeds to the restaurants each month"). Simply put, plaintiffs allege that Grubhub is liable for failing to pay amounts owed under a contract—a mere obligation to pay money that is not actionable as conversion.

## II.   PLAINTIFFS FAIL TO ALLEGE A PLAUSIBLE ILLINOIS CONSUMER FRAUD ACT CLAIM

Plaintiffs likewise fail to allege a plausible claim under the Illinois Consumer Fraud Act. There are at least four independent reasons why that is so.

### A.   These Non-Illinois Plaintiffs Cannot Bring A Consumer Fraud Act Claim

The Illinois Consumer Fraud Act was designed and intended to protect Illinois residents. *E.g.*, 815 Ill. Comp. Stat. 505/1(f) (commerce under that Act is that which

"directly or indirectly affect[s] the people of this State"). Plaintiffs—entities residing and doing business *outside* Illinois—cannot bring a claim under the Act. "[W]here the sole Illinois connection is the defendant's headquarters or the fact that the scheme to defraud emanated from Illinois," claims of "non-Illinois plaintiffs" fail as a matter of law under the Act. *Phillips v. Bally Total Fitness Holding Corp.*, 865 N.E.2d 310, 316 (Ill. App. Ct. 2007); *see Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 340 n.10 (N.D. Ill. 1997) (the Act does not apply to "claims by non-Illinois parties merely because [an alleged] scheme 'emanated' from the minds of persons in Illinois").

These principles compel dismissal in this case. Plaintiffs allege only that Grubhub's "principal place of business" is in Illinois, Compl. ¶ 14, and that Grubhub devised and "engaged in" a purportedly "unfair and deceptive" scheme to charge their restaurants commissions for telephone calls that did not result in takeout orders, *id.* ¶ 100; *see id.* ¶ 1 ("Grubhub has been withholding commissions for sham telephone food orders."). Plaintiffs thus—at most—claim the purported scheme "emanated from the minds" of Grubhub personnel "in Illinois." *Rohlfing*, 172 F.R.D. at 340 n.10. That is not enough. *See Phillips*, 865 N.E.2d at 316. Beyond these legally insufficient allegations, plaintiffs point to no other Illinois connection.

These allegations are thus similar to those in *Phillips*. There, non-Illinois plaintiffs claimed a fitness company—headquartered in Illinois—violated the Act

-14-

by allegedly scheming from Illinois to refuse to cancel membership contracts and to charge late fees for nonpayment. *Phillips*, 865 N.E.2d at 312–13. The Illinois Appellate Court rejected this claim because, for instance, the plaintiffs "resided, bought memberships, signed contracts, used fitness facilities and were subject to the disputed billing and collection practices in states other than Illinois." *Id.* at 316. Their "claim that the deceptive policies were devised in and promulgated from Illinois [was thus] not sufficient to establish a nexus with Illinois." *Id.*

So too here. Plaintiffs' complaint shows that they "resided" in Pennsylvania, "signed contracts" with Grubhub in Pennsylvania, served Pennsylvania diners using Grubhub products at their Pennsylvania locations, and "were subject to the disputed billing and collection practices" in Pennsylvania. *Phillips*, 865 N.E.2d at 316; *see* Compl. ¶¶ 12–13, 46–68.[6] Their Consumer Fraud Act claim thus lacks the requisite "nexus with Illinois," and it should be dismissed as a result. *Phillips*, 865 N.E.2d at 316; *see Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 782 (N.D. Ill. 2011) ("Illinois is implicated only because United Marketing is headquartered in

---

[6] That plaintiffs' contracts were allegedly "governed by and interpreted in accordance with the laws of Illinois" is of no moment under the Act. Compl. ¶ 48. These choice of law provisions are "narrow" and limited in application to the contracts themselves—they do not cover statutory claims, like plaintiffs' claim under the Act. *See De Lage Landen Fin. Servs. v. Cardservice Int'l*, 2001 WL 799870, at *2 (E.D. Pa. July 12, 2001) (a provision "limited to the interpretation" of the agreement did not "encompass a statutory tort claim for deceptive business practices").

