## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**TIFFIN EPS, LLC** and **TIFFIN MOUNT AIRY, LLC**, on behalf of themselves and all others similarly situated,

           Plaintiffs,

           v.

**GRUBHUB INC.,**

           Defendant.

Case No. 2:18-cv-05630-PD

## PLAINTIFFS' AMENDED OPPOSITION TO
## GRUBHUB INC.'S MOTION TO DISMISS

Dated:  February 8, 2019

Catherine Pratsinakis, Esq.
(PA ID No. 88086)
Marie-Theres DiFillippo, Esq.
(PA ID No. 316012)
DILWORTH PAXSON LLP
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Telephone:  (215) 575-7000
Facsimile:  (215) 575-7200
cpratsinakis@dilworthlaw.com
mdifillippo@dilworthlaw.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

FACTUAL BACKGROUND ....................................................................2

ARGUMENT .............................................................................................4

I.     PLAINTIFFS STATED A CLAIM FOR CONVERSION. ...........................5

       A.    Neither The "Gist Of The Action" Doctrine Nor The Economic Loss Doctrine Bars Plaintiffs' Claim For Conversion. .........................6

       B.    Plaintiffs' Conversion Claim Seeks To Recover Money Stolen...........9

II.    PLAINTIFFS STATED A  CLAIM UNDER THE CFA. ...........................11

       A.    The Complaint Alleges Nationwide Application Of The CFA. .........11

       B.    Plaintiffs' CFA Claim Is Separate From Their Contract Claim. ........13

       C.    Plaintiffs' CFA Claim Is Timely. ......................................................15

       D.    Plaintiffs' CFA Claim is Pled With Particularity................................19

III.   PLAINTIFFS STATED A CLAIM FOR BREACH OF CONTRACT........23

IV.   CONCLUSION.............................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Avery v. State Farm Mut. Auto. Ins. Co.*,
   835 N.E.2d 801 (Ill. 2005)................................................................... 11, 12, 19

*Avila v. CitiMortgage, Inc.*,
   801 F.3d 777 (7th Cir. 2015) ..............................................................23

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................4

*Bruno v. Erie Insurance*,
   106 A.3d 48 (Pa. 2014).......................................................................6

*Budzash v. Howell Twp.*,
   451 Fed. App'x 106 (3d Cir. 2011) ....................................................16

*Busch v. Domb*,
   No. 17-2012, 2017 WL 6525779 (E.D. Pa. Dec. 21, 2017),
   *reconsideration denied,* 2018 WL 1251715 (E.D. Pa. Mar. 12, 2018)................8

*Chrysler Credit Corp. v. Smith*,
   643 A.2d 1098 (Pa. Super. Ct. 1994) ..................................................5

*Coachtrans, Inc. v. Uber Techs., Inc.*,
   No. 16-cv-88, 2016 WL 4417261 (E.D. Pa. Aug. 19, 2016) ..............25

*Dittman v. University of Pittsburgh Medical Center*,
   196 A.3a 1036 (Pa. 2018)....................................................................6

*Dixon v. Northwestern Mutual*,
   146 A.3d 780 (Pa. Super. Ct. 2016) ...................................................9

*Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*,
   505 N.E.2d 314 (Ill. 1987)..................................................................25

*Escobar v. Pa. Higher Ed. Assistance Agency Svcs., LLC*,
   No. 17-cv-4212, 2018 WL 1740364 (E.D. Pa. Apr. 11, 2018) ...........16

*Francis J. Bernhardt, III, P.C. v. Needleman*,
   705 A.2d 875 (Pa. Super. Ct.1997) ....................................................5

*Fry v. UAL Corp.*,
   136 F.R.D. 626 (N.D. Ill. 1991) ........................................................11

*Gen. Ins. Co. of Am. v. Clark Mali Corp.*,
   No. 08-cv-2787, 2010 WL 1286076 (N.D. Ill. Mar. 30, 2010)............14

*Gordon v. Boden*,
    586 N.E.2d 461 (Ill. App. 1991), *appeal denied*, 591 N.E.2d 21, *cert.*
    *denied* 506 U.S. 907 (1992).................................................................12

*Hermitage Corp. v. Contractors Adjustment Co.*,
    651 N.E.2d 1132 (Ill. 1995)..............................................................17

*Homeowners Choice, Inc. v. Aon Benfield, Inc.*,
    550 F. App'x 311 (7th Cir. 2013)......................................................25

*In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.,*
    543 F.3d 150 (3d Cir. 2008) .............................................................22

*In re Rockefeller Ctr. Props., Inc.*,
    311 F.3d 198 (3d Cir. 2002) ...............................................................4

*In re Thebus*,
    483 N.E.2d 1258 (Ill. 1985)................................................................5

*Ingersoll v. Klein*,
    262 N.E. 2d 593 (Ill. 1970)...............................................................13

*Ivanhoe Fin., Inc. v. Mortg. Essentials, Inc.*,
    No. 03-cv-6887, 2004 WL 856591 (N.D. Ill. Apr. 21, 2004) ...........11

*Jodek Charitable Tr., R.A. v. Vertical Net Inc.*,
    412 F. Supp. 2d 469 (E.D. Pa. 2006)...................................................6

*Kantor v. Hiko Energy, LLC*,
    100 F. Supp. 3d 421 (E.D. Pa. 2015)...................................................9

*Knight v. Springfield Hyundai*,
    81 A.3d 940 (Pa. Super. Ct. 2013) ......................................................9

*Landau v. Viridian Energy PA LLC*,
    223 F. Supp. 3d 401 (E.D. Pa. 2016)...................................................9

*Malone v. Weiss*,
    No. 17-cv-1694, 2018 WL 827433 (E.D. Pa. Feb. 12, 2018) .............7

*Martin v. Heinold Commodities, Inc.*,
    510 N.E.2d 840 (Ill. 1987)......................................................... 12, 13

*Martin v. Heinold Commodities, Inc.,*
    643 N.E.2d 734 (Ill. 1994)................................................................19

