# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TIFFIN EPS, LLC** *and* **TIFFIN MOUNT AIRY, LLC**, *on behalf of themselves and all others similarly situated*,<br><br>        Plaintiffs,<br><br>    v.<br><br>**GRUBHUB INC.**,<br><br>        Defendant. | No. 2:18-cv-05630-PD |

## DEFENDANT GRUBHUB INC.'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
## <u>TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS</u>

Rebekah B. Kcehowski
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA  15219
T:  (412) 391-3939
F:  (412) 394-7959
rbkcehowski@jonesday.com

*Attorney for Defendant*
*Grubhub Inc.*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................1

STATEMENT OF FACTS ........................................................................2

ARGUMENT ........................................................................................6

I.   The FAA Governs And Requires Enforcement of Arbitration
     Provisions With Class Waivers ............................................................6

II.  Plaintiffs Are Bound By The Terms of Their Multiple
     Agreements That Compel Arbitration....................................................8

     A.   The Parties' Contracts Include Agreements to Arbitrate...........9

     B.   Plaintiffs' Participation in "Grubhub for Restaurants"
          Also Compels Arbitration ......................................................16

III. The Arbitration Clauses Encompass the Dispute..............................23

CONCLUSION .....................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)........................................................................7, 15

*Andren & Assocs. v. Scitex Am. Corp.*,
1995 WL 669109 (N.D. Ill. Nov. 8, 1995) ...........................................9

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011).................................................................2, 6, 7, 8

*Berkery v. Cross Country Bank*,
256 F. Supp. 2d 359 (E.D. Pa. 2003)..............................................8, 23

*Boomer v. AT&T Corp.*,
309 F.3d 404 (7th Cir. 2002) .............................................................10

*Cairo, Inc. v. Crossmedia Servs., Inc.*,
2005 WL 756610 (N.D. Cal. Apr. 1, 2005)........................................19

*Carnival Cruise Lines, Inc. v. Shute*,
499 U.S. 585 (1991)............................................................................18

*Crawford v. Beachbody, LLC*,
2014 WL 6606563 (S.D. Cal. Nov. 5, 2014)......................................17

*Crawford v. Talk Am., Inc.*,
2005 WL 2465909 (S.D. Ill. Oct. 6, 2005)...........................................9

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)........................................................................7, 15

*Epic Sys. Corp. v. Lewis*,
--- U.S. ---, 138 S. Ct. 1612 (2018).................................................7, 15

*Fagerstrom v. Amazon.com, Inc.*,
  141 F. Supp. 3d 1051 (S.D. Cal. 2015), *aff'd*, 709 F. App'x 862
  (9th Cir. 2017)......................................................................................14

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995)................................................................................9

*Fteja v. Facebook, Inc.*,
  841 F. Supp. 2d 829 (S.D.N.Y. 2012) ...................................................18

*Geldermann, Inc. v. CFTC*,
  836 F.2d 310 (7th Cir. 1987) ..................................................................9

*Green Tree Fin. Corp. v. Randolph*,
  531 U.S. 79 (2000)..................................................................................8

*Gutierrez v. Wells Fargo Bank, N.A.*,
  889 F.3d 1230 (11th Cir. 2018) ..............................................................1

*Hammarquist v. United Cont'l Holdings, Inc.*,
  809 F.3d 946 (7th Cir. 2016) ...........................................................11, 12

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
  575 F. Supp. 2d 696 (D. Md. 2008)......................................................11

*Hearon v. AstraZeneca LP*,
  2003 WL 21250640 (E.D. Pa. Mar. 24, 2003) .....................................24

*Hubbert v. Dell Corp.*,
  835 N.E.2d 113 (Ill. App. Ct. 2005) .....................................................17

*Klepper v. SLI, Inc.*,
  45 F. App'x 136 (3d Cir. 2002) ..............................................................1

*Medtronic Ave Inc. v. Cordis Corp.*,
  100 F. App'x 865 (3d Cir. 2004) ..........................................................23

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017) ...................................................................16

*Midland Hotel Corp. v. Reuben H. Donnelley Corp.*,
515 N.E.2d 61 (Ill. 1987) ......................................................................9

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .................................................................................8

*Patco Constr. Co. v. People's United Bank*,
2011 WL 2174507 (D. Me. May 27, 2011) .........................................11

*Plazza v. Airbnb, Inc.*,
289 F. Supp. 3d 537 (S.D.N.Y. 2018) ..........................................17, 18

*Provident Fed. Sav. & Loan Ass'n v. Realty Ctr., Ltd.*,
454 N.E.2d 249 (Ill. 1983) ...................................................................9

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967) .............................................................................1

*Puleo v. Chase Bank USA, N.A.*,
605 F.3d 172 (3d Cir. 2010) ...........................................................8, 23

*Ragan v. AT&T Corp.*,
824 N.E.2d 1183 (Ill. App. Ct. 2005) .........................................10, 12

*Register.com, Inc. v. Verio, Inc.*,
356 F.3d 393 (2d Cir. 2004) .........................................................17, 19

*Russell v. Raynes Assocs. L.P.*,
569 N.Y.S.2d 409 (1st Dep't 1991) ....................................................13

*Sacchi v. Verizon Online LLC*,
2015 WL 765940 (S.D.N.Y. Feb. 23, 2015) ................................11, 14

*Selden v. Airbnb, Inc.*,
2016 WL 6476934 (D.D.C. Nov. 1, 2016) .........................................18

