## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**TIFFIN EPS, LLC** and **TIFFIN MOUNT AIRY, LLC**, on behalf of themselves and all others similarly situated,

      Plaintiffs,

      v.

**GRUBHUB INC.,**

      Defendant.

Case No. 2:18-cv-05630-PD

## PLAINTIFFS' OPPOSITION TO
## GRUBHUB INC.'S MOTION TO COMPEL ARBITRATION

Dated: March 20, 2019

Catherine Pratsinakis, Esq.
(PA ID# 88086)
Marie-Theres DiFillippo, Esq.
(PA ID# 316012)
DILWORTH PAXSON LLP
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Telephone: (215) 575-7000
Facsimile: (215) 575-7200
cpratsinakis@dilworthlaw.com
mdifillippo@dilworthlaw.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii

SUMMARY OF THE ARGUMENT ................................................................ 1

FACTUAL BACKGROUND ............................................................................. 4

ARGUMENT .................................................................................................... 6

I.      Grubhub Failed To Prove An Enforceable Agreement to Arbitrate Exists ..... 6

      A.      The Contracts Do Not Contain Nor Incorporate An Arbitration Clause ....................................................................................... 7

      B.      Grubhub Provided No Notice Of The Arbitration Clause Posted On Its Website ......................................................................... 9

      C.      Grubhub Provided No Notice Of The Arbitration Clause On The GFR ......................................................................................... 15

II.     This Dispute Is Outside the Scope of the Narrow Arbitration Clauses ......... 23

CONCLUSION ............................................................................................... 25

i

# TABLE OF AUTHORITIES

## Cases

*188 LLC v. Trinity Indus., Inc.*,
  300 F.3d 730 (7th Cir. 2002) ...............................................................8

*Bank of Commerce v. Hoffman*,
  829 F.3d 542 (7th Cir. 2016) ...............................................................9

*Be In, Inc. v. Google Inc.*,
  No. 12-cv-3373, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) .................... 17, 18

*Berkson v. Gogo LLC*,
  97 F. Supp. 3d 359 (E.D.N.Y. 2015) ...................................................18

*Bladel v. Carroll*,
  167 N.E. 790 (Ill. 1929) .......................................................................14

*Boomer v. AT&T Corp.*,
  309 F.3d 404 (7th Cir. 2002) .............................................................12

*Cairo, Inc. v. Crossmedia Servs., Inc.*,
  2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ........................................21

*Cvent, Inc. v. Eventbrite, Inc.*,
  739 F. Supp. 2d 927 (E.D. Va. 2010) .................................................18

*Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*,
  530 N.E.2d 439 (Ill. 1988) ...................................................................6

*Douglas v. United States District Ct.*,
  495 F.3d 1062 (9th Cir. 2007) .............................................................2

*EEOC v. Waffle House, Inc.*,
  534 U.S. 279 (2002) .............................................................................7

*Eks Land Dev. of Oswego, LLC v. Plainfield Econ. P'ship*,
  2012 WL 7006327 (Ill. App. Ct. Mar. 20, 2012) ..............................22

*Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.*,
  408 N.E.2d 403 (Ill. App. 1980) .......................................................12

*Griswold v. Coventry First LLC*,
  762 F.3d 264 (3d Cir. 2014) ...............................................................7

*Gyptec Iberica v. Alstom Power Inc.*,
  No. 10-cv-128, 2012 WL 5305510 (N.D. Ill. Oct. 26, 2012) ...............8

_6

*Hammarquist v. United Cont'l Holdings, Inc.*,
  809 F.3d 946 (7th Cir. 2016) ..............................................................................13

*Hines v. Overstock Inc.*,
  668 F. Supp. 2d 362 (E.D.N.Y. 2009), *aff'd*, 380 Fed. Appx. 22 (2d Cir.
  2016) ...........................................................................................................14

*Hite v. Lush Internet Inc.*,
  244 F. Supp. 3d 444 (D.N.J. Mar. 22, 2017) ............................................ 17, 20

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) .........................................................................................6

*Hubbert v. Dell Corp.*,
  359 Ill. App. 3d 976 (2005) .........................................................................13

*In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*,
  893 F. Supp. 2d 1058 (D. Nev. 2012) ..................................................... 10, 18

*Innovative Mech. Grp., Inc. v. Fitness International, LLC*,
  2016 WL 1567461 ¶ 20 (Ill. App. Ct. Apr. 18, 2016)...........................................9

*James v. Glob. TelLink Corp.*,
  852 F.3d 262 (3d Cir. 2017) ..........................................................................16

*Kinkel v. Cingular Wireless LLC*,
  223 Ill. 2d 1, 857 N.E.2d 250 (2006) .............................................................12

*Landmark Structures, Inc. v. F.E. Holmes & Sons Const. Co.*,
  552 N.E.2d 1336 (Ill. App. Ct. 1990)...............................................................7

*Lee v. Intelius Inc.*,
  737 F.3d 1254 (9th Cir. 2013) ........................................................................16

*Midland Funding, LLC v. Raney*,
  93 N.E.3d 724 (Ill. App. 2018), *appeal den.*, 98 N.E.3d 55 (Ill. 2018) ..............14

*Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*,
  269 F.3d 187 (3d Cir. 2001) ............................................................................6

*Nguyen v. Barnes & Noble, Inc.*,
  763 F. 3d 1171 (9th Cir 2014) ....................................................................9, 10

*Noble v. Samsung Elecs. Am., Inc.*,
  682 F. App'x 113 (3d Cir. 2017)....................................................................16

*Plazza v. AirBnB, Inc.*,
  289 F. Supp.3d 537 (S.D.N.Y. 2018) ..............................................................21

iii

*Ragan v. AT&T Corp.*,
  824 N.E.2d 1183 (Ill. App. Ct. 2005) ................................................................12

