# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TIFFIN EPS, LLC** *and* **TIFFIN MOUNT AIRY, LLC**, *on behalf of themselves and all others similarly situated*,<br><br>    Plaintiffs,<br><br>              v.<br><br>**GRUBHUB INC.**,<br><br>    Defendant. | No. 2:18-cv-05630-PD |

## DEFENDANT GRUBHUB INC.'S REPLY SUPPORTING ITS MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS

Rebekah B. Kcehowski
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA  15219
T:  (412) 391-3939
F:  (412) 394-7959
rbkcehowski@jonesday.com

*Attorney for Defendant
Grubhub Inc.*

# TABLE OF CONTENTS

|   |   |   | Page |
|---|---|---|---|
| I. | THE WRITTEN CONTRACTS COMPEL ARBITRATION | | 1 |
| | A. | The Contracts Incorporate Terms Of Use Mandating Arbitration | 1 |
| | B. | Grubhub Gave Adequate Notice Of Changes To Its Terms Of Use | 3 |
| II. | INDEPENDENTLY, PLAINTIFFS AGREED TO ARBITRATE BY USING (TO THIS DAY) GRUBHUB FOR RESTAURANTS | | 6 |
| | A. | Plaintiffs Had Actual Notice of the GFR Terms | 7 |
| | B. | Plaintiffs Also Had Constructive Notice Of The GFR Terms | 8 |
| III. | THE ARBITRATION PROVISIONS COVER THIS DISPUTE | | 11 |

# TABLE OF AUTHORITIES

Page

**CASES**

*188 LLC v. Trinity Indus.*,
   300 F.3d 730 (7th Cir. 2002) ...................................................................................3

*Bass v. Prime Cable*,
   674 N.E.2d 43 (Ill. App. Ct. 1996) ..........................................................................6

*Cairo, Inc. v. Crossmedia Servs.*,
   2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ............................................................7

*Career Concepts, Inc. v. Synergy, Inc.*,
   865 N.E.2d 385 (Ill. App. Ct. 2007) ........................................................................9

*Fagerstrom v. Amazon.com*,
   141 F. Supp. 3d 1051 (S.D. Cal. 2015)....................................................................6

*Frederick v. Training Sch.*,
   765 N.E.2d 1143 (Ill. 2002) .....................................................................................3

*Friends for Health v. PayPal*,
   2018 WL 2933608 (N.D. Ill. June 12, 2018)...........................................................4

*Garber v. Harris Tr. & Sav. Bank*,
   432 N.E.2d 1309 (Ill. App. Ct. 1982) ......................................................................6

*Geldermann, Inc. v. CFTC*,
   836 F.2d 310 (7th Cir. 1987) ...................................................................................6

*Hammarquist v. United Cont'l Holdings*,
   809 F.3d 946 (7th Cir. 2016) ...................................................................................4

*Leopold v. Delphi Internet Servs.*,
   1996 WL 628593 (E.D. Pa. Oct. 24, 1996) ...........................................................12

*One Beacon Ins. Co. v. Crowley Marine Servs.*,
   648 F.3d 258 (5th Cir. 2011) .................................................................1, 4, 5, 6

*Register.com v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004) ...............................................................................7

*Southwest Airlines v. BoardFirst*,
   2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) ...................................................8

*Ticketmaster v. Tickets.Com*,
   2003 WL 21406289 (C.D. Cal. Mar. 7, 2003)......................................................8

*Trujillo v. Apple*,
   578 F. Supp. 2d 979 (N.D. Ill. 2008)....................................................................3

*U.S. Claims, Inc. v. Saffren & Weinberg, LLP*,
   2007 WL 4225536 (E.D. Pa. Nov. 29, 2007) .....................................................12

*Valle v. ATM Nat'l LLC*,
   2015 WL 413449 (S.D.N.Y. Jan. 30, 2015) .......................................................12

*Van Tassell v. United Marketing*,
   795 F. Supp. 2d 770 (N.D. Ill 2011) ....................................................................3

*Yale Dev. Co. v. Texaco, Inc.*,
   366 N.E.2d 892 (Ill. App. Ct. 1977) ....................................................................9

On two separate grounds, Plaintiffs agreed to arbitrate individually: *first*, by their written contracts with Grubhub expressly incorporating www.grubhub.com/legal's Terms of Use, which have required arbitration since April 2016, ECF 15-1 ("GH Br.") at 8–16; and *second*, by enrolling in and continuing to use (to this day) Grubhub for Restaurants ("GFR"), whose Terms of Use independently mandate arbitration, *id.* at 16–23. Plaintiffs' opposition ("Opp.") changes nothing.

