IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TIFFIN EPS, LLC** and **TIFFIN MOUNT AIRY, LLC**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**GRUBHUB INC.**,<br><br>Defendant. | Case No. 2:18-cv-05630-PD |

**PLAINTIFFS' SURREPLY IN FURTHER OPPOSITION TO GRUBHUB INC.'S RENEWED MOTION TO COMPEL ARBITRATION**

Catherine Pratsinakis, Esq.
(PA ID# 88086)
Timothy J. Ford, Esq.
(PA ID# 325290)
DILWORTH PAXSON LLP
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Telephone: (215) 575-7000
Facsimile: (215) 575-7200
cpratsinakis@dilworthlaw.com
tford@dilworthlaw.com
*Attorneys for Plaintiffs*

Dated: June 13, 2019

## **TABLE OF CONTENTS**

| | | |
|---|---|---:|
| A. | GH's Legally Flawed Incorporation Theory | 2 |
| B. | GH's Universally Rejected Browsewrap Theory | 3 |
| C. | Deeply Flawed Set of Purported Notices Directed to Diners | 6 |
| D. | The Purported Single Click From the Mt. Airy GFR Account | 9 |
| E. | The Purported OrderHub Clickwrap Agreement | 10 |
| F. | GH's Arbitration Clauses Do Not Apply Retroactively | 11 |

# TABLE OF AUTHORITIES

**Cases**

*Austin Freight Sys. v. West Wind Logistics*,
  2019 WL 2088056 (N.D. Ill. 2019) ................................................................. 12

*Be In, Inc. v. Google*,
  2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) ...................................................... 6

*Berkson v. Gogo*,
  97 F. Supp. 3d 359 (E.D.N.Y. 2015) ................................................................. 4

*Boomer v. AT&T*,
  309 F.3d 404 (7th Cir. 2002) ............................................................................ 7

*Cvent v. Eventbrite*,
  739 F. Supp. 2d 927 (E.D. Va. 2010) ................................................................ 6

*Douglas v. U.S. Dist. Court for Cent. Dist. of California,*
  495 F.3d 1062 (9th Cir. 2007) ........................................................................... 5

*Eks v. Plainfield*,
  2012 WL 7006327 (Ill. App. Ct. Mar. 20, 2012) ............................................... 1

*Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*,
  408 N.E.2d 403 (Ill. App. Ct. 1980) .................................................................. 5

*Herzfeld v. 1416 Chancellor*,
  2015 WL 4480829 (E.D. Pa. July 22, 2015) .................................................... 12

*Hite v. Lush Internet*,
  244 F. Supp. 3d 444 (D.N.J. 2017) .................................................................... 4

*Hubbert v. Dell Corp.*,
  835 N.E2d 113 (Ill. App. Ct. 2005) ................................................................... 7

*In re Zappos.com*,
  893 F. Supp. 2d 1058 (D. Nev. 2012) ............................................................... 4

*Kinkel v. Cingular Wireless*,
  857 N.E.2d 250 (Ill. 2006) ................................................................................ 5

*Midland Funding v. Raney*,
  93 N.E.3d 724 (Ill. App. 2018), *appeal den.*, 98 N.E.3d 55 (Ill. 2018) ........... 1

*Nguyen v. Barnes & Noble*,
  763 F.3d 1171 (9th Cir. 2014) ...................................................................... 3, 4

*Ragan v. AT&T Corp.*,
    824 N.E.2d 1183 (Ill. App. Ct. 2005) ................................................................... 7

*Razor v. Hyundai*,
    854 N.E.2d 607 (Ill. 2006) .................................................................................... 5

*Register v. Verio*,
    356 F.3d 393 (2d Cir. 2004) ................................................................................. 7

*Rodman v. Safeway*,
    No. 11-cv-03003, 2015 WL 604985 (N.D. Cal. Feb. 12, 2015), *aff'd*, 694 F.
    App'x 612 (9th Cir. 2017) ................................................................................ 5, 6