Illinois, and is therefore where Plaintiffs argue United Marketing likely planned and carried out its part of the deceptive conduct.  Importantly, though, that a scheme to defraud was disseminated from United Marketing's headquarters in Illinois is insufficient to establish the necessary connections to Illinois." (citation omitted)); *In re Sears, Roebuck & Co.*, 2006 WL 1443737, at *1–2 (N.D. Ill. May 17, 2006) (dismissing Consumer Fraud Act claims of non-Illinois plaintiffs despite allegations that defendant had its principal place of business in Illinois, ran its marketing campaign and website from Illinois, and utilized an Illinois choice-of-law clause, as these allegations were "merely permutations of the 'emanating'-type allegations" that are legally insufficient to establish the requisite connection to Illinois).

### B.   Plaintiffs' Consumer Fraud Act Claim Improperly Rehashes Plaintiffs' Breach Of Contract Claim

Plaintiffs' Consumer Fraud Act claim also fails because it is impermissibly redundant of plaintiffs' breach of contract claim.  An alleged "breach of [a] contractual promise, without more, is not actionable" under the Consumer Fraud Act.  *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (2005).  "Were [Illinois] courts to accept [the] assertion that [alleged] promises that go unfulfilled are actionable" under the Consumer Fraud Act, plaintiffs "could convert any suit for breach of contract into a consumer fraud action."  *Id.* (quoting *Zankle v. Queen Anne Landscaping*, 724 N.E.2d 988, 992 (Ill. App. Ct. 2000)).  It is "settled," however, that the Consumer Fraud Act does not "supplement every breach of contract claim with a

-16-

redundant remedy." *Id.* Allegations of consumer fraud must, therefore, involve "more than the mere fact that a defendant promised something and then failed to do it." *Id.* at 993; *Sklodowski v. Countrywide Home Loans, Inc.*, 832 N.E.2d 189, 196 (Ill. App. Ct. 2005) ("This is merely a breach of contract count clothed as a violation of the Consumer Fraud Act."); *Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 901 (7th Cir. 2006) (the principle that Act claims cannot recycle breach of contract claims has been "consistently applied by Illinois courts in myriad circumstances").

Here, what plaintiffs call "'consumer fraud' or 'deception' is simply" Grubhub's purported "failure to fulfill" its "contractual obligations." *Avery*, 835 N.E.2d at 844. Plaintiffs say they "never agreed" by contract "to pay a commission" for "phone calls that did not result in an 'order.'" Compl. ¶ 83. Yet they claim they were "deceived" into paying these commissions through, for example, Grubhub's creation and use of allegedly "misleading" phone numbers "masquerading as the local restaurants' phone numbers on Grubhub microsites," *id.* ¶ 37, and Grubhub's so-called "misrepresentations" that "commissions will only be charged on food and beverage orders," *id.* ¶ 98(b).

These alleged "deceptions" and "misrepresentations," however, merely reassert plaintiffs' breach of contract claim. *See Zankle*, 724 N.E.2d at 993. If plaintiffs agreed to pay the disputed telephone commissions by contract, there has been no "deception"—just the application of a binding agreement. Equally, if plaintiffs think

-17-

they did *not* agree to pay the disputed commissions, they may allege and make efforts to pursue a breach of contract claim.  That plaintiffs did not agree to a disputed contractual term, however, does not turn that disagreement into "deception."  That is particularly true because Mount Airy's contract allows a "fee" for orders "placed by telephone using contact information from GrubHub.com" (*i.e.*, through Grubhub microsites).  Compl. ¶ 26.  Accordingly, plaintiffs' Consumer Fraud Act claim impermissibly duplicates their breach of contract claim and should be dismissed.