*Mendelsohn, Drucker & Assoc. v. Titan Atlas Mfg., Inc.*,
    885 F. Supp. 2d 767 (E.D. Pa. 2012)...................................................6

*Miner v. Gillette Co.*,
   428 N.E.2d 478 (Ill. 1981)..................................................................................12

*Montgomery v. Fed. Ins. Co.*,
   836 F. Supp. 292 (E.D. Pa. 1993)........................................................................9

*Oliveria v. Amoco Oil Co.*,
   776 N.E.2d 151 (Ill. 2002)...................................................................................19

*People v. All American Aluminum & Construction Co. Inc.*,
   524 N.E.2d 1067 (Ill. App. 1988)........................................................................14

*Perry v. Household Retail Servs., Inc.*,
   953 F. Supp. 1370 (M.D. Ala. 1996)...................................................................12

*Petri v. Gatlin*,
   997 F. Supp. 956 (N.D. Ill. 1997)........................................................................22

*Poindexter v. Nat'l Mortgage Co.*,
   No. 94-cv-5814, 1995 WL 242287 (N.D. Ill. April 24, 1995)..................... 14, 15

*Polymer Dynamics, Inc. v. Bayer*,
   No. 99-cv-4040, 2000 WL 1146622 (E.D. Pa. Aug. 14, 2000) ...........................7

*Robinson v. Toyota Motor Credit Corp.*,
   775 N.E.2d 951 (Ill. 2002)........................................................................... 21, 22

*Schmidt v. Skolas*,
   770 F.3d 241 (3d Cir. 2014) ...............................................................................17

*Scott v. Philadelphia Hous. Auth.*,
   No. 10-cv-4723, 2011 WL 1791095 (E.D. Pa. May 11, 2011)...........................10

*Shadow v. Union Nissan of Waukegan*,
   No. 94–cv–6723, 1995 WL 238680 (N.D. Ill. April 20, 1995) ..........................11

*Shaw v. Hyatt Int'l Corp.*,
   461 F.3d 899 (7th Cir. 2006) ..............................................................................15

*Simonian v. Oreck Corp.*,
   No. 10-cv-1224, 2010 WL 3385465 (N.D. Ill. Aug. 23, 2010) .........................22

*Sklodowski v. Countrywide Home Loans, Inc.*,
   832 N.E.2d 189 (Ill. App. Ct. 2005)...................................................................15

*Telwell Inc. v. Grandbridge Real Estate Capital, LLC*,
   143 A.3d 421 (Pa. Super. 2016) ...........................................................................7

*Uddeholm Am., Inc. v. Ellwood Group, Inc.*,
   247 F.3d 79 (3d Cir. 2001) ...................................................................................7

*W.W. Vincent & Co. v. First Colony Life Ins. Co.*,
   814 N.E.2d 960 (Ill. App. 2004)..............................................................23

*Walmsley v. Mercury Fin. Co.*,
   No. 92-cv-433, 1993 WL 13930869 (S.D. Fla. Sept. 10, 1993) ........................12

*Werwinski v. Ford Motor Co.*,
   286 F.3d 661 (3d Cir. 2002) ..............................................................8, 9

*Wigod v. Wells Fargo Bank, N.A.*,
   673 F.3d 547 (7th Cir. 2012) ..............................................................20

*Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing
   Services, Inc.*,
   536 F.3d 663 (7th Cir. 2008) ..............................................................20

**Statutory Authorities**

815 ILCS 505/1 ...............................................................................13

815 ILCS 505/2 ...............................................................................13

**Rules and Regulations**

Fed. R. Civ. P. 12(b)(6)........................................................................4

Fed. R. Civ. P. 9(b) ..................................................................... 19, 22

This case is about money stolen, not just money owed.[1] Grubhub Inc. represented to restaurants that it would provide services such as advertising, sales, and revenue collection in exchange for a commission on purchases made through its platform. Each month Grubhub deducted from the revenues of Plaintiffs and other restaurants those commissions Grubhub claimed it had earned on telephone orders placed through Grubhub. The problem was that diners did not, and could not, place telephone orders through Grubhub. Instead, Grubhub assigned each restaurant a unique phone number that when dialed by diners rerouted them to the restaurant. Unbeknownst to restaurants, Grubhub took a commission on rerouted calls lasting over 45 seconds, regardless of whether a purchase was made. Grubhub concealed this through an utter lack of transparency, false accountings, and concealment of recordings. By having control of restaurants' funds, Grubhub had easy access to the funds, making phony commissions appear legitimate. This conversion endured for years until Plaintiffs discovered the wrongdoing in 2018. Plaintiffs sued for: (1) breach of contract, (2) conversion, and (3) violations of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1-*et seq.* ("CFA"). Grubhub's request for partial dismissal of these claims is unavailing.

First, Grubhub's argument that Plaintiffs' conversion claim is barred by

---

[1] Plaintiffs Tiffin EPS, LLC and Tiffin Mount Airy, LLC ("Plaintiffs") submit this amendment to their Opposition to Grubhub Inc.'s Motion to Dismiss to comply with the Court's Standing Order, at 4, that motion papers be prepared in 14-point font.

Pennsylvania's "gist of the action" or economic loss doctrines misses the mark on procedure and substance. As a procedural matter, federal and state courts permit pleading in the alternative. As a substantive matter, the existence of a contract does not automatically bar tort claims. Here, Grubhub violated both contractual and tort duties (*i.e.*, duty of honesty) by taking revenue belonging to restaurants and disguising them as legitimate commissions.

Second, the CFA may be alleged on a nationwide basis because the court may reasonably infer that the misconduct took place in Illinois primarily and that restaurants were harmed uniformly. The CFA claim is also timely because the Complaint alleges that Plaintiffs discovered the misconduct in March 2018.