*Suarez-Valdez v. Shearson Lehman/American Express, Inc.*,
858 F.2d 648 (11th Cir. 1988) .............................................................1

*Sw. Airlines Co. v. BoardFirst, L.L.C.*,
  2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) .....................................16, 17, 18

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 2d 904 (N.D. Cal. 2011) .........................................................18, 20

*Ticketmaster Corp. v. Tickets.Com, Inc.*,
  2003 WL 21406289 (C.D. Cal. Mar. 7, 2003)....................................................17

*Turner Constr. Co. v. Midwest Curtainwalls, Inc.*,
  543 N.E.2d 249 (Ill. App. Ct. 1989) .............................................................9, 10

*Valle v. ATM Nat., LLC*,
  2015 WL 413449 (S.D.N.Y. Jan. 30, 2015) .......................................................13

*Wilson v. Wilson*,
  577 N.E.2d 1323 (Ill. App. Ct. 1991) .................................................................9

*Winters v. AT&T Mobility Servs., LLC*,
  2017 WL 2936800 (C.D. Ill. July 10, 2017).................................................13, 15

## STATUTES

Federal Arbitration Act (9 U.S.C. §§ 1, *et seq.*) ...........................................1, 2, 6, 7

## OTHER AUTHORITIES

Mark A. Lemley, *Terms of Use*,
  91 MINN. L. REV. 459, 477 (Dec. 2006) ......................................................18, 19

# INTRODUCTION

Pursuant to the Federal Arbitration Act (9 U.S.C. §§ 1, *et seq.*) ("FAA"), Defendant Grubhub Inc. moves this Court for an order (i) compelling Plaintiffs Tiffin EPS, LLC and Tiffin Mount Airy, LLC ("Plaintiffs") to honor the arbitration provisions to which they expressly agreed and which compel Plaintiffs to arbitrate their claims against Grubhub individually, and (ii) dismissing or staying these proceedings until and so that individual arbitration can occur in accordance with the parties' agreements.[1]

In making this motion to compel, Grubhub preserves all of its rights with respect to the unnamed putative class members, including seven other Tiffin restaurants, who also signed contracts with Grubhub and agreed to arbitration and class waiver provisions, but who did not join in this suit.[2]

---

[1] Merits discovery and the Rule 26(f) conference cannot go forward while this motion to compel arbitration is pending, *see Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) ("upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate"); *Klepper v. SLI, Inc.*, 45 F. App'x 136, 139 (3d Cir. 2002) (discovery may not proceed until the court decides arbitration motion); *id.* (quoting *Suarez-Valdez v. Shearson Lehman/American Express, Inc.*, 858 F.2d 648, 650 (11th Cir. 1988) ("'The district court erred in refusing to stay discovery. An agreement to arbitrate is an agreement to proceed under arbitration and not under court rules [like the Fed. R. Civ. P.] . . . .") (alterations in original)), thus Plaintiffs' motion to compel a Rule 26(f) conference (ECF 13) and proceed with initial disclosures and merits discovery lacks basis and should be denied.

[2] *See Gutierrez v. Wells Fargo Bank, N.A.*, 889 F.3d 1230 (11th Cir. 2018) (holding no waiver of arbitration rights against unnamed class members, where defense raised throughout litigation); *id.* at 1238 ("[I]t would have been impossible in

## STATEMENT OF FACTS

Plaintiffs, the owners of two Philadelphia-area restaurants called Tiffin Indian Cuisine, are part of a larger restaurant organization, Tiffin.com, Inc. ("Tiffin.com"), owned and operated by Munish Narula, a former investment banker and University of Pennsylvania Wharton School MBA.  Plaintiffs are only two of ten Tiffin.com restaurants, with seven of their sister restaurants also enrolling in Grubhub between 2011 and 2017.  The last Tiffin.com restaurant signed up with Grubhub on June 2, 2017.  *See* Declaration of Marielle Kokos ("Kokos Decl.") at ¶¶ 12-14.

Plaintiffs signed contracts with Grubhub in April 2011, when they executed a "Grubhub Sign-in Form" that enrolled them in Grubhub's platforms.  *Id.* at ¶ 23. The forms required Plaintiffs to provide restaurant information and select an advertising package, and provided for other terms and conditions that would govern their relationship with Grubhub.  The single-page form expressly informed Plaintiffs that, through their "continu[ed] participation," they also agreed to be "bound" by Grubhub's incorporated Terms of Use (the "Grubhub.com Terms of Use"), which detailed

---

practice to compel arbitration against speculative plaintiffs and jurisdictionally impossible for the District Court to rule on those motions before the class was certified.").  Here, Plaintiffs' attempt to pursue class claims on behalf of tens of thousands of restaurants that, over the years, have signed various express arbitration agreements consenting to (and even checked boxes affirmatively consenting to) arbitration, and waiving their right to participate in this very action, represents a "device[] and formula[]" designed to undercut arbitration as a method for dispute resolution.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011) (citations omitted).  The FAA does not permit such tactics.

more thoroughly than the one-page document the terms and conditions that would govern their relationship.  Plaintiffs executed the agreements directly below the provisions incorporating the Grubhub.com Terms of Use.  Kokos Decl. at ¶ 24, Exs. A, B.  Since April 2016, these terms have included an express and unambiguous arbitration provision with a class action waiver:

**DISPUTE RESOLUTION**

I. Arbitration and Class Action Waiver.

You agree that all claims, disputes, or disagreements that may arise out of the interpretation or performance of this Agreement, or that in any way relate to your use of the Sites, the Materials, and/or other content on the Sites, shall be submitted exclusively to binding arbitration . . . .  You acknowledge and agree that you and Grubhub are each waiving the right to a trial by jury. You further acknowledge and agree that you waive your right to participate as a plaintiff or class member in any purported class action or representative proceeding.