*Razor v. Hyundai Motor Am.*,
  854 N.E.2d 607 (Ill. 2006) ................................................................................12

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir. 2004) ..............................................................................21

*Rosenblum v. Travelbyus.com Ltd.*,
  299 F.3d 657 (7th Cir. 2002) ...............................................................................8

*Sacchi v. Verizon Online LLC*,
  2015 WL 765940 (S.D.N.Y. Feb. 23, 2015) ......................................................12

*Salsitz v. Kreiss*,
  761 N.E.2d 724 (Ill. 2001) ................................................................................24

*Schnabel v. Trilegiant Corp.*,
  697 F.3d 110 (2d Cir. 2012) ..............................................................................20

*Sgouros v. TransUnion Corp.*,
  817 F.3d 1029 (7th Cir. 2016) ..................................................................... passim

*Specht v. Netscape Commc'ns Corp.*,
  306 F.3d 17 (2d Cir. 2002) ......................................................................... 10, 18

*Sw. Airlines Co. v. BoardFirst LLC*,
  No. 06-cv-891, 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) ........................21

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp 2d 904 (N.D. Cal. 2011) ................................................................21

*Ticketmaster Corp. v. Tickets.Com, Inc.*,
  No. CV-997654, 2003 WL 21406289 (C.D. Cal. Mar. 7, 2003) .......................21

*Timmerman v. Grain Exch., LLC*,
  915 N.E.2d 113 (Ill. App. Ct. 2009) ..................................................................23

*Trujillo, v. Apple Computer, Inc.*,
  578 F. Supp. 2d 979 (N.D. Ill. 2008) .............................................................8, 16

*Valle v. ATM Nat., LLC*,
  2015 WL 413449 (S.D.N.Y. Jan. 30, 2015) ......................................................13

*Van Tassell v. United Mktg. Grp.*, *LLC*,
  795 F. Supp. 2d 770 (N.D. Ill. 2011) ..................................................................8

*White v. Sunoco, Inc.*,
  870 F. 3d 257 (3d Cir. 2017) ...............................................................................7

iv

## SUMMARY OF THE ARGUMENT

Grubhub failed to meet its burden of proving that Plaintiffs – or any restaurant – actually agreed to arbitrate their disputes. Lacking a valid agreement to arbitrate between the Parties, Grubhub seeks to cobble one together based on a series of inferences and irrelevant facts. But Grubhub provided no clear and conspicuous notice of the restaurant's waiver of their day in court. Grubhub's own documents reflect this basic lack of notice and, to conclude otherwise, would require the Court to make unsupported presumptions. Here are just a few of the notable ways Grubhub cut corners in formulating its *ad hoc* arbitration agreement:

*First,* while claiming that the arbitration agreement located on Grubhub's diner website www.Grubhub.com ("Grubhub.com") was incorporated by reference into its contracts with Plaintiffs, Grubhub obscures the fact that the arbitration clause it seeks to enforce is actually located at a URL *different* from the one referenced in the Parties' contracts.

*Second,* Grubhub contends that a limited-run banner ad on Grubbhub.com put Plaintiffs on notice of the fact that Grubhub modified its terms in 2016 to include an arbitration clause. However, Grubhub fails to produce a *single* copy of the actual banner ad and offered no proof that it had invited restaurants to Grubhub.com to view it. Indeed, Grubhub tries to rely on cases where companies provided consumers ample notice of arbitration, and yet Grubhub failed to show a

single notice went to restaurants of its offer to arbitrate disputes (not by mail, email, fax, text, or otherwise) in 2016, or 2018 for that matter. Rather, Grubhub suggests that the Court presume sufficient notice because a single employee of Plaintiffs' parent company visited Grubhub.com *after* Grubhub purportedly stopped running the alleged banner ad. To reach this finding, the Court would need to make a series of factual inferences and at least one leap in logic. Grubhub offered no proof that this employee saw (much less assented to) the arbitration clause in 2016 and anytime thereafter and, in fact, she did not do so.

*Third*, Grubhub claims it notified restaurants of its 2018 modification to its terms on Grubhub.com when it added a popup over the URL Grubhub.com/legal/terms-of-use. But, again, Grubhub did not notify restaurants of this modification nor invite them to view the sole webpage running the popup. Indeed, the popup notice itself is written in the past tense suggesting that the popup was added *after* Grubhub modified it terms in 2018. Because Grubhub failed to prove that it delivered notice of either the 2016 or 2018 modification, Grubhub cannot claim that restaurants' continued use of Grubhub's services resulted in implied consent to arbitrate. *Douglas v. U.S. Dist. Ct.*, 495 F.3d 1062 (9th Cir. 2007) (posting revised contract with arbitration clause on website was not adequate notice such that continued use of services constituted acceptance).

*Fourth*, Grubhub points to the current login screen of its "Grubhub for Restaurants" web portal (copyrighted 2019) to argue that Plaintiffs knew they were bound to an entirely different set of terms, also not referenced in the operative contracts. However, unilaterally posting terms at the bottom of a webpage does not constitute actual or constructive notice of the arbitration clause contained therein. *Sgouros v. TransUnion Corp.*, 817 F.3d 1029 (7th Cir. 2016) (applying Illinois law). Moreover, Grubhub obscures when it posted this hyperlink on the portal, again showing a 2019 copyright date. Grubhub failed to produce a single document showing that restaurants agreed to these terms, much less proof that it delivered notice to restaurants advising them of entirely new terms that Grubhub claims modified the restaurants' contracts.