## I. THE WRITTEN CONTRACTS COMPEL ARBITRATION

### A. The Contracts Incorporate Terms Of Use Mandating Arbitration

Plaintiffs concede that a contract incorporates another document when "express intent to incorporate" is present. Opp. 8. That standard is satisfied here. Both contracts expressly incorporate grubhub.com/legal's Terms of Use, which have required individual arbitration since April 2016. GH Br. 3. Mt. Airy's contract says:

> Please see GrubHub's Terms of Use at www.GrubHub.com/legal/, which are subject to change. The terms and conditions thereto shall bind my restaurant by my restaurant continuing participation and receipt of orders.

ECF 15-4. Tiffin EPS's contract similarly says:

> Please see GrubHub's website at www.GrubHub.com/legal/. The terms and conditions are subject to change by GrubHub upon 30 days advance notice. After notice and the expiration of 30 days, I acknowledge that continuing participation and receipt of orders shall bind my restaurant to any new terms and conditions.

ECF 15-5. The contracts thus expressly notified Plaintiffs that they incorporate the Terms of Use; that the Terms appear on Grubhub's website and are subject to change; and that the Terms are binding with a signature and continuing use.

Plaintiffs' main response on incorporation falls flat. They claim the contracts incorporate *only* terms found at www.grubhub.com/legal, not the Terms of Use linked *directly* from that same URL. Opp. 7–9. Plaintiffs go so far as to say that "www.grubhub.com/legal" could not possibly also reference "www.grubhub.com/legal/*terms-of-use*," a subpage of the *exact same* URL in the contracts. *Id.*

This formalistic argument fails. *One Beacon Ins. Co. v. Crowley Marine Servs.*, 648 F.3d 258, 263, 266–71 (5th Cir. 2011) (incorporating website terms even where the written document's URL did not give the "exact location of the [web]page containing the terms"); GH Br. 9–11. By signing the contracts, Plaintiffs (sophisticated business entities) agreed to abide by grubhub.com/legal's Terms of Use *in general*, "which are subject to change," ECF 15-4, 15-5, and which include "new terms," ECF 15-5. The contracts refer broadly to "Grubhub's website" and the "terms and conditions thereto." ECF 15-6 at 2, 4. As Plaintiffs' own exhibit shows, when Plaintiffs signed the contracts in early 2011, www.grubhub.com/legal reiterated that "Grubhub reserves the right to modify these Terms of Use at any time without prior notice." ECF 18-7 at 2–3. And, the URL www.grubhub.com/legal has *always* included a link to the relevant Terms of Use, Kokos Reply Decl. ("Kokos RD") ¶¶ 2-5, and has conspicuously stated since June 2018 (well before this suit):

> By accessing and/or using the Sites, you agree to all the terms and conditions of this Privacy Policy *and our Terms of Use*, *available at https://www.grubhub.com/legal/terms-of-use*. If you do not agree to all the terms and conditions of this Privacy Policy, do not use the Sites.

-2-

*Id.* (emphasis added). Grubhub.com/legal's Terms of Use are thus expressly incorporated under applicable law. GH Br. 9–13 (collecting cases). Plaintiffs' cases fail to support their formalistic argument and are readily distinguishable. Opp. 7–9.[1]

### B. Grubhub Gave Adequate Notice Of Changes To Its Terms Of Use

Plaintiffs next say the arbitration provisions from grubhub.com/legal's Terms of Use do not bind them because Plaintiffs allegedly did not receive *actual notice* of the 2016 and 2018 Terms. Opp. 9–15. This argument, too, fails.

*First*, no notice of any kind was required for Mt. Airy. The written contract makes clear that the Terms "are subject to change" and will "bind" Mt. Airy through "continuing participation and receipt of orders"—without use of the word "notice." ECF 15-4. The Court cannot "add terms to an agreement when the agreement is silent about those specific terms." *Frederick v. Training Sch.*, 765 N.E.2d 1143, 1151 (Ill. 2002). The April 2011 grubhub.com/legal Terms incorporated into Mt.