*Rosenblum v. Travelbyus.com*,
    299 F.3d 657 (7th Cir. 2002) ................................................................................ 3

*Specht v. Netscape*,
    306 F.3d 17 (2d Cir. 2002) ............................................................................. 4, 11

*TradeComet.com v. Google*,
    435 F.App'x 31 (2d Cir. 2011) ........................................................................... 12

*Valle v. ATM Nat.*,
    2015 WL 413449 (S.D.N.Y. Jan. 30, 2015) ......................................................... 7

*Wargel v. First National Bank*,
    460 N.E.2d 331 (Ill. App. Ct. 1984) ................................................................... 10

*Wetzel v. Baldwin*,
    1999 WL 54563 (E.D. Pa. Jan. 29, 1999) ........................................................... 12

GH (not Plaintiffs) has the burden of proving the formation of an arbitration agreement, and despite many dizzying attempts and shifting theories, it has failed to do so.[1] The following record shows that GH cannot show "the elements necessary to establish that a contract exists, including an offer, an acceptance, and valid consideration." *Eks v. Plainfield*, 2012 WL 7006327, *4 (Ill. App. Ct. Mar. 20, 2012).

− Fact No. 1: The Parties' contracts are illegible. #32-3 (Kelly Tr. 69:8–12, 70:5–71:5); #32-4 (Kokos Tr. 43:5–19).
− Fact No. 2: Both the contracts and the terms and conditions at the URL referenced in the contracts contain no arbitration clause.[2]
− Fact No. 3: GH never communicated or delivered notice to Plaintiffs or any restaurant of GH's intent to arbitrate.[3]
− Fact No. 4: Plaintiffs were not directed to an arbitration clause on any GH website.
− Fact No. 5: Plaintiffs never saw, read, or assented to any terms containing an arbitration clause and immediately objected to GH's arbitration demand when raised on March 6, 2019.
− Fact No. 6: Tiffin employees Munish Narula, Rakesh Narula, and Marianne Kelly accessed GH's restaurant websites from time-to-time using only all-restaurant administrative accounts and their log-in credentials auto-populate.[4]
− Fact No. 7: Tiffin employees Munish Narula, Rakesh Narula, and Marianne Kelly

---

[1] *Midland Funding v. Raney*, 93 N.E.3d 724, 733–34 (Ill. App. 2018), *appeal den.*, 98 N.E.3d 55 (Ill. 2018) (by failing to demonstrate when or how arbitration was communicated, company failed to demonstrate arbitration agreement).
[2] #32-4 (Kokos Tr. 42:22–23 ("There is not an arbitration clause in this specific 2011 signup."), 48:17–18 ("This specific agreement does not have an arbitration clause listed on it."), 54:21–22 ("The word 'arbitration' does not appear in this specific document."), 57:5–8 ("That is correct, in our privacy policy listed here it does not say the word 'arbitration.'"); #32-16 and -17 (no arb clause in terms at referenced URL).
[3] #32-4 (Kokos Tr. 67:5–68:3, 69:3–7, 95:6–8, 96:2–3; 171:19–22).
[4] #32-38 ¶ 24; #32-41 ¶ 19; #32-3 (Kelly Tr. 129:22, 139:25–140:6).

rarely accessed GH's diner website.[5]

- Fact No. 8: Tiffin employees Munish Narula, Rakesh Narula, and Marianne Kelly never clicked on the GFR terms or used the Grubhub-issued tablets.[6]

- Fact No. 9: GH knew that Plaintiffs were contracted with third-party operators and that these entities and their employees were filling GH food orders using the restaurant-specific GH accounts.[7]

- Fact No. 10: GH knew that the only individual with authority on Tiffin GH accounts to change the contracts was and remains Tiffin's CEO Munish Narula and, with his consent, his designee Marianne Kelly.[8]

Since GH presents no arbitration agreement to the Court, it seeks to manufacture one with: (1) a legally unsupportable incorporation by reference theory; (2) a universally rejected browsewrap theory; (3) a flawed set of purported "notices" directed to diners (not restaurants); (4) a single click on GFR terms on December 14, 2018 at 10:10 p.m. by the Mt. Airy account used by third-party operator Manan Ventures and its employees; (5) a purported clickwrap agreement from 2013 related to OrderHub software application decommissioned in 2016 and which contained no arbitration clause; and (6) Plaintiffs' ongoing use of GH services post-March 2019.