## C.    Plaintiffs' Consumer Fraud Act Claim Is Untimely On Its Face

Independently, plaintiffs' Consumer Fraud Act claim is untimely on the face of the complaint and should be dismissed for that reason alone.  *Cf. Hawk Mountain LLC v. Ram Capital Grp. LLC*, 689 F. App'x 703, 705 (3d Cir. 2017) (a defendant may "prevail on a limitations defense in a motion to dismiss" if the "plaintiff's tardiness" is "apparent from the materials properly before the court").

"Any action for damages" under the Consumer Fraud Act "shall be forever barred unless commenced within 3 years after the cause of action accrued."  815 Ill. Comp. Stat. 505/10a(e).  A cause of action "accrues" under the Act when the plaintiff "knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused."  *Gater v. Bank of Am., N.A.*, 2013 WL 5700595, at *1 (N.D. Ill. Oct. 18, 2013) (citation omitted).

-18-

These principles establish that plaintiffs' Consumer Fraud Act claim is untimely on its face. Plaintiffs say they only first "discovered" Grubhub's allegedly deceptive "scheme" of creating local phone numbers for use on Grubhub microsites and of charging commissions for calls using these Grubhub numbers "[o]n March 15, 2018." Compl. ¶¶ 57–59. But plaintiffs' own allegations reveal that essential elements of this purportedly clandestine "scheme" were public information as far back as late 2011—just a few months after they contracted with Grubhub in April 2011 and well beyond the Act's three-year limitations period.

For example, plaintiffs cite a publicly available November 3, 2011 post from quora.com in which Grubhub cofounder Mike Evans wrote, "Actually, it *isn't* the restaurant['s] phone number. The phone number on the GrubHub page for a restaurant is a *unique number* that comes through our system and then rings the restaurant. This allows us to track the calls and *bill accordingly*." *Id.* ¶ 35 (emphasis added). Plaintiffs cite another public quora.com post from May 20, 2013—also well beyond the Act's three-year limitations period—in which Evans described how Grubhub "differentiate[d] between phone calls for delivery and phone calls for inquiry" to determine how calls "are *charged*." *Id.* ¶ 41 (emphasis added).

Likewise, plaintiffs point out that material elements of Grubhub's alleged "deception" appeared in Mount Airy's April 2011 contract, which expressly contem-

plated a "fee" for orders "placed *by telephone* using contact information *from Grub-Hub.com*" (*i.e.*, through Grubhub microsites). *Id.* ¶ 26 (emphasis added). Plaintiffs also describe their ready access to "Grubhub ledgers online," which they say displayed the purportedly offending "telephone order commissions charged by Grubhub," *id.* ¶ 57—apparently in real-time, *id.* ¶ 58 ("[j]ust minutes" after a test call, "this call had been recorded by Grubhub"). And plaintiffs also make plain that Grubhub restaurant microsites—showing the allegedly "misleading" local phone numbers that Grubhub created—are easily accessible through, for instance, a quick internet search. *Id.* ¶ 36 (claiming that internet users "*invariably* click onto the restaurant's Grubhub landing page, as Grubhub has secured primary placement with *all* popular search engines" and that a "restaurant's microsite on Grubhub is [typically] the *first search result* that appears, even above the restaurant's own website" (emphasis added)).

Given all the information available to plaintiffs since they contracted with Grubhub in April 2011, they "reasonably should [have] known" both of their purported injury and of its purportedly "wrongful cause" long before the Act's three-year limitations period expired in this case. *Gater*, 2013 WL 5700595, at *1. The face of the complaint shows that plaintiffs slept on their rights, and their untimely Consumer Fraud Act claim should be dismissed. *See Wells Fargo Bank, N.A. v.*

*Girouard*, 2018 WL 4682162, at *3–4 (Ill. App. Ct. Sep. 25, 2018) (dismissing un-
timely Consumer Fraud Act claim); *Cleo Bridges v. 7303 Inc.*, 2016 WL 1065657,
at *7 (Ill. App. Ct. Mar. 15, 2016) (same); *Pier Transp., Inc. v. Braman Agency, LLC*,
2015 WL 9590287, at *6–7 (Ill. App. Ct. Dec. 31, 2015) (same); *Bachman v. Bear,
Stearns & Co.*, 57 F. Supp. 2d 556, 559–62 (N.D. Ill. 1999) (same).