Finally, Tiffin Mount Airy has stated a claim for breach of contract as Grubhub was not authorized to take commissions on telephone orders placed with restaurants and, thus, breached its contracts with both Plaintiffs by doing so. Moreover, Grubhub breached its contract with Plaintiffs by charging commissions without satisfying the condition precedent of generating an order.

## FACTUAL BACKGROUND

For years Grubhub has been withholding commissions for sham telephone food orders, depriving more than 80,000 restaurants of revenues that belong to them. Grubhub's conduct was not in performance of, much less contemplated by, any contract between the parties and was plainly deceptive. (Complaint, ¶¶24-44).

Grubhub boasts that it is "the leading online and mobile platform" for restaurant takeout orders and brags that by using the platform "diners do not need to place their orders over the phone." (¶2). Nevertheless, Grubhub provides a Grubhub-issued telephone number for each restaurant on the restaurant's microsite, suggesting to restaurants and diners that Grubhub takes orders by telephone as well as through its online platform. (¶¶52, 54). However, restaurants were unaware of the fact that Grubhub was not able to take or process telephone orders. (¶¶37-57). In fact, Grubhub neither had the infrastructure nor staff to answer calls from diners, and instead, rerouted every call to the restaurants themselves. (¶28). Grubhub also failed to disclose in its standard form agreements that Grubhub could not take or process orders over the telephone and that a Grubhub-issued telephone number advertised on a restaurant's microsite merely rerouted all calls to the restaurants themselves. (¶51). Restaurants answering their telephone had no way to know when a call was being rerouted to them by Grubhub versus when a diner was contacting the restaurant directly. (¶¶37, 57). Grubhub, on the other hand, recorded every rerouted call. (¶¶36, 38, 40).

The agreements entitle Grubhub to a telephone order commission when a purchase is made through GrubHub.com. Grubhub knew, and the concealed recordings will demonstrate, that many calls rerouted to the restaurants did not result in orders. (¶66). The contracts define order as a "food and beverage subtotal,

including delivery fee, placed through GrubHub.com to my restaurant." (¶25). Instead of verifying whether a purchase had been made, Grubhub presumed that every redirected phone call lasting over 45 seconds was a purchase, charging commissions on calls such as dinners checking on delivery status. (¶¶43, 58-67).

To conceal its wrongdoing, Grubhub prepared and issued false and misleading ledgers to restaurants as to the telephone commissions purportedly owed and disabled restaurants' access to recordings of the calls. Thus, Plaintiffs and the class members had no way to know that Grubhub was withholding commissions on calls lasting over 45 seconds nor to challenge those commission deductions from their revenues. (¶¶45, 61). As a result, Grubhub violated the CFA and tortiously converted funds that Grubhub knew belonged to the restaurants. (¶¶88-101). Grubhub also breached the contract by claiming commissions while failing to perform the condition precedent necessary to collect them. (¶¶82-87).

## ARGUMENT

In deciding a motion to dismiss, the Court must accept as true the factual allegations in the complaint. Fed. R. Civ. P. 12(b)(6); *In re Rockefeller Ctr. Props., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002) ("The inquiry is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims.").

## I.    PLAINTIFFS STATED A CLAIM FOR CONVERSION.

As a preliminary matter, Grubhub claims that Pennsylvania law applies without engaging in any choice of law analysis and also relies on facts outside of the Complaint. (*See* Grubhub Br. n.5 (asserting that case was filed in Pennsylvania and funds should have been paid there)). The Complaint alleges that Grubhub is headquartered in Illinois and that the agreements between Grubhub and Plaintiffs are "governed by and interpreted in accordance with the laws of Illinois," (¶¶14, 48) and, therefore, it is not clear that Pennsylvania law applies. The evidence should be developed further before decisions are made about applicable law. However, for purposes of this Motion, the Court need not resolve the issue because Plaintiffs' claim is sufficiently pled under either State's law.

Pennsylvania courts define conversion as the deprivation without permission of a plaintiff's right to a chattel. *Chrysler Credit Corp. v. Smith*, 643 A.2d 1098, 1100 (Pa. Super. Ct. 1994). Money is recognized as a permissible subject of conversion. *Francis J. Bernhardt, III, P.C. v. Needleman*, 705 A.2d 875, 878 (Pa. Super. Ct.1997) (imposing conversion liability on a law firm's failure to remit settlement proceeds). Likewise, Illinois law defines conversion as "the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held." *In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1985).

**A.    Neither The "Gist Of The Action" Doctrine Nor The Economic Loss Doctrine Bars Plaintiffs' Claim For Conversion.**

Plaintiffs' conversion claim is not barred by Pennsylvania's "gist of the action" or economic loss doctrines, which the Pennsylvania Supreme Court recently merged.  *See Dittman v. Univ. of Pittsburgh Med. Ctr.*, 196 A.3 1036, 1054 (Pa. 2018) (holding application of economic loss doctrine now "turns on the determination of the source of the duty plaintiff claims the defendant owed…"); *compare Bruno v. Erie Ins.,* 106 A.3d 48, 68-69 (Pa. 2014) (the "gist of the action" turns on "the nature of the duty alleged to have been breached…."). As a result, the *only* relevant inquiry with respect to either doctrine is whether the defendant's misconduct resulted in a breach of "the terms of the contract[]" or "larger social policies embodied by the law of torts." *Jodek Charitable Tr., R.A. v. Vertical Net Inc.*, 412 F. Supp. 2d 469, 479 (E.D. Pa. 2006) (quotation omitted). As for larger social policies embodied by the law of torts, every person owes a duty not to improperly make use of another person's funds, regardless of whether the parties have a contractual relationship. *See Mendelsohn, Drucker & Assoc. v. Titan Atlas Mfg., Inc*., 885 F. Supp. 2d 767, 790 (E.D. Pa. 2012) (fraud was collateral to contract constituting "breach of duties of honesty imposed by society").[2]

---

[2] *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 723 (E.D. Pa. 2014) ("[E]xistence of a contractual relationship… does not preclude one party from bringing a tort claim…."); *Bill Marek's The Competitive Edge v. Mickelson Grp.*, 806 N.E.2d 280, 285 (Ill. App. 2004) (upholding conversion claim despite contact).