Kokos Decl., Ex. S at 13 (2018 Grubhub.com Terms of Use).

Throughout the course of their eight-year relationship with Grubhub, Plaintiffs encountered the Grubhub.com Terms of Use any time they accessed any of the Grubhub platforms to, for example, view information on their restaurant's "microsite" contained on Grubhub's website, check their restaurant's placement on the Grubhub website, or confirm prices and other restaurant information, including promotions and images of food.  Kokos Decl. at ¶¶ 15-16.  Not once did Plaintiffs object to the terms.  *Id.* at ¶ 27.  And at least since April 2016, Tiffin.com has employed a "Director of Customer Engagement" and "Director of Marketing and Operations," who has communicated with Grubhub regarding "all Tiffin accounts."  *Id.* at ¶¶ 15-

16. Her emails with Grubhub representatives confirm that she monitors the Grubhub microsites for all of the Tiffin restaurants, investigates the Tiffin restaurants' placements on Grubhub websites, and updates the restaurants' menus, pricing, and other information on the Grubhub microsites. *Id.*, Exs. F-L.

In 2013, Tiffin EPS and Tiffin Mount Airy, respectively, joined "OrderHub," later changed to "GrubCentral," and now branded as "Grubhub for Restaurants" or "GFR," a responsive web application that allows participating restaurants to receive, display, and fulfill diner orders electronically (as opposed to via facsimile, as they had been doing since 2011). *Id.* at ¶¶ 9-10. GFR has its own operative terms of use. Every time Plaintiffs log into Grubhub for Restaurants, they acknowledge Grubhub's operative GFR Terms of Use (the "GFR Terms of Use"). *Id.* at ¶¶ 31-36, Ex. U. Since August 1, 2016, the GFR Terms of Use have likewise incorporated an express and unambiguous arbitration provision with a class action waiver:

> . . . You further acknowledge and agree that all claims or disputes arising out of this agreement, will be decided by an arbitrator through arbitration and not by a judge or jury ("Arbitration Agreement"). This Arbitration Agreement is governed by the Federal Arbitration Act ("FAA") and evidences a transaction involving commerce. The arbitration will be conducted before a single arbitrator under the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), which are available at www.adr.org. . . . The parties agree to bring any claim or dispute in arbitration on an individual basis only, and not as a class or collective action, and there will be no right or authority for any claim or dispute to be brought, heard or arbitrated as a class or collective action ("Class Action Waiver") . . . .

- 4 -

Kokos Decl., Ex. V at 10 (GrubCentral Terms of Use, predecessor to GFR); Ex. W at 11-12 (GFR Terms of Use) (substantively similar).

GFR-participating restaurants sign into Grubhub for Restaurants to process diner orders. Kokos Decl. at ¶ 33. Plaintiffs, accordingly, have logged into Grubhub for Restaurants *repeatedly on an ongoing and regular basis*, either on the website or through a Grubhub-provided tablet, to fulfill diner orders. For example, from January 2018 to January 2019 alone, Tiffin Mount Airy received at least 3,371 "Prepaid Orders" through Grubhub for Restaurants, averaging 259 orders per month. *Id.* at ¶ 34. Tiffin EPS similarly received at least 1,751 "Prepaid Orders," averaging 135 per month. *Id.* The restaurants had to be signed into Grubhub for Restaurants in order to process all of those orders. *Id.*

Nor are Plaintiffs strangers to the use, intent, and meaning of "Terms of Use" hyperlinks on a website sign-in page, or on a website generally. Tiffin.com has no fewer than three separate sets of "Terms" on its own website, each of which "bind[s]" the users and incorporates limitations of liability and other provisions that Tiffin.com in its "sole discretion" considers "important." Kokos Decl., Ex. M. Tiffin.com's T-Coin Rewards Program Terms and Conditions, for example, states that:

- it is "a binding agreement between you and Tiffin and will govern your participation in any and all Program offers."

- "[b]y participating in the Program, you agree to the Site Terms and Conditions . . . ."

- "Tiffin reserves the right to modify the Program, Terms and Conditions at any time, at its sole discretion, and without notice to you.  Participation in the Program is considered acceptance of Program Terms and Conditions and any modifications which might be made."

- "[p]articipants release Tiffin . . . from any and all liability . . . ."

*Id.*, Ex. M; *see also* Ex. N, "Referral Program Terms and Conditions" (substantively similar language); Ex. O, Tiffin.com "Terms of Use" ("[A]ny dispute arising out of such use of the website is subject to the laws of US or other regulatory authority").

Despite their express and repeated agreement to arbitrate on an individual basis, on December 31, 2018, Plaintiffs filed this putative nationwide class action.  Plaintiffs allege that Grubhub wrongfully charged commissions on telephone calls that did not result in an actual takeout "order" from the restaurants.  Compl. ¶ 2.  In doing so, Plaintiffs claim Grubhub breached its contracts with Plaintiffs.  *Id.* ¶ 83; *see id.* ¶¶ 93, 95.  But the plain terms of the parties' express agreements show that Plaintiffs cannot pursue this dispute in federal court or on a class-wide basis.  Rather, the parties' arbitration provisions compel dismissal and that the parties proceed, individually, in arbitration.