The final blow to Grubhub's motion is that none of Plaintiffs' claims fall within the scope of either arbitration clause Grubhub seeks to enforce. Each clause is limited to disputes arising from the "*terms of use*" themselves and not the contracts with restaurants. Plaintiffs and the putative class allege that Grubhub breached its contracts with restaurants by taking commissions it did not earn in excess of the contract rate, and converted millions of dollars by claiming unearned commissions on telephone orders in violation of the Illinois Consumer Protection and Deceptive Practices Act. Since these claims are legally independent from either set of terms of use, the claims are not subject to arbitration. Dkt.#1.

## FACTUAL BACKGROUND

Plaintiffs Tiffin EPS, LLC ("Elkins Park") and Tiffin Mount Airy, LLC ("Mt. Airy") are Indian restaurants based in the Philadelphia area, each with a robust take-out and delivery business. The entities are owned by parent company Tiffin.com, Inc. ("Tiffin") and are operated by third parties who handle the day-to-day operations of these locations' food delivery and dining services. *See* Declaration of Munish Narula ¶¶ 3-4 ["Narula"]. Elkins Park contracts with third-party operator Kathmandu Cuisine Inc., and Mt. Airy contracts with third-party operator Manan Ventures Inc. *Id.,* ¶ 4. None of the third party operators has the authority to bind Plaintiffs or Tiffin. *Id.* Grubhub is aware of these third party operators as it issued a Form 1099 to each of them – and releases revenues to their bank accounts. Declaration of Marianne Kelly ¶ 8 ["Kelly"].

On April 21, 2011, Plaintiffs entered into individual contracts with Grubhub. Dkt.# 15-3. Notably, Grubhub attaches transcriptions of the contracts because the originals ***are nearly illegible***. Dkt.# 15-6.[1] The Elkins Park contract is a paper contract comprised of two parts: the Grubhub Sign-up and the Custom Website Sign-up Forms. Dkt.# 15-5. Neither contains an arbitration provision. *Id.* The Elkins Park contract also states:

---

[1] Plaintiffs reserve all evidentiary challenges to the transcriptions and other documents.

> Please see Grubhub's website at www.Grubhub.com/legal/. The terms and conditions are subject to change by GrubHub upon 30 days advance notice. After notice and the expiration of 30 days, I acknowledge that continuing participation and receipt of orders shall bind my restaurant to any new terms and conditions.

Dkt.# 15-6. The terms set forth at the identified URL www.Grubhub.com/legal/ are not attached to the contract, and the contacts were on paper so there was no active hyperlink to click when reviewing and signing them. As provided by the Elkins Park contract, the terms at www.Grubhub.com/legal/ were "subject to change" with "30 days advance notice," however no such notice was provided between April 21, 2011 through present. Narula ¶ 8; Kelly ¶ 10.[2] At no time between 2011 and present did the terms at www.Grubhub.com/legal/ include an arbitration clause. Declaration of Catherine Pratsinakis ("Pratsinakis") Exs. 1-3.

The Mt. Airy contract is a paper contract comprised of one part – the Grubhub Sign-up Form. The Mt. Airy contract also does not contain an arbitration clause. Dkt.# 15-4. Moreover, the Mt. Airy contract states:

> Please see GrubHub's Terms of Use at www.Grubhub.com/legal/, which are subject to change. The terms and conditions thereto shall bind my restaurant….

Dkt.# 15-6. The terms set forth at the URL www.Grubhub.com/legal/ are not attached to the contract. Dkt.# 15-4. As provided by the Mt. Airy contract, the

---

[2] To preserve all issues, Plaintiffs submit the supporting Declarations of Marianne Kelly and Munish Narula. Since Grubhub failed to provide a basis upon which the Court may find a valid agreement to arbitrate, the Court may deny Grubhub's motion without considering these Declarations.

terms at www.Grubhub.com/legal/ were "subject to change." However, Grubhub never provided notice of any changes to the terms between April 21, 2011 through present. Kelly ¶ 10; Narula ¶ 8. Again, the terms at www.Grubhub.com/legal/ have never contained an arbitration clause. Pratsinakis, Exs. 1-3. At all relevant times hereto, neither Tiffin's President and CEO, Munish Narula, nor its Director of Marketing and Operations, Marianne Kelly, were aware of, nor advised of, any arbitration agreement with Grubhub. Narula ¶¶ 8, 14, 21; Kelly ¶ 10. Grubhub never notified them that Plaintiffs were subject to arbitration or that the terms of the Elkins Park and Mt. Airy contracts had changed to include an arbitration clause. *Id.* When Kelly requested copies of the Mt. Airy and Elkins Park contracts, a Grubhub Senior Account Manager sent the contracts at Dkt.# 15-4−15-5, and not the terms at Dkt.# 15-21−15-22, 15-25−15-26, Kelly ¶ 11.

## **ARGUMENT**

I.     Grubhub Failed To Prove An Enforceable Agreement to Arbitrate Exists

"[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 530 N.E.2d 439, 447 (Ill. 1988) (internal quotes and citation omitted); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *E.I. DuPont de Nemours & Co. v. Rhone Poulenc*, 269 F.3d 187, 194 (3d Cir. 2001). Moreover the movant has the burden of proving that there are no genuine issues of disputed material

facts with respect to the existence of a valid and binding agreement to arbitrate, and "[t]he party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise." *Griswold v. Coventry First LLC*, 762 F.3d 264, 270 (3d Cir. 2014); *White v. Sunoco, Inc.*, 870 F. 3d 257, 262 (3d Cir. 2017). Citing to the Federal Arbitration Act ("FAA"), Grubhub asks the Court to make inferences and presumptions in its favor, but the Court cannot do so. The FAA was *not* enacted to force parties into arbitration, but rather to enforce voluntary agreements to arbitrate. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002) (rejecting pro-arbitration FAA policy on contract formation issue).