---

[1] *Rosenblum v. Travelbyus.com*, for example, rejected incorporation because, unlike here, the contract vaguely referred to "other agreements and documents," not to the specific document at issue. 299 F.3d 657, 664, 666 (7th Cir. 2002). *Landmark Structures v. F.E. Holmes & Sons* involved a photocopied paper contract that attempted to incorporate text on the "reverse side" of a page that was blank—nothing like this case. 552 N.E.2d 1337 (Ill. App. Ct. 1990); *see 188 LLC v. Trinity Indus.*, 300 F.3d 730 (7th Cir. 2002) (same facts). *Gyptec Iberica v. Alstom Power* declined to decide incorporation given the record, 2012 WL 5305510, at *2 (N.D. Ill. Oct. 26, 2012); it did not find "no incorporation," as Plaintiff say, Opp. 8. And unlike here, *Van Tassell v. United Marketing*, 795 F. Supp. 2d 770 (N.D. Ill 2011), and *Trujillo v. Apple*, 578 F. Supp. 2d 979 (N.D. Ill. 2008), did not involve *written* contracts— only website terms—and thus did not address incorporation in any way.

Airy's agreement likewise expressly confirm that Grubhub can modify the Terms "*without prior notice*" and that continued use "following [Term] modifications . . . confirms you have read, accepted, and agreed to be bound by such modifications." ECF 15-3 ¶ 26 (emphasis added). That is no different from Plaintiffs' *own* website, which twice says its terms may change "any time," "without notice." ECF 15-16 §§ 1, 4. Plaintiffs thus fail in arguing that Mt. Airy's contract has no "express waiver of notice." Opp. 13; *Hammarquist v. United Cont'l Holdings*, 809 F.3d 946, 949–50 (7th Cir. 2016) (upholding contract that allowed changes with or without notice).

*Second*, for Tiffin EPS, the contract says "30 days advance notice" for new Terms. ECF 15-5. Reasonable notice thus suffices. *One Beacon*, 648 F.3d at 266–71; *Friends for Health v. PayPal*, 2018 WL 2933608, at *5–6 (N.D. Ill. June 12, 2018) (reasonable notice analysis where contract "could be amended at any time," "amendments [were] posted on [the] website," and "[took] effect thirty days later").[2]

Here, Grubhub gave reasonable notice of the 2016 and 2018 Terms to EPS. The contract directs EPS to "[p]lease see GrubHub's website at www.Grub-

---

[2] To support its notice argument, Plaintiffs cite inapposite consumer cases that involved contract formation in the first instance using only website terms of use without underlying written agreements. Opp. 10–11 (citing *Nguyen*, *Specht*, *Sgouros*, *Zappos*, and *Hines*). Unlike in these cases, Plaintiffs here signed written contracts that expressly incorporate internet terms and subsequent modifications thereto. ECF 15-4, 15-5. But, even these consumer web term cases recognize "reasonable" or "constructive" notice of terms suffices, as Plaintiffs also recognize. Opp. 10–11.

Hub.com/legal"; says the Terms are "subject to change"; and says that, "[a]fter notice and the expiration of 30 days," any "continuing participation and receipt of orders" binds EPS "to any new [T]erms." ECF 15-5. Grubhub notified EPS through the updated Terms themselves, available at the URL listed in the contracts, as well as through banner notifications (2016 Terms) and pop-ups (2018 Terms) at grubhub.com, a public website that Plaintiffs admit visiting. ECF 15-3 ¶¶ 29–30; ECF 15-9 to 15-15; Kokos RD ¶ 6. This is reasonable notice to EPS, a sophisticated entity with its own web-based terms. *One Beacon*, 648 F.3d at 266–71 (reasonable notice was present where incorporated internet terms were "at all times available" online and parties were sophisticated "commercial entities").

Plaintiffs' response is weak. They swear they had "no business reason" to visit grubhub.com to see the banners/pop-ups. Opp. 11; ECF 18-1 ¶¶ 10–12; ECF 18-3 ¶ 13 (Kelly visited the site "a few times"). But Plaintiffs signed binding agreements with Grubhub directing them to "[p]lease see" the "website" for the Terms and any changes thereto. ECF 15-4, 15-5. From the objective perspective of a reasonable, sophisticated commercial entity, the contracts themselves thus provided compelling "business reasons" for Plaintiffs to visit the website—particularly since "Grubhub orders make up nearly 15% of Tiffin.com's revenues." ECF 1 ¶ 47.