### A.   GH's Legally Flawed Incorporation Theory

GH bases its incorporation theory (#36 at 5) on a browsewrap: an unremarkable link found by scrolling to the bottom of the webpages of GH's diner website, including the single webpage referenced in the operative contracts. *See*

---

[5] #32-38 ¶ 13; #32-41 ¶ 11; #32-3 (Kelly Tr. 249:5–17).
[6] #32-4 (Kokos Tr. 232:9–20); #32-23 (Young Tr. 101:9–17).
[7] #32-29–32-34; *see also* #32-4 (Kokos Tr. 34:19–20).
[8] #38-3; #32-29.

*Nguyen v. Barnes & Noble*, 763 F.3d 1171, 1175–76 (9th Cir. 2014) (distinguishing clickwrap and browsewrap agreements). GH admits this is a standard browsewrap. #36 at 5 (admitting the "link to the GH.com ToUs [was] *at the bottom of the page*"). This is legally insufficient both under Illinois' incorporation by reference doctrine and law on browsewrap agreements. *Id.* (browsewrap terms at bottom of website "not enough to give rise to constructive notice"); *Rosenblum v. Travelbyus.com*, 299 F.3d 657, 665–66 (7th Cir. 2002) (incorporation must be clear). Even if the link was added to the second paragraph of the terms at the referenced URL, GH never notified anyone of the modification and the contracts do not incorporate cross-referenced terms on other URLs. #32-16 and 32-17. Any ambiguity over whether the contracts intended to incorporate crossed-referenced URLs must be construed against the drafter GH and the "benefit of all reasonable doubts or inferences that may arise" goes to Plaintiffs. #32 at 20. GH does not cite to a single case in support of its incorporation by cross-reference theory, and its browsewrap is legally invalid.

    **B.**    <u>**GH's Universally Rejected Browsewrap Theory**</u>

Neither the diner website nor the GFR website (or any of its other restaurant websites) provide constructive notice of an arbitration clause. First, GH's contention that "Tiffin personnel and agents use GFR 'daily' to process orders," #36 at 13, misstates the facts. Kelly and Narula attested to the fact that they access GFR only from time-to-time and that they do so using one of only two all-restaurant GFR

3

administrative accounts. #32-41 ¶ 19; #32-38 ¶ 24. Plaintiffs do not use the GH-issued tablets to process GH food orders and they have no employees. #32-41 ¶¶ 17–19; #32-38 ¶ 21. There is no evidence to support GH's contention that *Plaintiffs* are "constantly" on GFR. GH's spin on the facts lacks all perspective. Tiffin, Kelly and Narula run a ten-restaurant Indian restaurant chain and spend maybe a fraction of their month thinking about GH, which runs on autopilot down to the automated login.

GH's *ad nauseum* claims that a minuscule link at the bottom of the webpage should be construed as "prominently displayed" and "easily accessible." But courts view browsewraps with sharp skepticism and have repeatedly rejected webpage designs virtually identical to the GFR design. *Hite v. Lush Internet*, 244 F. Supp. 3d 444, 451–52 (D.N.J. 2017) (design did not conspicuously display terms of use where hyperlink "at the very bottom of Defendant's website, in smaller typeface than other nearby links, in a tiny fragment that states: '© 2002–2016 LUSH North America. View our Terms of Use and Privacy Policy'").[9] Nor can GH rely on Plaintiffs' continued use to show assent because, again, this disregards the first principles of