### D.   Plaintiffs' Consumer Fraud Act Claim Is Legally Insufficient On The Merits As Well

In all events, plaintiffs' Consumer Fraud Act claim is also legally insufficient
on the merits.  To state a claim, plaintiffs must plausibly allege "(1) a deceptive act
or promise by [Grubhub]; (2) [Grubhub's] intent that [plaintiffs] rely on the decep-
tive act; (3) the deceptive act occurred during a course of conduct involving trade or
commerce; and (4) actual damage as a result of the deceptive act."  *Haywood v.
Massage Envy Fran'g, LLC*, 887 F.3d 329, 333 (7th Cir. 2018).

Critically, claims of consumer deception under the Act are subject to the
"heightened pleading standard of Federal Rule of Civil Procedure 9(b)."  *Id.* at 333.
This means that plaintiffs must plead with particularity "all of the essential factual
background that would accompany the first paragraph of any newspaper story—that
is, the who, what, when, where and how of the events at issue."  *In re Rockefeller
Ctr. Props. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (citations omitted); *see
DeGennaro v. Am. Bankers Ins. Co.*, 737 F. App'x 631, 636 (3d Cir. 2018) (Rule
9(b)'s pleading standard is "stringent").  Plaintiffs' conclusory, contradictory, or

nonexistent allegations of consumer "deception" and of an "intent of reliance" fall far short of this demanding standard.

*First*, plaintiffs fail to allege with particularity any "deceptive act or promise by [Grubhub]." *Haywood*, 887 F.3d at 333. Plaintiffs claim that Grubhub acted deceptively by, for example, creating new telephone numbers for restaurants' microsites on Grubhub's website and charging fees associated with calls. Compl. ¶¶ 5, 33–34, 36–37, 57, 98 (all alleging that Grubhub engaged in deceptive conduct by "creat[ing] misleading telephone numbers" and "[f]ailing to disclose" its telephone order procedures). But, again, these assertions of "deception" are implausible given plaintiffs' repeated admissions that Grubhub has, for example, (i) openly described its telephone-billing procedures in public for years, *e.g.*, *id.* ¶¶ 35, 41 (2011 and 2013 quora.com internet posts from Grubhub's cofounder), (ii) posted essential elements of the alleged "deception" (Grubhub-issued telephone numbers) on readily accessible microsites, *e.g.*, *id.* ¶ 36 (a restaurant's microsite on Grubhub is "[t]ypically" the "first search result that appears"), and (iii) included critical elements of the purported "scheme," both in its contract with Mount Airy, *id.* ¶ 26 (describing "fee[s]" for orders "placed by telephone using contact information from GrubHub.com"), and in monthly billing statements and readily accessible online ledgers, *e.g.*, *id.* ¶ 57.

Courts have rejected claims of "deceptive" conduct under the Act in like circumstances—particularly given the heightened pleading standard applicable here

under Rule 9(b).  *See, e.g.*, *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 962 (Ill. 2002) ("[S]ince those penalty provisions are clearly set out in the lease, plaintiffs have not alleged sufficient facts to establish that Toyota's conduct was deceptive."); *Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1029 (Ill. App. Ct. 2014) (plaintiffs failed to plausibly allege deceptive conduct because they had awareness of the information that the defendant allegedly failed to disclose); *id.* at 1031 (requiring an examination of "*all the information* available to plaintiffs"); *Sklodowski*, 832 N.E.2d at 197 (the disputed practice was "not 'deceptive' because the mortgage agreement clearly discloses this policy").