The "gist of the action" doctrine "does not apply when the defendant not only breached the contract, but also made misrepresentations about the breach with the intent to deceive the plaintiff, such that the unsuspecting plaintiff continued the contractual relationship or failed to assert its contractual rights against the defendant." *Synthes*, 25 F. Supp. 3d at 725; *Bohler–Uddeholm Am., Inc. v. Ellwood Group, Inc.,* 247 F.3d 79, 106 (3d Cir. 2001) (tort claim for misappropriation of information not barred by "gist of the action" doctrine despite existence of contract); *Polymer Dynamics, Inc. v. Bayer*, No. 99-cv-4040, 2000 WL 1146622, *6-7 (E.D. Pa. Aug. 14, 2000) ("gist of the action" doctrine no bar to fraud claim where defendant made false representations about performance under the contract); *Malone v. Weiss*, No. 17-cv-1694, 2018 WL 827433, *5 (E.D. Pa. Feb. 12, 2018) ("gist of the action" doctrine no bar to conversion despite contract where defendant took payments rightfully belonging to plaintiffs and "wrongfully exercised dominion and control over payments received").[3]

Plaintiffs' conversion claim asserts tort duties independent of contractual duties owed by Grubhub. Grubhub knew that it had no infrastructure or staff to

_____

[3] *Ne. Power Co. v. Balcke–Durr, Inc.*, No. 97-cv-4836, 1999 WL 674332, *12 (E.D. Pa. Aug. 23, 1999) (holding that "gist of the action" doctrine did not apply to bar a fraud claim where the defendant made specific misrepresentations about its performance under the contract with the intent to deceive the plaintiff)); *Telwell Inc. v. Grandbridge Real Estate Capital, LLC*, 143 A.3d 421, 429 (Pa. Super. 2016) (reversing trial court's dismissal under the "gist of the action" doctrine of tort claims that the court found were redundant of the contract claim and holding dismissal "was both premature and erroneous").

accept orders by telephone. (¶28). Even if Grubhub had told restaurants that it had no infrastructure to take telephone orders, and was only rerouting calls to the restaurants, Grubhub still had no justification whatsoever to treat every telephone call lasting over 45 seconds as a purchase. Grubhub knew that many of these telephone calls did not result in orders but continued to deduct commissions from restaurants' revenues. (¶¶43-44). Moreover, Grubhub concealed the withholding of phony commissions from 80,000 plus restaurants nationwide by issuing false monthly ledgers and statements asserting that it was owed a commission on food orders generated by telephone. By illegitimately siphoning-off revenues belonging to the restaurants, Grubhub engaged in the unauthorized and wrongful assumption of control, dominion, and/or ownership over proceeds that belong to Plaintiffs and the other class members. Thus, Grubhub has it completely backwards—this is not a contract claim masquerading as an intentional tort, but an intentional tort concealed by the pretext that Grubhub was generating legitimate orders by telephone.

Grubhub also relies on *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680–81 (3d Cir. 2002), but state and federal courts alike question whether *Werwinski* is still good law. *Busch v. Domb*, 17-cv-2012, 2017 WL 6525779, *3 (E.D. Pa. Dec. 21, 2017) ("Since *Werwinski*, Pennsylvania courts have weighed in—and disagreed

with the holding of the Third Circuit.").[4] Even assuming *Werwinski* was still good law, the economic loss doctrine does not bar intentional torts where the misconduct goes beyond non-performance of a contract obligation and rises to the level of an intentional tort. Grubhub's known, repeated, and concealed conversion of revenue under the pretext of an agreement does just that and, therefore, sounds in tort.[5]

### B. Plaintiffs' Conversion Claim Seeks To Recover Money Stolen.

Relatedly, Plaintiffs do not allege a mere obligation to pay money, and the cases upon which Grubhub relies to make its argument are wholly inapposite and, in some instances, even support Plaintiffs' position that its conversion claim is separate and distinct from its breach of contract claim. For example, in *Montgomery*, the Court explained that "if a plaintiff entrusts money or goods with the defendant, with the intent that the defendant sell or transfer the goods and give the proceeds to the plaintiff, and defendant keeps the proceeds or applies it to his own use, there has been conversion." *Montgomery v. Fed. Ins. Co.*, 836 F. Supp.

---

[4] *See Knight v. Springfield Hyundai*, 81 A.3d 940, 952 (Pa. Super. Ct. 2013) (UTPCPL claims are not subject to the economic loss doctrine because they are statutory claims that do not sound in negligence); *Dixon v. Northwestern Mutual*, 146 A.3d 780 (Pa. Super. Ct. 2016); *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 412 (E.D. Pa. 2016) ("[S]ix appellate judges in Pennsylvania and a highly regarded trial judge have rejected *Werwinski* as a proper statement of Pennsylvania law."); *Kantor v. Hiko Energy, LLC*, 100 F. Supp. 3d 421, 427–29 (E.D. Pa. 2015) ("*Werwinski* no longer has any vitality" and holding that the economic loss doctrine did not apply).

[5] Grubhub's arguments about Plaintiffs' entitlement to funds and Grubhub's justification for deducting commissions (Grubhub Br. at 13) raise questions of fact that cannot be decided at this stage.

292, 300 (E.D. Pa. 1993) (citation omitted). That is precisely the situation here. Grubhub obtains all of a restaurants' proceeds from takeout orders that are generated on its platform and then deducts commissions, payment processing fees, and delivery fees before remitting the net proceeds to restaurants. (¶¶29, 89). Plaintiffs' contracts with Grubhub do not permit Grubhub to charge commissions for any telephone orders. (¶27). Moreover, under no circumstance was Grubhub permitted to take commissions on telephone calls that did not result in a purchase, though Grubhub routinely did so. (¶¶85, 93). Grubhub withheld proceeds even though it knew it was not entitled to them either because it did not contract with Plaintiffs to charge them or because calls did not result in purchases. (¶90).