## **ARGUMENT**

## I.   **THE FAA GOVERNS AND REQUIRES ENFORCEMENT OF ARBITRATION PROVISIONS WITH CLASS WAIVERS**

The FAA governs the arbitration and arbitrability of disputes and provides that, as a matter of federal law, "[a] written provision" in a commercial contract evidencing an intention to settle disputes by arbitration "shall be valid, irrevocable,

and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Concepcion*, 563 U.S. at 336. The FAA was enacted in response to "widespread judicial hostility to arbitration," and now compels a liberal federal policy favoring arbitration. *Id.* at 339. Courts must "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985), including terms that "specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citation omitted); *see also Epic Sys. Corp. v. Lewis*, --- U.S. ---, 138 S. Ct. 1612, 1621 (2018).

Supreme Court precedent compels rigorous enforcement of arbitration agreements with class action waivers. *See Concepcion*, 563 U.S. 333 (holding state laws prohibiting class action waivers in consumer contracts violate the FAA); *Am. Express*, 570 U.S. 228 (holding class waivers valid, even when cost of individual arbitration exceeds potential recovery); *Epic Systems*, 138 S. Ct. at 1621 (holding class waivers valid, even in labor disputes). Indeed, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*, 470 U.S. at 218.

In determining whether to compel arbitration under the FAA, the Court determines only: (1) whether a valid agreement to arbitrate exists, and (2) whether the

particular dispute falls within the scope of the agreement. *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 178 (3d Cir. 2010) (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003)). If these factors are met, courts enforce arbitration agreements and class waivers in accordance with their terms. *Puleo*, 605 F.3d at 181; *see also Concepcion*, 563 U.S. at 344. Doubts are to be resolved in favor of the party moving to compel arbitration, *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983), and the Court may consider the operative contracts and other evidence beyond the complaint, *Berkery v. Cross Country Bank*, 256 F. Supp. 2d 359, 364 n. 3 (E.D. Pa. 2003). "[T]he party resisting arbitration"—here, Plaintiffs—"bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000).

## II.   PLAINTIFFS ARE BOUND BY THE TERMS OF THEIR MULTIPLE AGREEMENTS THAT COMPEL ARBITRATION

Valid arbitration agreements exist between Plaintiffs and Grubhub in at least two ways: *first*, through Plaintiffs' written contracts with Grubhub, each of which expressly incorporates the Grubhub.com Terms of Use, and which since April 2016 have compelled individual arbitration; and *second*, through Plaintiffs' participation in Grubhub for Restaurants (and its predecessors), binding them to Grubhub's GFR Terms of Use, which likewise compel individual arbitration.

### A.    The Parties' Contracts Include Agreements to Arbitrate

The validity of an arbitration agreement is determined under ordinary principles of state contract law.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see* Ex. A (Tiffin Mount Airy Agr.) at second to last bullet (selecting Illinois law); Ex. B (Tiffin EPS Agr.) (same).  Under Illinois law, the parties to a contract may incorporate by reference another document if that intention is clearly shown on the face of the contract.  *See Wilson v. Wilson*, 577 N.E.2d 1323, 1329 (Ill. App. Ct. 1991); *Provident Fed. Sav. & Loan Ass'n v. Realty Ctr., Ltd.*, 454 N.E.2d 249, 251 (Ill. 1983).  Where, as here, a contract incorporates a specific document by name, the intent is clear, and both parties are on notice of and bound by its terms. *See Turner Constr. Co. v. Midwest Curtainwalls, Inc.*, 543 N.E.2d 249, 251 (Ill. App. Ct. 1989) (noting the "additional provisions then become part of the [contract] as if they were expressly written in it").  This is true regardless of whether a party ever actually saw, read, or discussed those terms.  *See Andren & Assocs. v. Scitex Am. Corp.*, 1995 WL 669109, at *2 (N.D. Ill. Nov. 8, 1995); *cf. Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 515 N.E.2d 61, 65 (Ill. 1987) (parties need not "share the same subjective understanding as to the terms of the contract").  And the rule of incorporation applies even when the incorporated terms are provided in a different medium from the original contract—*e.g.*, first paper then a website.  *See Crawford v. Talk Am., Inc.*, 2005 WL 2465909 (S.D. Ill. Oct. 6, 2005) (granting motion to

compel arbitration where plaintiff received a welcome letter that directed her to a website incorporating terms and conditions).

Arbitration provisions are no exception—they, too, can be incorporated by reference, even where the initial contract makes no mention of arbitration. *See Turner Constr. Co.*, 543 N.E.2d at 252 (collecting cases); *cf. Geldermann, Inc. v. CFTC*, 836 F.2d 310, 318 (7th Cir. 1987) (holding "a written agreement to observe and be bound by the Charter, Rules and Regulations of the Association, and all amendments subsequently made thereto" constituted a consent to be bound by arbitration procedures later adopted by the Association).