A.  The Contracts Do Not Contain Nor Incorporate An Arbitration Clause

The parties here entered into two express written contracts that contain ***no arbitration clause*** within their four corners.[3] Dkt.# 15-4−15-6. These contracts reference terms at URL www.Grubhub.com/legal, which also do not contain an arbitration clause. Pratsinakis, Exs. 1-3. Here, Grubhub is seeking to enforce an arbitration clause located at an entirely different URL: Grubhub.com/terms-of-use and later Grubbhub.com/legal/terms-of-use, but those URLs are not referenced in the operative contracts. *Landmark Structures, Inc. v. F.E. Holmes & Sons Const. Co.*, 552 N.E.2d 1336, 1342 (Ill. App. Ct. 1990) (finding that disclaimer of

---

[3] Plaintiffs' contracts state that "the agreement shall be governed by and interpreted in accordance with the laws of Illinois." Dkt.# 15-6. Grubhub contends that when it modified its terms of use, it changed the operative law to New York, but having failed to provide notice, this modification is likewise invalid. Dkt.# 15-1 at 13 n. 4.

warranties was not at the location referenced in the agreement and therefore court could not presume knowledge of that term); *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 793 (N.D. Ill. 2011) (declining to enforce arbitration clause in website terms that could be only located after a "multi-step process" of clicking through links); *Trujillo*, *v. Apple Computer, Inc*., 578 F. Supp. 2d 979, 989-95 (N.D. Ill. 2008) (arbitration clause unenforceable where consumer had no reason to know of terms).

Grubhub tries to obscure this by generally referring to terms of use at Grubhub.com, Dkt.# 15-3 ¶ 25, and omitting the actual URLs from its exhibits. Dkt. Nos. 15-21−15-22. However, to be incorporated by reference into a contract, a document must be clearly identified. *Rosenblum v. Travelbyus.com Ltd*., 299 F.3d 657, 665–66 (7th Cir. 2002) ("Mere reference … is not sufficient … There must be an express intent to incorporate"). "Illinois requires that incorporation be clear and specific." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002). Indeed, courts have found no incorporation where referenced documents were not defined or described. *See, e.g.*, *Gyptec Iberica v. Alstom Power Inc.*, 2012 WL 5305510, *3 (N.D. Ill. Oct. 26, 2012).

Here, there is no clear or specific incorporation of the terms of use that Grubhub seeks to enforce. Instead, Grubhub asks this Court to conclude that: (1) the parties intended to be bound by an arbitration clause located in a document

found on a *different* URL than the one specifically referenced in the contracts; ***and*** (2) the parties did *not* intend to be bound by the terms located at the URL referenced in the contracts. Moreover, the undefined phrase "Terms of Use" in the Mt. Airy contract cannot be interpreted to refer to terms located at www.grubhub.com/terms-of-use, or www.grubhub.com/legal/terms-of-use, because that would contradict the more specific reference to "www.Grubhub.com/legal/" and "[t]he terms and conditions ***thereto***." *See, e.g.*, *Bank of Commerce v. Hoffman*, 829 F.3d 542, 548 (7th Cir. 2016) ("Illinois courts must allow the specific language to control."). Since no fair reading of the Parties' contracts would have put a reasonable person on notice that it was subject to arbitration through incorporation by reference, Grubhub has failed to meet its burden.[4]

### B. Grubhub Provided No Notice Of The Arbitration Clause Posted On Its Website

"While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Nguyen v. Barnes & Noble, Inc.*, 763 F. 3d 1171, 1175-76 (9th Cir 2014) (quotation omitted) "Mutual manifestation of assent, whether by written or spoken word or by conduct,

---

[4] To the extent the Court find that these provisions in the contract are ambiguous, the Court must construe that ambiguity against Grubhub as the drafter of these form contracts. *Innovative Mech. Grp., Inc. v. Fitness Int'l, LLC*, 2016 WL 1567461 ¶ 20 (Ill. App. Ct. Apr. 18, 2016).

is the touchstone of contract." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29 (2d Cir. 2002). "Illinois contract law requires that a website provide a user reasonable notice that his use of the site or click on a button constitutes assent to an agreement." *Sgouros*, 817 F.3d at 1036.

Grubhub offers no evidence from which this Court can find that Grubhub delivered notice to Plaintiffs about an arbitration clause located at an entirely different URL than the one specifically referred to in the Parties' contracts, much less that Plaintiffs assented to it. Grubhub did not deliver a single update about its offer to arbitrate disputes with restaurants in 2016 or 2018, despite sending regular updates to restaurants. Kelly ¶¶ 9-10. Grubhub did not attach a single letter, email, fax, or other direct form of communication advising restaurants that it was seeking to modify its contracts to include an arbitration clause. Narula ¶ 8; Kelly ¶ 10. The mere availability of an arbitration clause buried in fine print on a company's website is insufficient to put a consumer on notice of its terms. Courts routinely reject purported online contracts where, as here, the evidence is insufficient to show the basic elements of contract formation. *See, e.g., Nguyen*, 763 F.3d at 1178 (no arbitration agreement where hyperlink to terms and conditions was "not enough to give rise to constructive notice"); *In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058, 1064 (D. Nev. 2012) (no arbitration

agreement because court could not conclude consumer "viewed, let alone manifested assent to, the Terms of Use").

Grubhub's sole proof of "notice" is a limited-run online banner in 2016 and a recent popup. Dkt.# 15-1 at 13. Grubhub claims that the banner provided restaurants sufficient notice, but Grubhub points to no business reason for any restaurant to regularly visit Grubhub.com, nor proof that restaurants were invited to, or visited, the website at the time the banner was active. On the contrary, the restaurant operators have no reason to visit that site as party of their regular operations. Narula ¶11; Kelly ¶ 13. *Astoundingly*, Grubhub also did not locate and attach the actual banner it claims had sufficiently notified Plaintiffs of their obligation to arbitrate, instead referencing a picture of a different banner with a different date. Dkt.# 15-3 ¶ 29.