Plaintiffs finally say, for both Mt. Airy and EPS, that "Grubhub must offer proof that Plaintiffs were on [grubhub.com] during the actual timing of the alleged

banner ad, clicked the banner, viewed the arbitration provision, and in some way assented it." Opp. 11. That is wrong. *First*, it demands *actual* notice of Term changes when Mt. Airy's contract requires *no* notice and EPS's contract requires only *reasonable* notice, which was provided. *See One Beacon*, 648 F.3d at 266–71 (a sophisticated entity "may not avoid" plainly incorporated, readily accessible internet terms "by pleading ignorance of their existence"); *see also* GH Br. 10–11.

*Second*, this assertion demands additional "assent" when Plaintiffs *already* assented to expressly incorporated Terms and updates by (1) signing the contracts and (2) participating in Grubhub's platform. ECF 15-4, 15-5. Plaintiffs admit their "contracts acknowledge that terms may change," Opp. 13, and continued use equals assent to updated Terms. *Geldermann, Inc. v. CFTC*, 836 F.2d 310, 318 (7th Cir. 1987) (enforcing new arbitration clause because contract bound plaintiff to charter rules and "all amendments subsequently made thereto"); *Fagerstrom v. Amazon.com*, 141 F. Supp. 3d 1051, 1064–66 (S.D. Cal. 2015) (upholding arbitration agreement giving unilateral right to modify); *Bass v. Prime Cable*, 674 N.E.2d 43, 50 (Ill. App. Ct. 1996) (terminable-at-will contract may be unilaterally modified); *Garber v. Harris Tr. & Sav. Bank*, 432 N.E.2d 1309, 1314–15 (Ill. App. Ct. 1982) (issuers could modify cardholder agreements as a condition of continued use).

## II. INDEPENDENTLY, PLAINTIFFS AGREED TO ARBITRATE BY USING (TO THIS DAY) GRUBHUB FOR RESTAURANTS

Separately, Plaintiffs also agreed to arbitration by enrolling in and continuing

to use GFR. GH Br. 16–23. As plaintiffs admit, website terms of use are binding even if the user merely had "reasonable notice" of them. Opp. 16. Plaintiffs had (and now have) reasonable *and* actual notice of the GFR Terms of Use, including the arbitration clause, which applies to this dispute over phone orders received via GFR. GH Br. 4–5; *infra* § III. Yet Plaintiffs' GFR use continues *to this very day*.

### A. Plaintiffs Had Actual Notice of the GFR Terms

Plaintiffs' actual notice of the GFR Terms is apparent, despite Plaintiffs' carefully crafted declarations. Tiffin representatives (including through accounts assigned to Narula) clicked on and viewed the GFR Terms *nine times* in the last nine months—including *five times* before filing suit. Kokos RD ¶¶ 11–13. Nonetheless, Plaintiffs have continually used GFR to connect with diners and receive phone orders. *Id*. ¶¶ 20–21. That alone is sufficient to send this dispute to arbitration. The GFR Terms themselves make that clear: "[B]y accessing and/or using [GFR], you agree to *all* the terms and conditions of this Agreement. *If you do not agree to all the terms and conditions of this Agreement, do not use* [*GFR*]." ECF 15-26 at 2 (emphasis added). Plaintiffs have never stopped using GFR, binding them to the GFR Terms. *Register.com v. Verio, Inc.*, 356 F.3d 393, 401–02 (2d Cir. 2004) (repeatedly using site shows actual notice of and assent to web terms); *Cairo, Inc. v. Crossmedia Servs.*, 2005 WL 756610, at *5 (N.D. Cal. Apr. 1, 2005) (repeatedly using site, with knowledge of terms, shows actual notice and assent); GH Br. 17–20.

Indeed, even after Grubhub filed its arbitration motion clearly describing the (already ubiquitous) GFR Terms, Plaintiffs have continued to receive and process orders (including phone orders) through GFR, benefiting from the diner access, technology, and efficiencies that GFR provides. Kokos RD ¶¶ 14–17, 20–22. This too shows actual knowledge and assent, and compels arbitration based on ongoing use, as the GFR Terms provide that "by accessing [GFR] . . . you agree to all the terms." ECF 15-26 at 2; *Southwest Airlines v. BoardFirst*, 2007 WL 4823761, at *6–7 (N.D. Tex. Sept. 12, 2007) (plaintiff had actual knowledge of terms via cease and desist letter, continued its use, and thus "bound itself" to terms); *Ticketmaster v. Tickets.Com*, 2003 WL 21406289, at *2 (C.D. Cal. Mar. 7, 2003) (cease and desist letter quoting web terms gave actual knowledge; continued use was assent).[3]

### B.  Plaintiffs Also Had Constructive Notice Of The GFR Terms

Even were actual notice not present here (and it is), the lesser standard of *constructive* notice is also satisfied. Plaintiffs—part of a sophisticated restaurant group—have had constructive notice of the GFR Terms of Use since they first logged into GFR *years ago*. GH Br. 17; Opp. 15. Several factors establish this.