---

[9] *Nguyen*, 763 F.3d at 1178 (terms and conditions at bottom of website "not enough to give rise to constructive notice"); *Specht v. Netscape*, 306 F.3d 17, 23 (2d Cir. 2002) (refusing to enforce terms of use "located in text that would have become visible to plaintiffs only if they had scrolled down to the next screen"); *Berkson v. Gogo*, 97 F. Supp. 3d 359, 404 (E.D.N.Y. 2015) (denying motion where link to terms of use containing arbitration clause was not in large font, all caps, or bold); *In re Zappos.com*, 893 F. Supp. 2d 1058, 1064 (D. Nev. 2012) (arbitration clause invalid; link was inconspicuous at bottom of webpage; users were not directed to terms).

contract law.[10] "*Douglas* teaches that assent to a contract's revised terms 'can only be inferred' from a customer's ongoing use of a service '***after [the customer] received proper notice*** of the proposed changes.'" *Rodman v. Safeway*, No. 11-cv-03003, 2015 WL 604985, at *2 (N.D. Cal. Feb. 12, 2015), *aff'd*, 694 F. App'x 612 (9th Cir. 2017) (quoting *Douglas v. U.S. Dist. Court for Cent. Dist. of California,* 495 F.3d 1062, 1066 (9th Cir. 2007)). Otherwise,

> [how] would a party know when to check the website for possible changes to the contract terms without being notified that the contract has been changed and how. Douglas would have had to check the contract every day for possible changes. Without notice, an examination would be fairly cumbersome, as Douglas would have had to compare every word of the posted contract with his existing contract in order to detect whether it had changed.

*Douglas*, 495 F.3d at 1066; *see* #32-4 (Kokos Tr. 69:3–7 ("We have not individually delivered a notice. We don't feel we need to.")). Indeed, the company in control of its website is in the best position to now when and how it changed its terms and to provide notice of those changes *even when the company has limited or no notice*

---

[10] GH's failure to give notice of changing terms is procedurally and substantively unconscionable under Illinois law. *See Razor v. Hyundai,* 854 N.E.2d 607, 623 (Ill. 2006) (disclaimer was procedurally unconscionable because there was a "lack of evidence that the warranty, which contained the disclaimer... had been made available to the plaintiff at or before the time she signed the sale contract"); *Kinkel v. Cingular Wireless*, 857 N.E.2d 250, 278 (Ill. 2006) (finding procedurally and substantively unconscionable "a contract of adhesion that fail[ed] to inform the customer of the cost to her of arbitration, and [did] not provide a cost-effective mechanism for individual customers to obtain a remedy for the specific injury alleged in either a judicial or an arbitral forum."); *Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403, 410 (Ill. App. Ct. 1980) (limiting clause "not conscionable" because it "was not conspicuous [or] … known to the plaintiff [when] contract was made").

*obligations* because a company cannot otherwise show assent from continued use. *Safeway,* 2015 WL 604985, at *2 (refusing to bind Class to contract modification even though notice was not required by terms because defendant was unable to meet its burden of proving the Class assented to the modification).

GH's attempt to distinguish the heavy weight of many cases against it is by asserting these cases apply to "consumers," not businesses. This is a senseless distinction that no court has made in the context of legal notice. *See, e.g., Cvent v. Eventbrite*, 739 F. Supp. 2d 927, 937 (E.D. Va. 2010) (business not held to a different notice standard); *Be In, Inc. v. Google*, 2013 WL 5568706, at *7 (N.D. Cal. Oct. 9, 2013) (same). GH obscures the real issue: without notice, a party cannot assent, and without assent, a party cannot contract. No court has altered this **notice** standard for businesses as even sophisticated businesses are not clairvoyant.