*Second*, plaintiffs fail to allege *any* facts—let alone plausible facts—demonstrating that Grubhub "intended" that plaintiffs would "rely" on any of the "deceptive" conduct alleged here.  *Haywood*, 887 F.3d at 333.  Plaintiffs' *sole* allegation on this element is wholly conclusory and merely tracks the statutory language: "Grubhub intended that Plaintiffs . . . rely upon Grubhub's deception and unfair acts and practices."  Compl. ¶ 99.  This threadbare allegation is not entitled to the presumption of truth—especially under the heightened pleading standards of Rule 9(b).  *See Zummo v. City of Chicago*, 2018 WL 5718034, at *10 (N.D. Ill. Nov. 1, 2018) (plaintiff failed to state a consumer deception claim under the Act because he alleged "no facts plausibly suggesting that the [defendant] intended [for him] to rely on the

alleged deception"). Plaintiffs' complete failure to allege an essential element of their claim under the Act compels dismissal of this claim.[7]

## III. PLAINTIFFS' CONTRACT CLAIM BASED ON "ORDERS" ALSO FAILS AS TO MOUNT AIRY

Plaintiffs appear to allege, at least in part, that Grubhub breached their contracts by "charg[ing] **any** commission for telephone orders, *regardless of whether the phone calls generated food and beverage orders*," because "the restaurants—not Grubhub—are taking and processing all telephone orders." Compl. ¶ 86 (bold in original; second emphasis added). In other words, plaintiffs appear to go so far as to allege that Grubhub is *never* allowed to collect commissions on phone calls of any kind, even if they resulted in what plaintiffs' define as "orders." *Id*.

That is not what the plaintiffs' contracts provide. Indeed, plaintiffs plead that Mount Airy's contract "specifie[d] that commissions on telephone orders *are* only *allowable* when telephone orders are placed through Grubhub.com and result in 'orders.'" *Id*. Mount Airy's contract language supports this. It says, "[i]n the event

---

[7] Similarly, plaintiffs' throwaway, catchall assertions of "unfair" acts or practices are unsupported legal conclusions not entitled to the assumption of truth. *See* Compl. ¶¶ 98–101; *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) ("Simply adding language of 'unfairness' instead of 'misrepresentation' does not alter the fact that Camasta's allegations are entirely grounded in fraud under the [Consumer Fraud Act]" and thus subject to Rule 9(b)'s "heightened" standards); *Sklodowski*, 832 N.E.2d at 197 ("mere conclusory statement[s]" of unfairness fail).

orders are placed *by telephone using contact information from GrubHub.com* the fee *shall* be determined by my restaurant's monthly fee average as determined from month to month." *Id.* ¶ 26 (emphasis added). In other words, Mount Airy admits that it agreed to pay commissions to Grubhub (1) when diners placed calls using contact information from grubhub.com and (2) when those calls resulted in "orders." Therefore, as to Mount Airy, any allegation that Grubhub breached the contract by "charg[ing] any commission for telephone orders, regardless of whether the phone calls generated food and beverage orders," fails to state a plausible breach of contract claim and should be dismissed. *Id.* ¶ 86.

Basic contract principles compel this result. *E.g.*, *Hammarquist v. United Cont'l Holdings, Inc.*, 809 F.3d 946, 951 (7th Cir. 2016) ("United cannot be said to have breached a contract by doing exactly what the contract authorized."); *LaSalle Bank, N.A. v. Paramount Props.*, 588 F. Supp. 2d 840, 856 (N.D. Ill. 2008) (dismissing a contract claim where the plaintiff alleged duties that did not appear in the contract); *see Thompson v. Illinois Dep't of Prof'l Reg.*, 300 F.3d 750, 754 (7th Cir. 2002) ("dismissal is appropriate" if document plaintiff relies on "negates the claim").

## CONCLUSION

For all of these reasons, plaintiffs' claims for conversion and violations of the Illinois Consumer Fraud Act should be dismissed, with prejudice, as should plaintiffs' breach of contract claim as to Mount Airy based on completed orders.

-25-

Dated:  January 24, 2019

/s/ Rebekah B. Kcehowski

Rebekah B. Kcehowski
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA  15219
T:  (412) 391-3939
F:  (412) 394-7959
rbkcehowski@jonesday.com

*Attorney for Defendant*
*Grubhub Inc.*