To be clear, Plaintiffs are not alleging that Grubhub unlawfully took proceeds earned on takeout orders generated through its online or mobile platform. Rather, Grubhub retained commissions for telephone orders as if it had generated the purchases, as with orders placed online or through the mobile application. Thus, unlike *Scott v. Philadelphia Hous. Auth.*, No. 10-cv-4723, 2011 WL 1791095 (E.D. Pa. May 11, 2011), relied upon by Grubhub, Grubhub's conduct is not covered under the contract. Grubhub misappropriated revenue that it knew rightfully belonged to the restaurants under the pretext that Grubhub had generated commissionable purchases over the phone when it knew it did not have the capability to do so. Grubhub's taking had no justification—contractual or

otherwise. Grubhub then concealed its conversion by distributing false and misleading ledgers and statements every month purporting to deduct legitimate commissions earned on telephone orders. Plaintiffs do not allege a mere obligation to pay money, but rather an intentional taking and use of another's funds.

## II.     PLAINTIFFS STATED A  CLAIM UNDER THE CFA.

### A.     The Complaint Alleges Nationwide Application Of The CFA.

The Illinois Supreme Court has held that rather than simply looking where the plaintiffs are located, determining whether the CFA applies turns on *where* the transactions at issue took place. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853 (Ill. 2005).  Despite citing to *Avery*, Grubhub asserts that the CFA does not apply to consumers residing outside Illinois.[6]

Indeed, any plaintiff "may pursue a private cause of action under the Consumer Fraud Act if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." 835 N.E.2d at 853-54.[7] Moreover,

---

[6] Grubhub's argument is more appropriately raised at class certification, after the parties have had the benefit of discovery, but the Court may nevertheless reject it now, taking Plaintiffs' factual allegations as true at this stage of the litigation. Moreover, Grubhub raises a series of irrelevant and factually incorrect contentions outside of the pleadings in a series of footnotes that this Court may ignore. *See, e.g.,* Grubhub Br. at n.3 and n.4.

[7] *Ivanhoe Fin., Inc. v. Mortg. Essentials*, No. 03-cv-6887, 2004 WL 856591, *2 (N.D. Ill. Apr. 21, 2004) (plaintiff's residency not the focus of the inquiry); *Cirone–Shadow v. Union Nissan*, No. 94–cv–6723, 1995 WL 238680, *5 (N.D. Ill. April 20, 1995) (CFA does not specifically limit its scope to Illinois residents); *Fry v. UAL Corp.*, 136 F.R.D. 626, 637 (N.D. Ill. 1991).

other Illinois courts have permitted claims to proceed where the deceptive acts and practices were perpetrated in Illinois. *See Miner v. Gillette Co*., 428 N.E.2d 478 (Ill. 1981) (a class action was certified that included nonresidents of Illinois and involved several counts, including one based on the CFA).[8]

Unlike *Avery*, where the "overwhelming majority of the circumstances" took place outside Illinois, the court may infer that Grubhub's conduct primarily took place in Illinois because Grubhub is headquartered in Illinois and, therefore, a reasonable inference may be drawn that the employees who conceived, designed, approved, and implemented the scheme were based in Illinois. The court may infer that the agreements and deceptive ledgers were created in Illinois as well.

These facts also support a finding that the application of the substantive law of Illinois, *i.e.*, the CFA, is consistent with the requirements of procedural due process given Illinois's significant contacts to the claims asserted here. *Martin v. Heinold Commodities, Inc*., 510 N.E.2d 840, 846-47 (Ill. 1987) (citations omitted). *See also Gordon v. Boden*, 586 N.E.2d 461 (Ill. App. 1991), *appeal denied*, 591 N.E.2d 21, *cert. denied*, 506 U.S. 907 (1992). In *Martin*, the court held that the CFA applied to non-Illinois residents because Illinois had a legitimate interest in

---

[8] *See also Perry v. Household Retail Servs., Inc*., 953 F. Supp. 1370, 1377 (M.D. Ala. 1996) *aff'd sub nom.* 268 F.3d 1067 (11th Cir. 2001) (holding CFA applied to non-Illinois residents); *Walmsley v. Mercury Fin. Co*., No. 92-cv-433, 1993 WL 13930869, *9 (S.D. Fla. Sept. 10, 1993) (CFA "fairly reaches transactions conducted by Illinois-headquartered companies…with out-of-state residents.").

seeing companies operate lawfully within its borders. Due process was satisfied where the defendant's operations, contracts, and misconduct took place in Illinois. As in *Martin,* the CFA should apply nationwide as Illinois has a significant interest in ensuring that conduct within its boundaries be lawful. Grubhub's business is based in Illinois, and its contracts with Plaintiffs include a choice-of-law provision in favor of Illinois. Moreover, the parties' relationship is centered in Illinois where the misconduct leading to the injury originated. *Ingersoll v. Klein,* 262 N.E. 2d 593, 596-97 (Ill. 1970).

### B. Plaintiffs' CFA Claim Is Separate From Their Contract Claim.

The CFA is meant to "protect consumers and borrowers and businessmen against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…."[9] "[U]nfair methods of competition and unfair or deceptive acts or practices," including "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact,… in the conduct of any trade or commerce" are unlawful. 815 ILCS 505/2. These acts differentiate Plaintiffs' CFA claim from breach of contract.

As with the conversion claim, the CFA claim is separate and distinct from

---

[9] Historical and Statutory Notes, 815 ILCS 505/1, West's Smith-Hurd Ill. Compiled Statutes Annotated at 562 (1993).