Moreover, a company may update and amend contractual terms, and if the other party does not reject those terms, they become binding. Indeed, as recognized in Illinois, "silence can constitute an acceptance of an offer when it is reasonable, because of prior dealings or otherwise, that the offeree should notify the offeror if he does not intend to accept the offer." *Ragan v. AT&T Corp.*, 824 N.E.2d 1183, 1188 (Ill. App. Ct. 2005) (holding plaintiffs should have notified defendant if they did not wish to accept offer presented by Customer Services Agreement (CSA) where AT&T mailed the CSA; the CSA informed plaintiffs that by using or paying for AT&T's services, they were agreeing to the terms of the CSA; and if they did not want to be bound by those terms, they should have cancelled); *see also Boomer*

*v. AT&T Corp.*, 309 F.3d 404, 416 (7th Cir. 2002) ("In sum, the CSA Mailing constituted an offer and Boomer's continued use of AT&T services constituted an acceptance."); *Hammarquist v. United Cont'l Holdings, Inc.*, 809 F.3d 946, 949–50 (7th Cir. 2016) (plaintiffs failed to state a contract breach claim because they agreed to be bound by the defendant's "Program Rules," which allowed the defendant to "modify the program benefits at any time, with or without notice") (internal marks omitted); *see Sacchi v. Verizon Online LLC*, 2015 WL 765940, at *3 (S.D.N.Y. Feb. 23, 2015) (applying New Jersey law and finding that there was sufficient notice for an amended agreement newly inserting arbitration term when it was posted to Verizon's website and referenced in an email sent to Plaintiff).[3]

Here, when Plaintiffs executed their contracts with Grubhub in 2011, they each *expressly agreed* to abide by—and be bound by—Grubhub's incorporated Grubhub.com Terms of Use, which Plaintiffs acknowledged were subject to change. Kokos Decl. at ¶ 25. Tiffin Mount Airy's contract with Grubhub states:

> Please see GrubHub's Terms of Use at **www.GrubHub.com/legal/** which are subject to change. <u>The terms and conditions thereto shall bind my restaurant</u>

---

[3] *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 575 F. Supp. 2d 696, 707–08 (D. Md. 2008) (holding that unilateral amendments posted on defendant's website in accordance with the modification clauses in the earlier agreements were effective); *Patco Constr. Co. v. People's United Bank*, 2011 WL 2174507, at *25 (D. Me. May 27, 2011) (holding plaintiff bound by a modified banking agreement posted online where there was no dispute it agreed to the original agreement, which reserved right for the bank "to modify the terms and conditions of that agreement at any time effective upon publication"), *adopted in*, 2011 WL 3420588 (D. Me. Aug. 4, 2011), *aff'd in part, rev'd in part on unrelated grounds*, 684 F.3d 197 (1st Cir. 2012).

> <u>by my restaurant continuing participation and receipt of orders</u>.
>
> <u>I, the undersigned, hereby agree to the terms, conditions and stipulations</u> of this agreement on behalf of my restaurant as named herein.

Kokos Decl., Ex. A (hyperlink emphasis in original; other emphasis added).  Tiffin

EPS's contract similarly incorporated the Grubhub.com Terms of Use:

> Please see GrubHub's website at www.GrubHub.com/legal.  <u>The terms and conditions are subject to change by GrubHub</u> upon 30 days advance notice. After notice and the expiration of 30 days, <u>I acknowledge that continuing participation and receipt of orders shall bind my restaurant to any new terms and conditions</u>.

Kokos Decl., Ex. B (emphasis added).  Indeed, Plaintiffs both signed the contracts

just a few lines below their acknowledgment of and agreement to be bound by the

incorporated Grubhub.com Terms of Use.  *See id.*

The terms incorporated into Plaintiffs' contracts in April 2011 also unambig-

uously provided that:

> By viewing, using, accessing, browsing . . . the Sites, <u>you agree to these Terms of Use as a binding legal agreement between you and GrubHub</u> . . . .  If you do not agree to these Terms of Use, then you may not use the Sites. <u>GrubHub reserves the right to modify these Terms of Use at any time</u> without prior notice. You agree that each visit you make to the Sites shall be subject to the then-current Terms of Use, and <u>continued use of the Sites now or following modifications in these Terms of Use confirms that you have read, accepted, and agreed to be bound by such modifications</u>.

Kokos Decl., Ex. Q (emphasis added).  This language clearly put Plaintiffs on notice

of the Grubhub.com Terms of Use and Grubhub's right to update those terms, and

that Plaintiffs were assenting to those terms through their continued participation in

Grubhub.  *See Ragan*, 824 N.E.2d at 1188–89; *Hammarquist*, 809 F.3d at 949–50;

*see also Winters v. AT&T Mobility Servs., LLC*, 2017 WL 2936800, at *5 (C.D. Ill. July 10, 2017) (holding employee manifested assent to arbitration after she was emailed contract requiring her to opt-out rather than opt-in, and she did not opt-out).

Grubhub (as it said it would) updated its Terms of Use on various occasions, including on April 6, 2016 to include an arbitration provision (*see* Kokos Decl., Ex. R), and most recently on June 4, 2018 (*see id.*, Ex. S).[4] Although not necessary to enforceability, Grubhub provided notice to Plaintiffs both on its websites and mobile apps.