Grubhub then makes an enormous inferential leap, and asks the Court to do the same, by claiming that Plaintiffs had notice of the purported banner because a handful of emails suggesting that at some point *after* the banner had been taken down, Marianne Kelly had accessed certain Tiffin microsites. This is deficient. Instead, Grubhub must offer proof that Plaintiffs were on the website during the actual timing of the alleged banner ad, clicked the banner, viewed the arbitration provision, and in some way assented it. The fact that Grubhub can point to only a handful of instances where a Tiffin employee accessed Grubhub.com over the

course of an **eight year relationship** speaks volumes and is further evidence that posting a link on its website for diners is no notice to restaurants at all. As a result, binding the restaurants to terms in the manner Grubhub suggested is also procedurally unconscionable under Illinois law. *See Razor v. Hyundai Motor Am.,* 854 N.E.2d 607, 623 (Ill. 2006) (disclaimer was procedurally unconscionable because there was a "lack of evidence that the warranty, which contained the disclaimer of consequential damages, had been made available to the plaintiff at or before the time she signed the sale contract"); *Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co*., 408 N.E.2d 403, 410 (Ill. App. Ct. 1980).[5]

Grubhub's reliance on *Sacchi v. Verizon Online LLC,* 2015 WL 765940 (S.D.N.Y. Feb. 23, 2015), and cases like it, is misplaced since there were three instances of direct mail and email notice in addition to the terms being posted on the website. *Cf. Ragan v. AT&T Corp.*, 824 N.E.2d 1183, 1188 (Ill. App. Ct. 2005) (agreement containing arbitration clause sent to consumer by mail prior to effective date); *Boomer v. AT&T Corp.*, 309 F.3d 404, 416 (7th Cir. 2002) (agreement with

---

[5] Grubhub attached irrelevant documents relating to other Tiffin entities and a Tiffin franchisee (Dkt.# 15-7), but even those documents do not contain an arbitration clause and it is questionable that the class action waiver is valid and enforceable. *See Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 278 (Ill. 2006) (holding that waiver on class actions was procedurally and substantively unconscionable under circumstances "because it is contained in an arbitration clause" and is "a contract of adhesion that **fail[ed] to inform** the customer of the cost to her of arbitration, and [did] not provide a cost-effective mechanism for individual customers to obtain a remedy for the specific injury alleged in either a judicial or an arbitral forum.").

arbitration clause mailed prior to effective date); *Valle v. ATM Nat., LLC*, No. 14-cv-7993, 2015 WL 413449, *3 (S.D.N.Y. Jan. 30, 2015) (finding customers accepted revised terms "after **receiving** the revised terms") (emphasis added); *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976 (2005) (consumer received terms of the sale in the mail and had thirty days to return the product and reject the terms). Here, unlike these cases, Grubhub delivered ***no communication*** to restaurants about the amended terms.

Grubhub then implies (Dkt.# 15-1 at 11, n.3) that Plaintiffs waived notice, relying on *Hammarquist v. United Cont'l Holdings, Inc.*, 809 F.3d 946, 949-50 (7th Cir. 2016) and cases like it, but in *Hammarquist*, the plaintiff had ***direct*** notice of the term being enforced at enrollment and ***expressly*** agreed to waive notice of modifications. *Id.* Here, Plaintiffs had no notice of arbitration at enrollment, and while Plaintiffs' contracts acknowledge that terms may change, this language does not constitute an ***express waiver of notice.*** On the contrary, the Elkins Park contract expressly ***requires*** "30 days advance notice," and the Mt. Airy contract does not contain an express waiver of notice as in *Hammarquist*. Dkt.# 15-6. Since Grubhub failed to prove it delivered advance notice of the arbitration clause, it cannot prove that Plaintiffs implicitly assented to arbitration by their continued use of Grubhub services.

Moreover, Grubhub.com is where diners order food and is rarely, if ever,

accessed by the restaurants themselves. Narula ¶ 11; Kelly ¶ 13. To post an inconspicuously placed miniscule hyperlink to "<u>Terms of Use</u>" at the bottom of Grubhub.com does not constitute sufficient notice. *See Hines v. Overstock Inc.*, 668 F. Supp. 2d 362, 366-67 (E.D.N.Y. 2009) (no arbitration agreement formed when consumer had to scroll to bottom of webpage and click button rather than receiving notice at purchase), *aff'd* 380 Fed. Appx. 22 (2d Cir. 2016). A visitor would have needed to scroll down ***14 pages*** to see an inconspicuous hyperlink at the bottom of the screen and then somehow understand and assent to these terms purporting to modify Plaintiffs' operative contracts. Pratsinakis, Ex. 5. Simply put—this is not how contracts are formed in Illinois, online or otherwise. *See Bladel v. Carroll*, 167 N.E. 790, 791 (Ill. 1929) ("[A] contract between two parties cannot be based upon a statement of one party to which the other party does not give assent"); *Midland Funding, LLC v. Raney*, 93 N.E.3d 724, 733–34 (Ill. App. 2018), *appeal den.*, 98 N.E.3d 55 (Ill. 2018) (company failed to demonstrate when or how arbitration provision was communicated to consumers and therefore failed to demonstrate arbitration agreement).