*First*, Plaintiffs admit they use GFR regularly. Narula concedes he "use[s] a GFR administrative account to view the restaurants' receivables from Grubhub

---

[3] This argument applies equally to the grubhub.com/legal Terms of Use incorporated into Plaintiffs' written contracts, as Plaintiffs continue to participate in Grubhub to this day, even though their contracts are terminable at will. *Supra* § I.

orders." ECF 18-1 ¶ 19. Kelly admits she uses GFR to "view the restaurants' monthly statements or other information pertinent to the restaurants." ECF 18-3 ¶ 21. Plaintiffs also concede their "restaurant operators" accessed and used GFR regularly and "received and processed . . . orders on GFR." Opp. 22.[4] Once logged-in to GFR's platform—including on the pages that Narula and Kelly admit they access and use regularly—the GFR Terms of Use are clearly displayed, ubiquitous, and unavoidable on nearly every page. Kokos RD ¶¶ 8-20.

For example, the GFR webpage containing monthly statements (*i.e.*, how restaurants have viewed monthly statements since mid-2017) has a conspicuously placed, no-scroll-required hyperlink to the GFR Terms of Use. *Id.* ¶ 17. The same is true of the pages that Narula admits he accesses. *Id.* ¶¶ 14–16. More telling still is the unmistakable and obvious link to the bolded "**Terms and agreement**," with a hyperlink just below it stating, "View terms and agreement," displayed prominently on Plaintiffs' GFR "Profile" page. *Id.* ¶ 19. The GFR sign-in page likewise links to

---

[4] The Court should reject Plaintiffs' effort to hide their constant GFR use under agency principles. *E.g.*, Opp. 4, 22. Restaurant personnel and third-party operators bind Tiffin through their conduct. *See Career Concepts, Inc. v. Synergy, Inc.*, 865 N.E.2d 385 (Ill. App. Ct. 2007) (company's sales manager had apparent authority to contract); *Yale Dev. Co. v. Texaco, Inc.*, 366 N.E.2d 892 (Ill. App. Ct. 1977) (where principal knowingly permits agent to deal with third persons in negotiations, agent has apparent authority to bind principal). By giving its personnel and operators GFR credentials and allowing them to conduct business through GFR on its behalf, Tiffin reasonably represented that those agents have authority to act on its behalf. This includes Kelly, who expressly represented to Grubhub, "I am an authorized person on *all* Tiffin accounts." ECF 15-15 at 6 (emphasis added).

the GFR Terms through a plainly visible link each time Plaintiffs sign in. ECF 15-3 ¶ 32; ECF 15-24. This has been the case for years, not merely 2019, as Plaintiffs suggest. Opp. 20. There is no cluttered text obscuring the link to the GFR Terms, no multistep process to locate the Terms, and no need to scroll through irrelevant text to make the link visible. GH Br. 17–18. This shows constructive notice of the GFR Terms and arbitration provision and assent thereto through continued use.

*Second*, Tiffin.com itself drafted and employs internet terms applicable to its own website users through an obstructed hyperlink. ECF 15-3 ¶¶ 17–22. Plaintiffs' claimed ignorance of the ubiquitous GFR Terms—which they saw *hundreds* of times when using GFR over the past few years (Kokos RD ¶¶ 9–10)—should be rejected.[5]

Plaintiffs' cited cases—all individual consumer cases—are inapposite, as Plaintiffs are sophisticated business entities enforcing their *own* web-based terms of use on their *own* customers. GH Br. 17–19 (collecting cases involving sophisticated entities). Plaintiffs also are wrong that the GFR sign-in page is "nearly identical" to the webpage in *Hite v. Lush Internet Inc.* Opp. 20. *Hite*'s webpage contained a link to view terms visible only (1) after a substantial scroll down through the webpage, and (2) below numerous other links, graphics, and boxes. 244 F. Supp. 3d 444, 451–

---

[5] Plaintiffs say their website terms do not deprive customers "of their day in court." Opp. 23. But their terms' broad release purports to absolve Tiffin "from any and all liability for any loss, harm, damages, cost, or expense" in "any way connected to the Program and/or the use of any Program rewards." ECF 15-17 at 4.