    **C.**    <u>**Deeply Flawed Set of Purported Notices Directed to Diners**</u>

According to Kokos, GH felt that notice was not needed, #32-4 (Kokos Tr. 69:37, 171:19–22), though GH's own practice in 2011 was to provide restaurants direct notice of changes to its terms and conditions in monthly statements. #32-35, #32-36. Despite its prior practice, GH failed to provide notice of its modifications in 2016 and 2018. GH had no response to this material fact. Instead, GH's position on notice vacillates between reasonable notice, no notice, web design notice, and notice through the diner website. Yet, in each instance, GH cannot point to evidence

showing that GH actually notified Plaintiffs of its intent to arbitrate (much less their assent). GH's reliance on *Ragan v. AT&T Corp.*, 824 N.E.2d 1183, 1188 (Ill. App. Ct. 2005) and cases like it, is misplaced as each involved direct notice.[11] In *Register v. Verio*, the party "admitted... it was fully aware of the terms…." 356 F.3d 393, 402 (2d Cir. 2004). GH admits that it delivered **no communication** when it sought to modify the diner website terms in 2016 or 2018 and cannot prove that Plaintiffs saw or assented to those terms.

GH does not refute *where* and *how* restaurants conducted GH business, the limited function of the diner website, and the fact that the purported 2016 banner and 2018 popup were directed to diners, not restaurants. GH admits that it uses popups to notify restaurants of important updates but does so on the *GFR website*. #32-4 (Kokos Tr. 65:21–66:2, 66:20–22). GH is trapped in a confusing web of its own making and can do no better than to point haphazardly to the unproven 2016 banner directed to diners. #36 at 7. GH does not tackle the obvious deficiencies—the weak evidence underlying Kokos' belief that the 2016 banner ran for 30 days, #32-4 (Kokos Tr.

---

[11] *Ragan,* 824 N.E.2d at 1188 (agreement containing arbitration clause sent to consumer by mail prior to effective date); *Boomer v. AT&T*, 309 F.3d 404, 416 (7th Cir. 2002) (agreement with arbitration clause mailed prior to effective date); *Valle v. ATM Nat.*, 2015 WL 413449, *3 (S.D.N.Y. Jan. 30, 2015) (finding customers accepted revised terms "after **receiving** the revised terms") (emphasis added); *Hubbert v. Dell Corp.*, 835 N.E2d 113 (Ill. App. Ct. 2005) (consumer received terms of the sale in the mail and had thirty days to return the product and reject the terms).

7

109:17–116:14);[12] failure to show Plaintiffs were directed to or saw the 2016 banner, #32-4 (Kokos Tr. 163:11–16, 172:14–173:17); untimeliness and poor location of its 2018 popup, #32-4 (Kokos Tr. 175:17–19, 182:5–183:3); failure to show Plaintiffs were directed to or saw the 2018 popup, #32-4 (Kokos Tr. 183:23–24), #32-23 (Young Tr. 183:12–24); and failure to show that Plaintiffs assented to either modified terms, #32-23 (Young Tr. 101:9–17), #32-4 (Kokos Tr. 232:9–20). There are thirty-two web captures on the internet archives showing that GH had ***no live banner on its home page from March 6, 2016 to April 6, 2016***.Kokos, who had no personal knowledge of the banner, relies upon a handful of unclear, inconclusive documents and a single Word document containing a computer screenshot of the purported 2016 banner, after the relevant time frame on April 7, 2017 and at a different URL—Grubhub.com/lets-eat—not the homepage Grubhub.com. #28-25. GH—with all of its alleged access to analytics, access to the underlying codes of its URLs with the ability to recreate any webpage, rests its entire theory on a Word document attached to a heavily redacted email that GH refuses to produce. Simply put, GH failed to prove the 2016 banner ran live during the relevant period.[13]

---

[12] *See* http://web.archive.org (search "Grubhub.com" from March 6–April 6, 2016).