Plaintiffs' breach of contract claim and may co-exist with it. *Poindexter v. Nat'l Mortg. Co.*, No. 94-cv-5814, 1995 WL 242287 (N.D. Ill. 1995). In *Poindexter*, the court held that "the availability of a contract claim does not shield a defendant from the Act." *Id.* at *5. The court found that the plaintiff had not alleged merely an isolated breach of contract, but rather was a victim of the defendant's systematic undertaking to extract excessive escrow payments from a class of consumers. *Id.* at *6. There, the defendant's conduct was "unfair" because the defendant extracted the funds without "color of right," and the conduct was "deceptive" because most borrowers are "unable to perform the mathematical computations necessary to determine proper escrow requirements" and therefore "accept their lenders' representations concerning the proper requirements on faith, and are not aware that excessive escrow amounts are required." *Id.* at *5. Similarly, in *People v. All American Aluminum & Constr. Co. Inc.*, 524 N.E.2d 1067, 1072 (Ill. App. 1988), the court reinstated a CFA claim despite the existence of home remodeling contracts with various warranties and guarantees because the defendant performed negligent work in violation of these assurances and disregarded its warranty obligations when the customers demanded satisfaction. The Court held "allegations reach beyond mere negligence or breach of contract. The acts or practices alleged offend the public policy of this State." *Id.*[10]

---

[10] *Gen. Ins. Co. of Am. v. Clark Mali Corp.*, No. 08-cv-2787, 2010 WL 1286076,

Moreover, Grubhub's cited cases are distinguishable. (Grubhub Br. at 17). First, Grubhub relies on *Sklodowski v. Countrywide Home Loans, Inc.*, 832 N.E.2d 189, 196 (Ill. App. Ct. 2005), but this case stands for the proposition that a consumer fraud claim does not exist when the issue is contract interpretation, such as whether payment in 14 days was "prompt[]." Likewise, in *Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899 (7th Cir. 2006), a hotel chain failed to honor a contracted rate implicating interpretation issues, not fraud. Here, Grubhub's misconduct does not stem from contract interpretation as Grubhub had no colorable entitlement to commissions on calls that did not result in purchases under the contract, making the conduct akin to *Poindexter*. Grubhub committed a known, systemic deception over many years by extracting revenues belonging to restaurants under the pretense that it had generated orders. The CFA claim is not a contract claim masquerading as a tort but a tort committed under contractual pretext.

### C. Plaintiffs' CFA Claim Is Timely.

Plaintiffs allege that Grubhub engaged in a scheme to prevent Plaintiffs and members of the Class from determining that Grubhub charged them for calls that did not result in orders. (¶¶ 44-45). In its supporting brief, Grubhub ignores those allegations and suggests that Plaintiffs should have detected its wrongdoing years

---

*5 (N.D. Ill. Mar. 30, 2010) (refusing to perform a contract distinct from situation where "non-performance is concealed. . . [by] a series of dilatory, deceptive and punitive maneuvers designed to mask that non-performance").

ago. (Grubhub Br. at 18-21). Grubhub's argument ignores many of the allegations in the Complaint, however. Even when Grubhub does acknowledge the Complaint, it seeks to spin the allegations in its favor, despite the rule that the Court must construe the allegations in the light most favorable to Plaintiffs. When the Court considers all of the allegations in that light, it becomes clear that Grubhub has come nowhere close to satisfying its heavy burden of demonstrating that the statute of limitations applies.

"Generally, the statute of limitation is not an appropriate ground for a motion to dismiss brought pursuant to Rule 12(b)(6), and an exception is made only 'where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.'" *Escobar v. Pa. Higher Ed. Assistance Agency Servs., LLC*, No. 17-cv-4212, 2018 WL 1740364, *4 (E.D. Pa. Apr. 11, 2018) (*Budzash v. Howell Twp.*, 451 Fed. App'x 106, 109 (3d Cir. 2011)). "Statute of limitations issues normally implicate factual questions… therefore a defendant bears a heavy burden in seeking to establish as a matter of law that the challenged claims are barred." *Id.* (quote omitted; alteration in original). Moreover, while a court may entertain a motion to dismiss on statute of limitations ground, "it may not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that  a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an

affirmative defense." *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014). Thus, if a "pleading does not reveal when the limitations period began to run… the statute of limitations cannot justify Rule 12 dismissal." *Id.* (quote omitted).

The Complaint describes Grubhub's efforts to conceal its misconduct. In particular, the Complaint notes that while restaurants were supposed to have access to recordings of orders placed by telephone, Grubhub "universally disabled such access in an effort to conceal Grubhub's unlawful business practice." (¶45). The Complaint also alleges that Grubhub has made a number of misleading statements about its practices. For example, Grubhub's founder Mike Evans stated that Grubhub can "track the calls and bill accordingly" and declined to provide more details. (¶35). His statement that Grubhub "bill[s] accordingly" implies that Grubhub only bills for actual orders, not for phone calls that do not result in orders. Similarly, Evans stated that Grubhub uses "a few key indicators" to determine if a call results in an order, and a Grubhub representative repeated the suggestion that Grubhub uses many factors in making its determination. (¶¶ 41, 42). That same representative suggested that Grubhub double-checked its data so that "if our algorithm makes a mistake, we can rectify…." (¶42).

The statute of limitations does not begin to run until a plaintiff knows or reasonably should know that he has been injured and that his injury was wrongly caused. *Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1137

(Ill. 1995). Grubhub's public statements did not, and could not, put Plaintiffs on notice that they have a claim. Rather, Grubhub's statements led restaurants reasonably to assume that Grubhub was looking at many data points to determine whether a call resulted in an order and would "rectify" any mistakes. (¶¶35-42). On the contrary, Grubhub looked **only** to the length of the call and assumed that calls over a certain length resulted in an order without confirming the same. (¶43).