As for the April 6, 2016 update, Grubhub's websites and mobile apps included a banner notification on the top of the screen, calling out the new terms:



On February 24th, we are updating some very important terms in our Terms of Use. Your use of our site or services on or after February 24th will bind you to the Updated TOUs

Kokos Decl. ¶ 29 (sample banner on Grubhub webpage). This banner was visible on the website for at least 30 days. *Id.* With respect to the June 4, 2018 update, the

---

[4] Here, for notice of amended or modified terms, both Illinois and New York law are applicable, at different times. While the original Grubhub Sign-in Form and 2011 Terms of Use select Illinois law (Kokos Decl., Ex. A, Ex. B, Ex. Q at 8), the 2018 Grubhub.com Terms of Use select New York (*id.*, Ex. S at 12). As in Illinois, updated terms are incorporated in New York if, as here, acceptance is supported by the parties' "course of conduct." *Russell v. Raynes Assocs. L.P.*, 569 N.Y.S.2d 409, 414 (1st Dep't 1991); *see also Valle v. ATM Nat., LLC*, 2015 WL 413449, at *3 (S.D.N.Y. Jan. 30, 2015) ("Courts have held that customers accept revised terms of their accounts by continuing to use their accounts after receiving the revised terms.").

mobile apps and website employed "timed pop-ups" which forced the user to acknowledge updated terms before continuing.  For example:



*Id.*, Ex. T.  The notice was unavoidable.  *See, e.g.*, *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1069 (S.D. Cal. 2015) (hyperlink's position weighed in favor of finding reasonable notice of enforceable arbitration provision), *aff'd*, 709 F. App'x 862 (9th Cir. 2017); *Sacchi*, 2015 WL 765940, at *3.

Plaintiffs had adequate opportunity to reject those terms and sever their relationships with Grubhub if they no longer wished to be bound by the terms—the parties' agreements make clear that they can be "cancel[led] at any time."  Kokos Decl., Ex. A (see first bullet point); Ex. B (same).[5]  Yet neither Plaintiff did so.  Instead,

---

[5] This is no different from Tiffin.com's expectation of its users that "[b]y participating in the Program, [they] agree to the Site Terms and Conditions . . . .  [and] are not authorized to participate in the Program if [they] do not agree."  *Id.*, Ex. M.

Tiffin's account representative monitored all of the Tiffin Indian Cuisine location microsites to ensure all locations had the same logo, that the Tiffin restaurants maintained high placement on the sites (as compared to other restaurants), and that the restaurants' menus, pricing, and other information were always up to date and accurate. *See id.*, ¶ 16, Exs. F-L.  Plaintiffs, accordingly, accessed the Grubhub platforms repeatedly and continuously to check their microsites and received notice of the Grubhub.com Terms of Use.  Kokos Decl. at ¶¶ 15, 16, 27; *see Winters*, 2017 WL 2936800, at *5 ("although the contract required signatories to 'opt out' rather than, as is traditionally done with contracts, in, such a device is no impediment to the creation of a valid contract").

Therefore, Plaintiffs here accepted the Grubhub.com Terms of Use as they were updated by Grubhub, and as such, they have agreed to be bound by those Terms of Use, including the provision compelling individual arbitration of any dispute.  As the now-operative Grubhub.com Terms of Use provide, Plaintiffs agreed that "all claims, disputes, or disagreements that may arise out of the interpretation or performance of this Agreement, or that in any way relate to your use of the Sites, the Materials, and/or other content on the Sites, shall be submitted exclusively to binding arbitration."  Kokos Decl., Ex. S; *Dean Witter*, 470 U.S. at 221; *Am. Express*, 570 U.S. at 233.  Plaintiffs also waived their right to "participate as a plaintiff or class member in any purported class action or representative proceeding."  *Id.*, Ex. S at

13; *see Epic Systems*, 138 S. Ct. at 1621.

**B.    Plaintiffs' Participation in "Grubhub for Restaurants" Also Compels Arbitration**

Plaintiffs cannot avoid arbitration for a second and independent reason:  when they enrolled in, accessed, and used Grubhub for Restaurants (or its predecessors), they accepted Grubhub's GFR Terms of Use, including provisions mandating binding, individual arbitration.

In today's increasingly e-driven commercial world, courts across the country acknowledge that electronic contracting can take countless forms, and that terms of use available on a company's website or mobile app, such as Grubhub's GFR Terms of Use, can form valid and binding contracts.  *See Sw. Airlines Co. v. BoardFirst, L.L.C.*, 2007 WL 4823761, at *2 (N.D. Tex. Sept. 12, 2007) (holding that defendant violated plaintiff's website terms of use, where the plaintiff's homepage stated in "small black print at the bottom of the page that '[u]se of the Southwest websites … constitutes acceptance of our Terms and Conditions,'" and defendant had actual knowledge after receiving a cease-and-desist letter).  Courts and commentators alike have attempted to label a growing number of variations of these electronic agreements with terms including "browsewraps," "clickwraps," "scrollwraps," and "sign-in wraps."  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017).  As this list has grown, so too have the "infinite ways to design a website or smartphone application, and not all interfaces fit neatly into [these] categories."  *Id.*  Indeed, many

courts have acknowledged "modified" or "hybrid" agreements where a company's website has features fitting multiple labels. *See Crawford v. Beachbody, LLC*, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014).

Ultimately, regardless of how one chooses to label it, terms and conditions on a company's website are binding so long as the user had "actual or constructive knowledge" of those terms. *Sw. Airlines Co.*, 2007 WL 4823761, at *5. Constructive notice is established where it is reasonable for the user to understand that use of the website would carry with it specified terms of use. *Id.* "[N]o particular form of words is necessary to indicate assent." *Ticketmaster Corp. v. Tickets.Com, Inc.*, 2003 WL 21406289, at *2 (C.D. Cal. Mar. 7, 2003). Nor does the inquiry or categorization depend on "whether the [user] states (or clicks), 'I agree.'" *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004) (noting that an "I agree" icon is not essential in all circumstances to show assent).