Grubhub then claims that a recent popup that it ran during some unspecified period of time provided notice to Plaintiffs of its arbitration clause. But once again, Grubhub offers no proof that: (1) Plaintiffs visited the URL www.grubhub.com/legal/terms-of-use; (2) saw the popup when it was running; (3)

read the new terms; and (4) electronically assented to the terms, and thus assented to arbitration. Grubhub also added the popup *after,* and not in advance of, the amendment on June 4, 2018. *See* Dkt.# 15-23 (stating "[w]e **updated** our terms of use on June 4, 2018.") (emphasis added). Grubhub does not prove *when* it added the popup, *how long* the popup ran (stating only it "*would* have been available for at least 30 days") or proof that Plaintiffs or other restaurants were invited or prompted to see the modified terms. Moreover, it appears that the popup appeared only when accessing www.Grubhub/com/legal/terms-of-use, rather than the homepage, which defeats the entire purpose of notifying users of a new or modified term. Finally, Grubhub admits that the notification can be dismissed by clicking the "x" as opposed to clicking "Got it," Dkt.# 15-3 ¶ 30, which also creates ambiguity over whether people who click the "x" meant to reject, instead of accept, the terms.

C. Grubhub Provided No Notice Of The Arbitration Clause On The GFR

Because Plaintiffs' contracts with Grubhub do not contain an express arbitration provision nor incorporate one by reference, Grubhub is forced to invent an "independent" arbitration agreement based upon Plaintiffs' alleged enrollment, access, and use of Grubhub's ordering system, Grubhub for Restaurants ("GFR"). However, Grubhub never provided Plaintiffs with actual or constructive notice of this separate arbitration agreement, and Plaintiffs never agreed to it. Once again,

Grubhub has failed to set forth any legal or factual basis to support this last-ditch argument in an attempt to force Plaintiffs into arbitration they never agreed to.

"Illinois contract law requires that a website provide a user reasonable notice that his use of the site or click on a button constitutes assent to an agreement." *Sgouros*, 817 F.3d at 1036; *Trujillo,* 578 F. Supp. 2d at 989-95 (mere "availability" of an arbitration clause on website is insufficient to prove a consumer had notice and assented to it).[6] In *Sgouros,* the defendant contended that the plaintiff's use of the defendant's website and purchase from that site constituted acceptance of the website's service agreement containing an arbitration provision. The Seventh Circuit rejected that argument after finding that the transaction site "did not contain any requirement that Sgouros agree to abide by any terms and conditions, nor did it warn the user that by completing a purchase he would be bound by the terms." *Sgouros*, 817 F.3d at 1036. Likewise, the Third Circuit found that the plaintiffs did not agree to an arbitration provision that was included in a website's terms of use where the plaintiffs never received a copy of the terms and were never informed that merely using the defendant's service would constitute assent to them. *See James v. Glob. TelLink Corp.*, 852 F.3d 262, 267-68 (3d Cir. 2017); *Noble v. Samsung Elecs. Am., Inc.*, 682 F. App'x 113, 117-18 (3d Cir. 2017) ("While it may

---

[6] *See also Lee v. Intelius Inc.*, 737 F.3d 1254, 1261 (9th Cir. 2013) ("The fact that there were additional hyperlinks on a webpage Lee reviewed does not establish assent to the terms embedded in those hyperlinks").

sometimes be presumed that consumers agree to contractual provisions of which they are on notice, that presumption is warranted only where there is a reasonable basis to conclude that consumers will have understood the document contained a bilateral agreement.").

In addition, "[n]o court has suggested that the presence of a scrollable window containing buried terms and conditions of purchase or use is, in itself, sufficient for the creation of a binding contract[.]" *Sgouros*, 817 F.3d at 1036. Indeed, when confronted with browsewrap terms on a website, such as the terms Grubhub seeks to impose here, courts "generally refuse to find an enforceable agreement" when "presented with facts tending to show that the reasonably prudent offeree would be unaware of the browsewrap terms[.]" *Be In, Inc. v. Google Inc.*, No. 12-cv-3373, 2013 WL 5568706, *7 (N.D. Cal. Oct. 9, 2013). For example, in *Hite v. Lush Internet Inc.*, 244 F. Supp. 3d 444 (D.N.J. Mar. 22, 2017), the court found that a similar website design containing a browsewrap agreement was insufficient in terms of notice and assent to an arbitration provision in the website's terms of use. The court found that the design and content of the webpage did not conspicuously display the terms of use where the hyperlink to the terms was "at the very bottom of Defendant's website, in smaller typeface than other nearby links, in a tiny fragment that states: '© 2002–2016 LUSH North America. View our Terms of Use and Privacy Policy.'" *Id.* at 451-52. Nothing on the

webpage required users to open the terms before conducting transactions on the website, and those transactions could "readily be completed without the user viewing the terms which relinquish[ed] important and customary rights . . . ." *Id.* at 452.

Courts have also found reasonably prudent offerees to be unaware of browsewrap terms where links to the terms were inconspicuous, placed at the bottom of a webpage, where the website did not direct the user to the terms, and where there was no notice that using the site would constitute assent to the terms. *See, e.g.*, *Nguyen*, 763 F.3d at 1178 (finding no arbitration agreement where hyperlink to terms and conditions at bottom of website was "not enough to give rise to constructive notice"); *Specht*, 306 F.3d at 23 (refusing to enforce terms of use "located in text that would become visible to plaintiffs only if they had scrolled down to the next screen").[7]

---

[7] *See also Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 404 (E.D.N.Y. 2015) (denying motion where link to terms of use containing arbitration provision was not in large font, all caps, or in bold, nor accessible from multiple locations on the webpage); *Be In*, 2013 WL 5568706 at *9 (stating that "mere existence of a link" on a website was insufficient to establish notice); *Zappos.com*, 893 F. Supp. 2d at 1064 (declining to enforce arbitration agreement in website's terms of use where the link to the terms was inconspicuous, at the bottom of every webpage, and where the website did not direct users to the terms); *Cvent, Inc. v. Eventbrite, Inc.*, 739 F. Supp. 2d 927, 936-37 (E.D. Va. 2010) (dismissing contract claim where link to terms of use was buried at the bottom of the webpage and users were not required to click on the link nor required to read or assent); *Hines*, 668 F. Supp. 2d at 367 (plaintiff lacked notice of the terms "because the website did not prompt her to review [them] and because the link to [them] was not prominently displayed").