52 (D.N.J. 2017). No such cluttering factors exist on the sign-in page and the many GFR pages that Plaintiffs admit to using regularly. ECF 15-24; Kokos RD ¶¶ 14-20.

*Finally*, the GFR Terms do not modify grubhub.com/legal's Terms of Use, as Plaintiffs assert. Opp. 22. As explained before, the GFR platform has its own Terms of Use—separate from the written contracts—that bind restaurants enrolled in and using GFR. GH Br. 16–22. Plaintiffs admit they enrolled in GFR, years after enrolling in Grubhub—they just do not recall exactly when. Nor do they dispute creating various log-in accounts. ECF 18-1 ¶ 15; ECF 18-3 ¶¶ 18–19.

### III. THE ARBITRATION PROVISIONS COVER THIS DISPUTE

Finally, *both* arbitration provisions (grubhub.com/legal's Terms *and* the GFR Terms) cover the entirety of this dispute, despite Plaintiffs' contrary assertions. *First*, the 2018 grubhub.com/legal Terms of Use broadly "govern[] your access and use of the Sites." ECF 15-22 at 2. The arbitration clause there broadly applies to "all claims, disputes, or disagreements that may arise out of the interpretation or performance of this Agreement, or that in any way relate to your use of the Sites, the Materials, and/or other content on the Sites." *Id.* at 14. Plaintiffs also signed written contracts incorporating Terms of Use that bind them through "continuing participation and *receipt of orders*." ECF 15-4, 15-5. *Second*, and independently, the GFR Terms state that, "by accessing and/or using Grubhub for Restaurants, you agree to all the terms and conditions of this Agreement" which allows access to GFR,

ECF 15-26 at 2, and incorporates restaurants' contracts, *id.* GFR's arbitration clause then applies to "all claims or disputes arising out of this agreement." *Id.* at 13.

This entire dispute thus falls within both clauses' broad language. *Leopold v. Delphi Internet Servs.*, 1996 WL 628593, at *2–3 (E.D. Pa. Oct. 24, 1996) (similar clause had "broad reach beyond [its] origin or genesis in the contract"); *U.S. Claims, Inc. v. Saffren & Weinberg, LLP*, 2007 WL 4225536, at *7 (E.D. Pa. Nov. 29, 2007) (contract and tort claims covered); *Valle v. ATM Nat'l LLC*, 2015 WL 413449, at *3 (S.D.N.Y. Jan. 30, 2015) (clause applies to disputes predating clause). GFR is the online portal through which restaurants interact with their diner-facing webpages on grubhub.com, and diners dial a Grubhub-provided phone number found on a grubhub.com restaurant page, implicating the site's contents. Grubhub orders are received by restaurants and processed via GFR, implicating both Grubhub's and Plaintiffs' use of the sites. Indeed, the GFR pages Plaintiffs admit to visiting—the "View Transactions" pages within the "Financials" section—list all phone orders that a restaurant receives. Kokos RD ¶¶ 21–22. Monthly statements, which are available and accessed by Tiffin *through GFR*, expressly list the phone orders at issue, and the customer call recordings at issue are also available on GFR. *Id.* ¶¶ 17, 22.[6]

---

[6] Regardless, any questions about these arbitration clauses' scope would be for the arbitrator to decide, as the clauses incorporate AAA rules. ECF 15-22 at 14; ECF 15-25 at 11; *Ins. Newsnet.com v. Pardine*, 2011 WL 3423081, at *3 (M.D. Pa. Aug. 4, 2011) (incorporation of AAA rules shows agreement to arbitrate arbitrability); *Oracle v. Myriad Grp.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (collecting cases).

Dated: April 3, 2019           */s/ Rebekah B. Kcehowski*
Rebekah B. Kcehowski
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA  15219
T:  (412) 391-3939
F:  (412) 394-7959
rbkcehowski@jonesday.com

*Attorney for Defendant
Grubhub Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record identified via transmission of Notices of Electronic Filing generated by CM/ECF.

                                                */s/ Rebekah B. Kcehowski*
                                                Rebekah B. Kcehowski