[13] Kokos' testimony is unreliable as she: (1) concealed the URL addresses in her original Declaration, #15-21–15-23, #15-25, #15-26; (2) claimed the 2018 popup was located on different webpages and posted in advance of the effective date, which was untrue, *compare* #32-4 (Kokos Tr. 175:17–19, 182:5–183:3), *with* #19-1 ¶ 6; (3) signed a sworn declaration on technology topics she knew nothing about, #15-3, #19-

### D.     The Purported Single Click From the Mt. Airy GFR Account

Over the course of an eight-year relationship, GH can proffer evidence of only one pre-complaint filing click, late in the evening on December 14, 2018, by an unknown person using the Tiffin Mt. Airy restaurant account. Ford Ex. 23 (Young Tr. 71:17–72:1); Ford Ex. 3 (Kokos Tr. 35:23–24, 204:16–18, 205:9–15). Narula, the CEO of the Tiffin Indian restaurant chain, and his Director of Marketing and Operations, Marianne Kelly, were not on the Mt. Airy GH account at 10:10 pm in the evening clicking on GFR terms. The single click could have been caused by literally anyone walking by the tablet. #32-4 (Kokos Tr. 24:23–25:2). Tablets are always logged in to access orders, #32-3 (Kelly Tr. 142:2–4), and GH's proprietary tracking system cannot identify the user associated with any of the views because it cannot track when a user is automatically logged in, #32-23 (Young Tr. 91:2–92:20). GH's representative concedes "the only other option would be to look at the computer that was used to log in or get recording of who logged in at the time." #32-23 (Young 71:23–72:1). And Plaintiffs proffered their own declaration showing no Plaintiff computer ever visited the GFR terms. #32-42 ¶¶ 5–9.[14]  Even if GH could prove that

---

1; (4) made statements about Tiffin's website but neglected to advise the Court about the prominent banner advising loyal customers to review the terms of its loyalty program, *compare* #32-37, *with* #15-3 ¶¶ 18–23; and (5) based her Declarations on information fed to her by many GH employees, except Kevin O'Malley, a key witness *who reports to her*. *See* #38-4 at 46 (GH's Interrogatory Responses).

[14] GH's objection to Yarnall's Declaration is meritless. Plaintiffs offered GH the opportunity to inspect all Tiffin computers and devices in exchange for GH giving

9

the single late-night click was caused by a Manan Ventures employee, GH had no basis to believe that a single late-night click by an unidentified restaurant employee could bind Mt. Airy to a modified contract requiring arbitration. *Wargel v. First National Bank*, 460 N.E.2d 331, 334 (Ill. App. Ct. 1984) (must show basis for specific contracting authority). GH cannot refute that it dealt exclusively with Kelly on all GH contracting matters. *See* Emails attached to Ex. 39 of Ford Sur-Reply Decl.

### E. The Purported OrderHub Clickwrap Agreement

GH's new OrderHub clickwrap theory is meritless. First, the OrderHub *software application* was decommissioned in early 2016, if not earlier. Second, the purported clickwrap agreement from 2013 related to OrderHub software application never contained an arbitration clause. #32-4 (Kokos Tr. 29:1–8); #32-18. GH's representatives also admit they have no way of knowing who, if anyone, "accepted" the OrderHub terms. #32-4 (Kokos Tr. 35:23–24, 204:16–18, 205:9–15); #32-23 (Young Tr. 71:17–72:1). Apparently it is unclear whether the set up process in the 2015 user guide (which required assent to a clickwrap), was even in place in 2013. A 2013 guide was requested, but not produced. Even if GH could prove that Plaintiffs clicked "I Accept" the OrderHub application terms, the clickwrap did not "adequately

---

Plaintiffs' experts the opportunity to inspect GH's databases, analytics and legacy system. #28-61 at 5; #32-2. GH declined. *Id.* GH, therefore, cannot complain that it had no opportunity to inspect Plaintiffs' computers. GH cannot admonish Plaintiffs for not conducting a forensic review of Plaintiffs' computers, #36 at 12, and then object.

communicate all the terms and conditions of the agreement, and whether the circumstances support the assumption that the purchaser receives reasonable notice of those terms." *Sgouros*, 817 F.3d at 1034 ("No court has suggested that the presence of a scrollable window containing buried terms and conditions of purchase or use is, in itself, sufficient for the creation of a binding contract, and we have no reason to think that Illinois would be the first.").[15] GH does not even attempt to discuss *Sgouros* or *Specht*. Here, the scrollable clickwrap concealed the fact that GH was seeking to give itself power to unilaterally modify OrderHub terms and failed to notify Plaintiffs that GH was seeking to modify the terms of their operative contracts through Orderhub software terms (or through the terms of the other two food ordering systems: GrubCentral and GFR). On the contrary, as drafted the OrderHub software application terms are limited to the use of the software and services rendered through the software. GH seeks to unlawfully expand the scope of its clickwrap without basis.