Grubhub nonetheless asks the Court to conclude, at this preliminary stage, that the statute of limitations applies. In doing so, Grubhub ignores all of the allegations about its efforts to conceal its conduct by disabling access to the recordings of the calls in question. (¶¶45, 60-61). When Grubhub does acknowledge the allegations in the Complaint, it impermissibly attempts to draw from those allegations inferences in its favor. For example, Grubhub cites Evans' public statements about Grubhub and claims that his reference to "bill[ing] accordingly" put Plaintiffs on notice that Grubhub was billing for telephone orders. Those statements, however, suggest that Grubhub was using many factors to try to bill for actual orders, not that Grubhub based its billing on a simple assumption that every call over 45 seconds generated an order and therefore required payment of a fee to Grubhub. In reality, rather than employ any sort of algorithm, Grubhub only considered the length of a call. Similarly, Grubhub points to Plaintiffs' access to online ledgers as evidence of Plaintiffs' awareness of their claims. Those

ledgers, however, only informed Plaintiffs that Grubhub had billed them. Nothing in the Complaint establishes—or even suggests—that Grubhub's invoices provided Plaintiffs with information to determine that the amounts stated on invoices were incorrect or that they were tied to calls that did not result in orders. Indeed, the invoices, coupled with Grubhub's decision to disable access to the recordings, demonstrate that Grubhub actively concealed that information from Plaintiffs. In short, the face of the Complaint does not establish the applicability of the statute of limitations. Far from it—the face of the Complaint establishes the factual predicate to apply the discovery rule.

### D. Plaintiffs' CFA Claim is Pled With Particularity.

To state a claim under the CFA, a plaintiff must allege: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff, (5) proximately caused by the deception. *Avery,* 835 N.E.2d at 850 (Ill. 2005) (citing *Oliveria v. Amoco Oil Co.*, 776 N.E.2d 151 (Ill. 2002)). The CFA does not require actual reliance by the plaintiff, an untrue statement regarding a material fact, or knowledge or belief by the party making the statement that the statement was untrue. *Martin v. Heinold Commodities, Inc.*, 643 N.E.2d 734,754 (Ill. 1994). Moreover, under the heightened federal pleading standard of Rule 9(b) of the Federal Rules of Civil

Procedure, a plaintiff "alleging fraud… must state with particularity the circumstances constituting fraud." The Seventh Circuit has summarized the particularity requirement as "the who, what, when, where, and how." *See Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 569 (7th Cir. 2012) (citation omitted).

The Complaint alleges that at least seven years ago, Grubhub designed, implemented, and executed on a plan to extract from restaurants' revenues millions of dollars in phony commissions under the pretext that Grubhub was generating orders by telephone. (¶1). Meanwhile, Grubhub had no infrastructure to take or process telephone orders and was merely rerouting calls to restaurants. (¶ 28). Grubhub recorded these rerouted calls, and while it provided a prerecorded message to diners advising that the call was being recorded, the same notice was not given to restaurant employees. Thus, restaurants receiving these calls had no way of knowing that they were receiving a rerouted call from Grubhub. (¶33). In addition, the recordings were not made available by Grubhub to Plaintiffs or the other members of the Class until after Plaintiffs complained about the phony commissions. (¶¶45, 60-61, 65).

Recent recordings, which were made available only after Plaintiffs complained, showed that Grubhub knew that many calls rerouted to restaurants did not result in purchases. (¶¶66-67). Grubhub nevertheless charged restaurants commissions on every call lasting more than 45 seconds. (¶¶28, 43, 61). Grubhub

concealed this scheme by claiming in its regular ledgers and statements to restaurants that it was deducting commissions owed on telephone orders placed through Grubhub and disabling prior recordings so that restaurants could not access them. (¶¶45, 60-61). Grubhub knew its calculation of telephone order commissions was false and that restaurants were relying on the accuracy of Grubhub's statements in accepting these deductions. Neither Plaintiffs, nor the nationwide class of restaurants, knew or could have known that the telephone commissions were phony. (¶45). This deception involving trade and commerce directly caused actual damages to the Plaintiffs and the nationwide class in a uniform manner. (¶¶100-101). As such, Plaintiffs have sufficiently alleged the who, what, when, and where of their CFA claim.

By ignoring, and then cherry-picking, allegations in the Complaint, Grubhub claims that Plaintiffs' CFA claim is "implausible" because one of the various deceptive practices was purportedly disclosed to restaurants, citing to *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 962 (Ill. 2002). In *Robinson,* the court held that the lease agreements clearly disclosed the practice alleged to be deceptive by the plaintiff. Unlike in *Robinson*, Grubhub's agreements did not disclose Grubhub's practice of rerouting calls to restaurants or the fact that Grubhub was not capable of taking telephone orders (¶¶50-51). References in the Complaint to two obscure blog posts over an eight year-period does not constitute disclosure or

notice to restaurants of Grubhub's deceptive practices and is well below the level of disclosure and notice found in *Robinson* or capable of putting the Plaintiffs on inquiry notice.[11] Moreover, Grubhub does not (and cannot) assert that the Complaint alleges that restaurants knew about its deceptive practice of charging commissions on calls over 45 seconds when no purchase was made, or that Grubhub was issuing false and misleading ledgers to restaurants.

Next, Grubhub asserts that Plaintiffs failed to allege facts demonstrating that Grubhub "intended" for plaintiffs to rely on the deceptive conduct. However this argument ignores the plain language of Rule 9(b) which makes clear that intent may be alleged generally. *See* Fed. R. Civ. P. 9(b) ("Malice, **intent**, knowledge, and other conditions of a person's mind **may be alleged generally**.") (emphasis added); *Simonian v. Oreck Corp.*, No. 10-cv-1224, 2010 WL 3385465, *4 (N.D. Ill. Aug. 23, 2010) ("Simonian has alleged deceptive intent generally, which conforms to the requirements of Rule 9(b)."); *Petri v. Gatlin*, 997 F. Supp. 956, 976 (N.D. Ill. 1997) ("Rule 9(b) counsels against dismissal for failure to plead fraudulent intent with specificity"). Plaintiffs alleged that "Grubhub intended that Plaintiffs and the other Class members would rely upon Grubhub's deception and

---

[11] *In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.,* 543 F.3d 150, 161–64 (3d Cir. 2008), *aff'd sub nom.*, *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010) (reversing dismissal of securities fraud class action where medical journal articles, a government warning letter, multiple consumer fraud, product liability, and personal injury suits, and other published materials did not trigger inquiry notice).

unfair acts and practices." (¶99). Moreover, the Complaint makes clear that Grubhub provided Plaintiffs false and misleading statements and disabled recordings to conceal its misconduct. (¶¶45, 60-61). The Court may reasonably infer from the allegations that Grubhub intended for restaurants to rely on Grubhub's deceptive conduct. Finally, Grubhub perfunctorily argues in footnote 7 of its brief that the allegations fail to allege "unfair" acts when the Complaint plainly alleges unfairness. (¶¶98-101). *See, infra*, Section III.D.