Accordingly, in assessing whether there is a valid agreement between two parties based on websites or mobile apps, courts consider the user, the website or app design, the nature of the accessibility of the terms of use, and the efforts a user must undertake to find those terms. *E.g.*, *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 552 (S.D.N.Y. 2018). This includes, for example, whether there is a noticeable hyperlink to the terms of use; where such hyperlinks, if any, are located on the website, *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 121 (Ill. App. Ct. 2005); whether one

- 17 -

has to scroll to find the terms; whether font size and color make the hyperlink noticeable, *Plazza*, 289 F. Supp. 3d at 552; how cluttered the webpage is with other links, *Selden v. Airbnb, Inc.*, 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016); and whether the user had the option to review terms *before* using the website, *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011).

But equally if not more important in assessing constructive notice, courts also consider the nature of the user and the user's own practices.  Put simply, "[a]ny reasonably-active adult consumer will almost certainly appreciate that by signing up for a particular service, he or she is accepting the terms and conditions of the provider." *Selden*, 2016 WL 6476934, at *5; *see also Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) ("[C]licking [a] hyperlinked phrase is the twenty-first century equivalent of turning over the cruise ticket," referencing seminal Supreme Court case *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991)).

And where, as here, the user is not merely an "adult consumer" but rather a sophisticated business entity that (i) operates its own website with its own binding terms and conditions, (ii) repeatedly accesses another entity's website as part of its near-daily business operations, and (iii) executed a written contract incorporating online terms, courts are even more likely to find reasonable notice of the terms and thus a valid contract.  *See Sw. Airlines Co.*, 2007 WL 4823761, at *5 (citing Mark A. Lemley, *Terms of Use*, 91 MINN. L. REV. 459, 477 (Dec. 2006)); Lemley, at 463

("[C]ourts presume that businesses know what they are doing when they access an-other company's Web site and are therefore more likely to bind them to that site's terms of use."); *Register.com*, 356 F.3d at 401–02 (a company's repeated use of a website may establish notice of website's terms); *Cairo, Inc. v. Crossmedia Servs., Inc.*, 2005 WL 756610, at *5 (N.D. Cal. Apr. 1, 2005) (finding "Cairo's repeated and automated use of CMS's web pages can form the basis of imputing knowledge to Cairo of the terms on which CMS's services were offered"; "Cairo's use of CMS's website under circumstances in which Cairo had actual or imputed knowledge of CMS's terms effectively binds Cairo to CMS's Terms of Use").

Here, since enrollment, Plaintiffs visited and signed into the Grubhub for Res-taurants (or predecessor) portal every day that they were in business and accepting orders through Grubhub, and they processed thousands of orders through this plat-form.  *See* Kokos Decl. at ¶ 34 (since 2018, averaging 259 and 135 "Prepaid Orders" per month for Tiffin Mount Airy and Tiffin EPS, respectively).  Indeed, by Plaintiffs' own admissions, Grubhub orders make up 15% of Tiffin.com's revenues.  Compl. ¶ 47; *see Cairo, Inc.*, 2005 WL 756610, at *5 (finding company's use of a website with knowledge of terms of use posted on the site constituted an acceptance of the terms).  A screenshot of the sign-in page is below:

Ex. U (circle added).

Upon visiting this page, Plaintiffs see a mostly blank screen, allowing only for the user to type in his credentials, retrieve forgotten credentials, or access the "Terms of use" and "Privacy policy." There is no cluttered text obfuscating the link. There is no need to continuously scroll through extraneous text or other links in order to click on the "Terms of use," no need to click through to other pages and non-obvious links to find the "Terms of use," and no need to make an illogical leap as to what the phrase "Terms of use" might mean. Rather, the "Terms of use" are available, via hyperlink, to review on the very webpage restaurants visit every time they sign in, *prior to* "signing in" and accepting the terms. *See Swift*, 805 F. Supp. 2d at 912. This presents a stark contrast to user experiences that require the user to follow

a trail of linked webpages, one after the other, with often confusing text (*e.g.*, "customer service"), in order to find the terms and conditions of website use.

But, of course, this is not Tiffin's first or only notice that Grubhub's platforms are governed by terms of use—indeed, they have *actual notice* that Grubhub employs online terms of use.  Plaintiffs had already signed a contract in which they acknowledged and agreed to be bound by the Grubhub.com Terms of Use.  *See supra* Part II.A; Kokos Decl, Exs. A, B.  The GFR Terms of Use do not differ materially with respect to the arbitration provision.

And in any case, Tiffin.com is, of course, a sophisticated business entity with its own web platforms, familiar with multiple terms and conditions that govern conduct on or related to a website.  *See* Kokos Decl., Exs. M, N, O.  Plaintiffs thus seek to avoid an agreement here created by hyperlinked terms of use, when they seek to impose terms of use on their own customers in similar ways.  Tiffin.com, in fact, imposes terms and conditions on visitors to its website through less obvious means.  There, at the bottom, in the middle of other links, are hyperlinks to "Terms," "T-coin Reward Terms," and "Referral Terms"—three separate sets of terms and conditions governing Tiffin.com website use:



*See id.* ¶ 20, Ex. P (two circles added).