Grubhub also failed to establish that the GFR Terms of Use are an "independent" arbitration agreement between Plaintiffs and Grubhub. Indeed, neither the facts (as asserted by Grubhub) nor the law support such a conclusion. As an initial matter, Grubhub does not claim that it provided actual notice of the GFR Terms of Use to Plaintiffs or any other restaurant for that matter.[8] Indeed, Grubhub provides no evidence that it emailed, mailed, texted, or in any way delivered the GFR Terms of Use to Plaintiffs or other restaurants. Instead, Grubhub simply contends that the Terms of Use are "available, via hyperlink" to Plaintiffs each time they sign onto GFR. Dkt.# 15-1 at 20. Grubhub is wrong, and like the defendant in *Sgouros*, Grubhub "cannot manufacture notice where there was none." 817 F.3d at 1036.

Grubhub did not present Plaintiffs with the GFR Terms of Use when Plaintiffs signed-up to create their GFR accounts. Kelly ¶¶ 19-20. Rather, "the webpage to ***thereafter*** log-in to their account" simply includes an inconspicuous link to the GFF Terms of Use. Dkt.# 15-3 ¶ 32 (emphasis added). Indeed, there is no hyperlink to the GFR Terms of Use on the primary GFR webpage. Pratsinakis,

---

[8] At most, Grubhub contends that Plaintiffs have actual notice that "Grubhub ***employs*** online terms of use." Dkt.# 15-1 at 21 (emphasis added). This argument is unavailing. First and foremost, the relevant consideration is whether Plaintiffs had notice of the terms themselves, not whether they had notice that Grubhub "employs" terms of use a general matter. In addition, the terms of use allegedly referred to in Plaintiffs' contracts are separate and apart from the terms of use that appear on GFR, which is a different website. Narula ¶16; Kelly ¶19.

Ex. 4. In addition, there is no hyperlink to the GFR Terms of Use on other webpages listed across the main directory: Solutions, Resources, Blog, Contact Us. Instead, the GFR Terms of Use only appear on the sign-in page upon which Grubhub relies (copyrighted 2019 – after the litigation was filed). The sign-in page contains no button to create or register an account and presupposes that the user already has an account. Dkt.# 15-24. Thus, the GFR Terms of Use were only made "available, via hyperlink" ***after*** the GFR account was created. By that time, however, users are not compelled or prompted to access those terms of use, much less assent to them. Thus, upon signing-in to GFR, Plaintiffs had no notice of these additional contract terms. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 127 (2d Cir. 2012) (refusing to enforce arbitration clause that was "both temporally and spatially decoupled from the plaintiffs' enrollment in and use" of services).

In addition, reasonably prudent offerees would be unaware of the browsewrap terms located on the GFR sign-in page. The GFR sign-in page is nearly identical to the webpage in *Hite* that another court determined was insufficient to demonstrate notice and assent to the waiver of rights, even where the text directed users to "view" the terms of use. 244 F. Supp. 3d at 451-52. Like the webpage in *Hite*, the link to the GFR Terms of Use is at the very bottom of the webpage, nowhere near the sign-in section, and in a font size so small that Grubhub had to circle it for the Court in its briefing. Dkt.# 15-1 at 20. The GFR

sign-in page also does not prompt or require users to review the Terms of Use before proceeding. Dkt.# 15-24. Nor is there any notice that using the site constitutes assent to those terms. *Id.* Indeed, the terms of use are completely divorced from any transaction on the GFR site, and users can readily process Grubhub orders on the site without having to view them. As set forth above, courts routinely refuse to compel arbitration when confronted with similar facts demonstrating that the reasonably prudent offeree would be unaware of browsewrap terms on a website.

In addition, Grubhub's cases are inapposite. For example, in the *Register.com*, *Swift*, and *Cairo* cases, the parties challenging notice and assent to online terms of use admitted to having actual knowledge of those terms. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 402 (2d Cir. 2004) (party "was fully aware of the terms" posted online); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp 2d 904 (N.D. Cal. 2011) (consumer *admitted* she was aware of the term); *Cairo, Inc. v. Crossmedia Servs., Inc.*, 2005 WL 756610, *5 (N.D. Cal. Apr. 1, 2005) ("Cairo admits to actual knowledge of CMS's Terms.").[9]

Moreover, Grubhub is wrong that Mt. Airy received and processed 3,371

---

[9] *See Sw. Airlines Co. v. BoardFirst LLC*, 2007 WL 4823761, *4-6 (N.D. Tex. Sept. 12, 2007) (defendant was notified of the terms in cease and desist letter); *Ticketmaster Corp. v. Tickets.Com, Inc.*, 2003 WL 21406289, *2C (C.D. Cal. Mar. 7, 2003) (defendants received letter quoting browsewrap contract terms); *Plazza v. AirBnB, Inc.*, 289 F. Supp.3d 537, 548-50 (S.D.N.Y. 2018) (consumer consented to modified terms to continue using website and company sent email notice).

prepaid orders from January 2018 and January 2019 and that Elkins Park processed 1,715 orders during the same time period. Instead, separate restaurant operators, Manan Ventures Inc. and Kathmandu Cuisine, Inc., received and processed those orders on GFR. Narula ¶ 4. Both operators are separate and distinct entities that handle restaurant operations. *Id.* Their employees, who have no authority to enter into contracts on behalf of Plaintiffs, are the ones who log-on to GFR to process Grubhub orders. *Id.* ¶¶ 4, 17-18. Therefore, that these restaurant operators log-on to GFR and process orders on the platform is of no moment.