F. **GH's Arbitration Clauses Do Not Apply Retroactively**

The Court should reject GH's 'gotcha' litigation tactic that Plaintiffs' use of GH's services after the filing of GH's motion on March 6, 2019 binds them to arbitrate the dispute. The myriad online terms that GH is chaotically trying to

---

[15] In *Sgouros* the court rejected a scrollable window clickwrap where a key term was located at the bottom of the scrollable terms. *Sgouros*, 817 F.3d at 1035–36; *Specht*, 306 F.3d at 29 ("[A] consumer's clicking on a download button does not communicate assent to contractual terms if the offer did not make clear to the consumer that clicking on the download button would signify assent to those terms.").

assemble into something resembling a coherent contract expressly state that Plaintiffs may "reject" proposed changes to the dispute resolution procedures. #28-20 at 16 and #28-29 at 15 ("you may reject any such change by providing [GH] written notice"). Plaintiffs did so when they filed their timely opposition. Also, GH's contention that the clauses are retroactive is belied by the terms it seeks to enforce. #15-21, 16 ("Grubhub reserves the right to change this 'Dispute Resolution' section, but any such changes **will not apply to disputes arising before the effective date of such amendment**.").[16] The GFR terms are limited to arbitration of "claims and disputes arising out of *this agreement*" which courts consistently interpret as meaning no retroactive application to prior agreements.[17] #28-21 at 11, 28-31 at 13. GH's motion-as-notice argument has no merit but even if it did, the Court should sever and allow claims arising before March 6, 2019 to proceed before this Court.

---

[16] *See* #28-29 at 13 ("Any disputes under this Agreement will be governed by the version of Agreement [*sic*] in effect at the time of the first event which gave rise to the dispute."); #28-29 at 15 ("Grubhub reserves the right to change this 'Dispute Resolution' section, but any such changes will not apply to disputes arising before the effective date of such amendment.").

[17] *Herzfeld v. 1416 Chancellor*, 2015 WL 4480829, at *4 (E.D. Pa. July 22, 2015) ("The 2013 Agreement cannot be applied retroactively because it only applies to any dispute arising out of 'this agreement.'"); *Wetzel v. Baldwin*, 1999 WL 54563, at *4 (E.D. Pa. Jan. 29, 1999) ("Claims filed prior to implementation of the CDRP are clearly outside the scope of the mandatory arbitration provisions as there is no retroactive language in the Defendant's CDRP."); *Austin Freight Sys. v. West Wind Logistics*, 2019 WL 2088056, at *3-4 (N.D. Ill. 2019) (declining to apply arbitration clause retroactively; clause limited to claims under '*this* Agreement.')(quoting *TradeComet.com v. Google*, 435 F. App'x 31, 34 (2d Cir. 2011)).

                                        Respectfully submitted,

                                        */s/ Catherine Pratsinakis*
                                        Catherine Pratsinakis, Esq.
                                        (PA ID# 88086)
                                        Timothy J. Ford, Esq.
                                        (PA ID# 325290)
                                        DILWORTH PAXSON LLP
                                        1500 Market Street, Suite 3500E
                                        Philadelphia, PA 19102
                                        Telephone:  (215) 575-7000
                                        Facsimile:  (215) 575-7200
                                        cpratsinakis@dilworthlaw.com
                                        tford@dilworthlaw.com

                                        *Attorneys for Plaintiffs*

Dated:  June 13, 2019