## III.  PLAINTIFFS STATED A CLAIM FOR BREACH OF CONTRACT.

Tiffin Mount Airy has stated a claim against Grubhub for breach of contract, and Grubhub cannot change that fact by ignoring allegations in the Complaint. Plaintiffs, including Tiffin Mount Airy, have plead the necessary elements to establish a breach of contract under Illinois law: (1) the existence of a valid and enforceable contract; (2) substantial performance by Plaintiffs; (3) breach of contract by Grubhub; and (4) a resultant injury to Plaintiffs. *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015) (citing *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. 2004)).

As set forth in the Complaint, restaurants contract with Grubhub to gain access to Grubhub's platform to increase takeout orders made with the restaurants. (¶¶21-23). They enlist Grubhub's services and pay commissions on takeout orders generated by Grubhub. (¶22). Plaintiffs' contracts with Grubhub do not state that

Grubhub will be charging commissions on orders that Grubhub did not generate. (*See* ¶50 ("Grubhub's contracts with Plaintiffs do not provide for the imposition of a commission or fee for telephone orders **taken by and placed with the restaurant itself**.") (emphasis in original)). In fact, neither contract makes clear that Grubhub will create a new local telephone number for the restaurant that automatically reroutes calls to the restaurant. (¶¶5, 51, 53-56). Nor does either contract permit Grubhub to charge commissions on telephone orders where it has absolutely no involvement. Grubhub "merely created a local telephone number for the restaurant, diverted diners' calls to the restaurant, and played no part in taking, processing, or delivering the order—if one was ever made." (¶44). Because neither of Plaintiffs' contracts with Grubhub makes clear that Grubhub will charge commissions for these orders that it has done nothing to generate, Grubhub breached those agreements "by charging commissions for telephone orders that were not placed with Grubhub, but rather with the restaurants themselves." (¶85).

Contrary to Grubhub's assertion, the contracts do not authorize Grubhub to create a new numbers for restaurants and reroute calls to the restaurants who then do all the work to generate a resulting takeout order. Thus, where the contract does not specify that Grubhub will be creating an entirely new telephone number and using that number (as opposed to the restaurant's **actual** phone number) on the Grubhub microsite, it is of no moment that Tiffin Mount Airy's contract states that

fees will be charged for "orders [that] are placed by telephone using contact information from GrubHub.com...." (¶26). Indeed, that provision does not make clear that the restaurant itself- rather than any sort of Grubhub telephone platform- will be taking and processing the telephone orders from start to finish.[12]

Finally, Plaintiffs only agreed to pay commissions on orders. (¶25). Therefore, Grubhub does not earn a commission until it satisfies the condition precedent of generating an order. Grubhub's failure to satisfy this condition precedent before charging commissions is a breach. (¶¶40, 43-44, 58-68, 83-85).

## IV.    **CONCLUSION**

Since the Complaint sufficiently alleges a breach of contract, conversion and CFA violations on a standalone and/or alternative basis of recovery, the Court should deny Grubhub's partial Motion to Dismiss[13] and allow parties to proceed with discovery.

---

[12] Any contractual ambiguities must be construed against Grubhub as drafter of the agreement. *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 319 (Ill. 1987) (citations omitted); *Homeowners Choice, Inc. v. Aon Benfield, Inc.*, 550 F. App'x 311, 314-15 (7th Cir. 2013).

[13] Grubhub's request for dismissal "with prejudice" is improper because there is no basis to deny Plaintiffs an opportunity to amend. *Coachtrans, Inc. v. Uber Techs., Inc.*, No. 16-cv-88, 2016 WL 4417261, *3 (E.D. Pa. Aug. 19, 2016) (dismissing with prejudice must be justified by undue delay, bad faith or futility).

Dated: February 8, 2019                    Respectfully submitted,

                                            By: */s/ Catherine Pratsinakis*
                                                Catherine Pratsinakis, Esq.
                                                (PA ID No. 88086)
                                                Marie-Theres DiFillippo, Esq.
                                                (PA ID No. 316012)
                                                DILWORTH PAXSON LLP
                                                1500 Market Street, Suite 3500E
                                                Philadelphia, PA 19102
                                                Telephone: (215) 575-7000
                                                Facsimile: (215) 575-7200
                                                cpratsinakis@dilworthlaw.com
                                                mdifillippo@dilworthlaw.com
                                                *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Catherine Pratsinakis, hereby certify that on February 8, 2019, a true and correct copy of the foregoing Plaintiffs' Amended Opposition to Grubhub Inc.'s Motion to Dismiss was served via the Court's ECF System upon all counsel of record as follows:

Rebekah B. Kcehowski
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
T: (412) 391-3939
F: (412) 394-7959
rbkcehowski@jonesday.com


Dated: February 8, 2019                   By: */s/ Catherine Pratsinakis*
                                                  Catherine Pratsinakis, Esq.
                                                  (PA ID No. 88086)
                                                  Marie-Theres DiFillippo, Esq.
                                                  (PA ID No. 316012)
                                                  DILWORTH PAXSON LLP
                                                  1500 Market Street, Suite 3500E
                                                  Philadelphia, PA 19102
                                                  Telephone: (215) 575-7000
                                                  Facsimile: (215) 575-7200
                                                  cpratsinakis@dilworthlaw.com
                                                  mdifillippo@dilworthlaw.com
                                                  *Attorneys for Plaintiffs*