For example, according to Tiffin.com, the T-Coin Rewards Program Terms
and Conditions, which the website describes as "very important" and which Tiffin
reserves the right to "modify . . . at any time" and "without notice," create a "binding
agreement" on its users.  Ex. M.  Tiffin states, "[b]y participating in the Program,
[the customer] agree[s] to the Site Terms and Conditions."  *Id.*  Tiffin—just like
Grubhub, *see* Ex. S (Grubhub.com Terms of Use at 1), Ex. W (GFR Terms of Use
at 8-9—also imposes a limitation of liability provision on all of its users through
these terms and conditions.  *Id.*  But, notably, the Tiffin "[r]elease" can be found and
reviewed *only after* the customer reads half-way through the Terms and Conditions
and past the heading, "You're Going To Need Some Food To Get Through The Rest

Of The Jargon.  Go Ahead And Order . . . We'll Wait," which encourages customers to participate in and use the sites before reading the terms in full.  Ex. M.  The Referral Program Terms and Conditions are similar.  *See* Ex. N.  And the general tiffin.com website Terms are explicitly "subject to change without notice" and provide that "Your use of this website and any dispute arising out of such use of the website is subject to the laws of US or other regulatory authority."  Ex. O.

Thus, given Plaintiffs' own business practices and conduct, Plaintiffs cannot claim to be strangers to the terms and conditions clearly linked on the Grubhub sign-in page.  Plaintiffs knew that they were accepting Grubhub's GFR Terms of Use upon signing in to and using Grubhub for Restaurants (or its predecessors).

## III.  THE ARBITRATION CLAUSES ENCOMPASS THE DISPUTE

The second inquiry on a motion to compel is whether the arbitration clause encompasses the dispute.  *See Puleo*, 605 F.3d at 178.  Where, as here, an arbitration clause provides for arbitration of all matters "arising under" or "arising out of" an agreement, the clause is construed broadly to find disputes arbitrable.  *See Medtronic Ave Inc. v. Cordis Corp.*, 100 F. App'x 865, 868–69 (3d Cir. 2004) (compelling arbitration where clause broad and governed "any dispute, claim, or controversy arising from or relating to this Agreement or alleged breaches thereof"); *Berkery*, 256 F. Supp. 2d at 366 (compelling arbitration where clause covered "all claims, demands, or disputes" that "in any way relate to or arise out of this Agreement");

*Hearon v. AstraZeneca LP*, 2003 WL 21250640, at \*5 (E.D. Pa. Mar. 24, 2003) (holding clause using "language such as 'any dispute that arises out of or relates to' the agreement, or disputes that are 'in connection with' the agreement" is construed broadly).

The dispute here falls well within the bounds of the broad arbitration provisions in the current terms of use.  Indeed, the Grubhub.com Terms of Use extend beyond disputes arising out of the agreement to also include disputes that "in any way relate to your use" of Grubhub services:

> You agree that <u>all claims, disputes, or disagreements that may arise out of the interpretation or performance of this Agreement, or that in any way relate to your use of the Sites, the Materials, and/or other content on the Sites</u>, shall be submitted exclusively to binding arbitration . . . .

Ex. S (emphasis added).[6]  The GFR Terms of Use are equally as broad:

> <u>[A]ll claims or disputes arising out of this agreement</u>[] will be decided by an arbitrator through arbitration and not by a judge or jury ("Arbitration Agreement").

Ex. W at 12 (emphasis added).  In the Terms of Use, Agreement is defined as the Grubhub Services Form and these Terms.  *Id.*

Plaintiffs' dispute with Grubhub arises directly from the parties' agreements

---

[6] The GFR Terms of Use define "Agreement" as the "contract between you and us that governs your access and use of the Sites."  Ex. W (first paragraph).  "Sites," in turn, is defined as "certain websites . . . , certain technology platforms, and certain other related online and mobile services (including, without limitation, our Mobile Applications . . .) that reference or will reference these Terms of Use (collectively, the 'Sites')."  *Id.* at 1 (first paragraph).

and relates directly to Grubhub's performance of the parties' agreement and the parties' use of Grubhub's Sites. Specifically, Plaintiffs' complaint alleges that Grubhub collected fees from diner orders placed over the telephone upon a diner's dialing the telephone number found on Grubhub's "Sites," and that Grubhub's collection of such fees violates the parties' written agreements. *See* Compl. ¶¶ 31–45. Plaintiffs allege that they used Grubhub's Sites and applications to, among other things, access the recorded phone calls. *See* Compl. ¶¶ 57 ("reviewing the Grubhub ledgers online" and "placing an order through Grubhub's telephone system" after retrieving the phone number on microsite), 60 ("Narula then sought to listen to the telephone recordings"), 66 ("Narula reviewed the available recordings of calls made to his restaurants"). Plaintiffs even include content and images cut and pasted from Grubhub's Sites in the complaint. *See* Compl. ¶¶ 52, 54. One conclusion follows: Plaintiffs' dispute "shall be submitted exclusively to binding arbitration." Kokos Decl., Ex. S at 13; *see also* Ex. W at 11-12.

## CONCLUSION

For the foregoing reasons, Grubhub respectfully requests that this Court issue an order (i) compelling Plaintiffs to arbitrate their claims against Grubhub before the American Arbitration Association ("AAA") on an individual, non-class basis; and (ii) dismissing or staying these proceedings pending completion of arbitration in accordance with the terms of the parties' agreements.

Dated:  March 6, 2019

_s/ Rebekah B. Kcehowski_

Rebekah B. Kcehowski
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA  15219
T:  (412) 391-3939
F:  (412) 394-7959
rbkcehowski@jonesday.com

*Attorney for Defendant*
*Grubhub Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 6, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the forego-ing document is being served this day on counsel of record identified via transmis-sion of Notices of Electronic Filing generated by CM/ECF.


*s/ Rebekah B. Kcehowski*
Rebekah B. Kcehowski