Grubhub also did not modify Plaintiffs' contracts with the GFR Terms of Use. "A modification to a contract's terms must satisfy all of the elements necessary to establish that a contract exists, including an offer, an acceptance, and valid consideration." *Eks Land Dev. of Oswego, LLC v. Plainfield Econ. P'ship*, 2012 WL 7006327, *4 (Ill. App. Ct. Mar. 20, 2012). Grubhub never delivered the GFR Terms of Use to Plaintiffs or other restaurants by way of email, mail, fax, text, or otherwise. Grubhub's only purported notice of this significant modification is an inconspicuous hyperlink to the Terms of Use at the very bottom of the GFR sign-in page. As set forth above, however, this is insufficient to create or modify a binding contract. *See Sgouros*, 817 F.3d at 1036; *Hines*, 668 F. Supp. 2d at 367.

Finally, the Court should reject Grubhub's desperate attempt to bind Mt. Airy and Elkins Park to arbitration provisions to which they never agreed based

upon the fact that Tiffin—their parent company—includes terms and conditions on its website. First, Grubhub cites to no case which stands for the proposition that a company employing terms of use on its own website is evidence that the company agreed to be bound to completely different, and more severe, terms of use on another company's website. Indeed, such a position is preposterous. Second, even if posting terms and conditions on its website renders Tiffin a "sophisticated business entity," that mere fact "does not justify the use of unfair surprise" to Mt. Airy and Elkins Park's detriment. *Timmerman v. Grain Exch., LLC,* 915 N.E.2d 113, 121 (Ill. App. Ct. 2009). In any event, and contrary to Grubhub's assertions, Tiffin does not seek to impose its website's terms and conditions on Tiffin customers "in similar ways." Instead, Tiffin's website simply sets forth the Terms and Conditions that govern two customer incentive programs and general Terms of Use of the website. Narula ¶¶ 26, 28. Unlike the obscure arbitration agreements tucked away in various corners of Grubhub-related websites, none of Tiffin's terms and conditions contain mandatory arbitration provisions, class action waivers, jury waivers, or otherwise seek to deprive Tiffin's valued customers of their day in court. *Id.* ¶¶ 27-28.

## II.    This Dispute Is Outside the Scope of the Narrow Arbitration Clauses

Even if the arbitration agreements were valid—which they are not—they would not govern Plaintiffs' claims in this action. "The parties to an agreement are

bound to arbitrate only those issues they have agreed to arbitrate, as shown by the clear language of the agreement and their intentions expressed in that language. An arbitration agreement will not be extended by construction or implication." *Salsitz v. Kreiss*, 761 N.E.2d 724, 731 (Ill. 2001) (citations omitted).

The scope of Grubhub's arbitration provisions are far more narrow than Grubhub suggests. Both the 2016 and 2018 versions of the Terms of Use from Grubhub.com state that "[y]ou agree that all claims, disputes or disagreements that may arise out of the interpretation or performance of **this Agreement** or that in any way relate to your use of the Sites, the Materials and/or other content on the Sites, shall be submitted exclusively to binding arbitration." Dkt.# 15-21−15-22 at 14 (emphasis added). In addition, the 2016 GrubCentral Terms of Use and the 2017 GFR Terms of Use (collectively the "**GFR Terms of Use**") are similarly narrow, each providing "[y]ou further acknowledge and agree that all claims or disputes arising out of **this agreement**" are subject to arbitration. Dkt.# 15-25 at 11 (emphasis added); Dkt.# 15-26 at 13 (same). All four provisions define the operative "agreement" as the "terms of use." Dkt.# 15-21−15-22, 15-25−15-26 at 2.

Here, Plaintiffs' claims do not in any way relate to or arise from the terms of use, let alone relate to the "interpretation or performance" of those terms of use. Rather, Plaintiffs' breach of contract claim relates to the interpretation or

performance of Plaintiffs' contracts with Grubhub. Moreover, as set forth in Plaintiffs' opposition to Grubhub's motion to dismiss, Plaintiffs' tort and statutory claims arise out of conduct and duties that are independent of the Parties' contracts, and have nothing to do with the terms of use. Dkt.# 11 at 6-11, 13-15. Thus, any arbitration agreement that allegedly governs the parties' contractual relationship would not govern those non-contract claims.

Moreover, none of Plaintiffs' claims "in any way relate to [Plaintiffs'] use of the Sites, the Materials and/or other content on the Sites." Dkt.# 15-21 at 14; Dkt.# 15-22 at 14.[10] Contrary to Grubhub's assertions, Plaintiffs' claims have nothing to do with their use of Grubhub's Sites or Materials, as defined in the 2016 and 2018 Terms of Use from Grubhub.com. Instead, Plaintiffs' claims relate solely to Grubhub's unlawful conduct in charging commissions for telephone orders that it did not generate and that did not result in food orders.

## <u>CONCLUSION</u>

The Court should deny Grubhub Inc.'s Motion to Compel Arbitration and Dismiss or Stay Proceedings as a matter of law because it failed to make even a *prima facie* showing that an agreement to arbitrate was formed at any time during the course of the relationship between the Parties.

---

[10] The arbitration provisions in the GFR Terms of Use are even more narrowly drawn and do not contain this language.

Dated:  March 20, 2019                 Respectfully submitted,

By:  */s/ Catherine Pratsinakis*
Catherine Pratsinakis, Esq.
(PA ID# 88086)
Marie-Theres DiFillippo, Esq.
(PA ID# 316012)
DILWORTH PAXSON LLP
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Telephone:  (215) 575-7000
Facsimile:  (215) 575-7200
cpratsinakis@dilworthlaw.com
mdifillippo@dilworthlaw.com
*Attorneys for Plaintiffs*