## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TIFFIN EPS, LLC *and* TIFFIN MOUNT AIRY, LLC, *on behalf of themselves and all others similarly situated*,

         Plaintiffs,

    v.

GRUBHUB INC.,

         Defendant.

No. 2:18-cv-05630-PD

## DEFENDANT GRUBHUB INC.'S SUPPLEMENTAL BRIEF
## SUPPORTING ITS RENEWED MOTION TO COMPEL ARBITRATION

Defendant Grubhub Inc. submits this supplemental brief supporting its renewed motion to compel arbitration (ECF 28) for the limited purpose of responding to arguments and authorities newly raised in Plaintiffs' surreply ("Surreply") (ECF 38).

*First*, Grubhub's contracts with Plaintiffs are not "browsewrap," as Plaintiffs now suggest. Surreply 2–3. They are *written* contracts, signed in 2011. GH Br. 3–4; ECF 28-4, 28-5. Each expressly incorporates the GH.com ToUs and directs Plaintiffs to Grubhub's website to view those terms. *Id.* By directing Plaintiffs to a website that contained a link to the terms, either at the bottom of the page or later in the second paragraph, the contracts provided sufficient direction. *See Schwartz v. Comcast*, 256 F. App'x 515, 518–20 (3d Cir. 2007) (the "terms of the contract were available to Schwartz via the web site, and thus they are binding, despite the fact that he

was unaware of them"); *One Beacon Ins. Co. v. Crowley Marine Servs.*, 648 F.3d 258, 263, 268, 266–71 (5th Cir. 2011) (enforcing terms that were not at a specific URL but required sifting through several drop down menus because a "reasonably prudent person should have seen them"); GH Br. 12–13; GH Reply 1–2.  Plaintiffs' browsewrap cases (new and old) are irrelevant here because they do not involve written, signed agreements.  Surreply 3–4 n.9; *see Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (distinguishing online "browsewraps" from other agreements because, for example, they do "not require the user to expressly assent").

*Second*, Plaintiffs are also bound by their agreement to the OrderHub ToUs. Plaintiffs affirmatively clicked "accept" to those terms in 2013 when activating their OrderHub tablets.  GH Br. 4–8, 15–17; GH Reply 4–7.  Plaintiffs do not dispute these facts, but rather newly speculate that the 2015 OrderHub user guide might not reflect the process that existed in 2013.  Surreply 10–11.  But Ms. Kokos stated in her May 31, 2019 declaration that the screenshot was "[a]n image of the OrderHub screen that existed in 2013."  ECF 28-3 ¶ 24.  There is no contrary evidence.  Plaintiffs' attempt to establish "metaphysical doubt" does not create a genuine dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Plaintiffs also newly claim the OrderHub ToUs were not sufficiently obvious. Surreply 10–11.  But the screenshots that Grubhub submitted demonstrate the ToUs were clearly displayed, unlike in the cases cited by Plaintiffs.  *Compare* GH Br. 5,

*with Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1035 (7th Cir. 2016) (unlike here, the website "contained no clear statement that [plaintiff's] purchase was subject to *any* terms"), *and Specht v. Netscape Comms. Corp.*, 306 F.3d 17, 23 (2d Cir. 2002) (unlike here, information about terms required scrolling past button to download software).  In fact, *Sgouros* recognized that, under Illinois law, an agreement can be formed "by placing the agreement, or a scroll box containing the agreement, or a clearly labeled hyperlink to the agreement, next to an 'I Accept' button that unambiguously pertains to that agreement."  817 F.3d at 1036.  That is exactly what Grubhub did with the OrderHub ToUs:  it included them directly above the statement, "I hereby agree to be bound to the Restaurant Application Terms of Use and Release of Liability," and directly above the "I Accept" button.  GH Br. 5; ECF 28-21.

*Third*, Plaintiffs are also bound by Grubhub's modifications to the OrderHub ToUs in 2016, which added an arbitration and class waiver provision.[1]  When accepting the OrderHub ToUs, Plaintiffs agreed Grubhub could modify them "at any

---

[1] Plaintiffs argue, for the first time in a footnote in their surreply, that the arbitration agreements are unconscionable.  Surreply 5 n.10.  But the consumer cases they cite are inapposite.  *Razor* involved a contract that was not disclosed until *after* a purchase, 854 N.E.2d 607, 622–23 (Ill. 2006), unlike here, where Plaintiffs undisputedly had access to the ToUs before they started using Grubhub.  *Kinkel* rejected class waiver, and is no longer good law after *AT&T v. Concepcion*, 563 U.S. 333 (2011).  And *Frank's Maintenance* involved a contract where a provision pointing to the disputed clause had been "stamped over, indicating that [it] was irrelevant"—nothing like here, where the incorporation of the GH.com ToUs was clear and the GFR ToUs are located on nearly every GFR page.  408 N.E.2d 403, 411 (Ill. App. 3d 1980).

time without prior notice." GH Br. 4–8, 15–17; GH Reply 4–7. Unilateral modifi-

cations to contracts are enforceable if the right is reserved and the other party is on

reasonable notice. *See Hammarquist v. United Cont'l*, 809 F.3d 946, 949–50 (7th

Cir. 2016) (no breach where defendant could "modify the program benefits at any

time, with or without notice"); *Lebowitz v. Dow Jones & Co.*, 847 F. Supp. 2d 599,

604 (S.D.N.Y. 2012) (unilateral modification binding if reasonable), *aff'd*, 508 F.

App'x 83 (2d Cir. 2013).

Indeed, a "unilateral right to modify [a] contract by posting a new one" is binding

on "internet-savvy corporate parties that entered a contract on the internet and agreed

to make changes through the internet." *Margae, Inc. v. Clear Link Techs., LLC*,

2008 WL 2465450, at *7 (D. Utah June 16, 2008); *see One Beacon*, 648 F.3d at 266–

71 (reasonable notice where terms "at all times available" online for "internet savvy"

"commercial entities"). And courts routinely enforce modifications in such circum-

stances. *See Patco Constr. Co. v. People's United Bank*, 2011 WL 2174507, at *25

(D. Me. May 27, 2011) (commercial developer bound by modified agreement posted

online), *rev'd in part on unrelated grounds*, 684 F.3d 197 (1st Cir. 2012); *Harold H.*

*Huggins Realty, Inc. v. FNC, Inc.*, 575 F. Supp. 2d 696, 707–08 (D. Md. 2008)

(amendments to contract between appraisers and appraisal service posted on website

per modification clauses of earlier agreements effective); *MySpace, Inc. v. TheG-*

*lobe.com, Inc.*, 2007 WL 1686966, at \*9–10 (C.D. Cal. Feb. 27, 2007) (binding "sophisticated business entity whose area of expertise involves Internet related technology" to contract modifications made by posting new agreement on website).

Here, it is undisputed that Plaintiffs are sophisticated business entities.  Tiffin runs a chain of restaurants with their own online ordering system utilizing at least three separate sets of internet terms of use.  GH Br. 3, 8.  Tiffin reserves the right to modify its own website terms "without notice" and has in fact done so.  *Id.*  For commercial entities like Plaintiffs that impose online terms on their own customers, posting the modified GFR ToUs on the GFR platform (which includes links on nearly every page) was more than enough on its own.  GH Br. 8.  Indeed, that is precisely what Plaintiffs agreed to.  GH Br. 5–6 (OrderHub ToUs pointed to Grubhub.com and stated "continued use . . . following modifications" was binding).

But here there was even more notice, as it is also unrefuted that Grubhub accounts associated with Tiffin users clicked on the GFR ToUs at least nine times since April 2018.  GH Br. 6–7, 16–17; GH Reply 7–9.  Plaintiffs' focus on just one of the clicks by an account associated with Mt. Airy, speculating that it could have been "literally anyone walking by," falls short.  Surreply 9–10.  Not only does speculation not create a genuine dispute, *see Scott*, 550 U.S. at 380, but "[p]assword-sharing . . . cannot be used as a back door to undermine the contractual landscape governing internet commerce," *Nicosia v. Amazon.com, Inc.*, 2019 WL 2482674, at \*12 (E.D.N.Y. June

14, 2019).  As such, the unrefuted evidence that Grubhub accounts with administra-

tor rights for Tiffin restaurants (including an account specifically associated with

Mt. Airy and Tiffin's CEO Narula) clicked on the GFR ToUs binds Plaintiffs.  GH

Br. 16–17.  Those accounts conducted *all* aspects of Tiffin's business on GFR, and

Plaintiffs agreed they would be bound by "all activities that occur under [their] pass-

word or account, and for any other actions taken in connection with the account or

password."  GH Reply 10-11; GH Br. 21–22.  Plaintiffs cannot hide from these un-

disputed facts.[2]

    Therefore, Plaintiffs are bound by their agreements and Grubhub's modifications.

Plaintiffs' newly cited cases, *Rodman* and *Douglas*, are irrelevant, as they both in-

volved consumers, not commercial entities.   Surreply 4–5; *Rodman*, 2015 WL

604985, at *1 (grocery store customers); *Douglas*, 495 F.3d at 1065 (telephone sub-

scribers).  And the animating principle of these cases—that it would be "fairly cum-

bersome" to require consumers to "check the contract every day for possible

changes," *Douglas*, 495 F.3d at 1065, does not apply here, in the context of busi-

---

[2] Nor can Plaintiffs rely on Yarnall's declaration, which does not establish a genuine dispute.  Surreply 9–10.  As Grubhub pointed out in its reply, Yarnall failed, among other things, to explain where he looked on the devices that he reviewed and whether there was any internet browsing data at all.  GH Reply 8–9.  Plaintiffs have not responded to those deficiencies (or explained why they failed to produce the underlying data as Grubhub requested on May 20).  *See id.*

nesses that agreed to contracts directing them to the websites and for whom "moni-toring for updates is not unduly burdensome," *Margae*, 2008 WL 2465450, at \*7. Moreover, there was no evidence in *Rodman* or *Douglas* that plaintiffs had *actually clicked* on the ToUs like Plaintiffs did here.

*Fourth*, Plaintiffs newly cite the "Change" clause within the GH.com ToUs arbitration provision to argue that it allows them to reject changes and that changes do not apply retroactively. Surreply 11–12. But that clause addresses changes to an existing arbitration provision, not to Plaintiffs' agreement to the addition of the provision in the first place. ECF 28-32 ("Grubhub reserves the right to change this 'Dispute Resolution' section"). In fact, the clause contemplates that Plaintiffs would still be bound to arbitrate "in accordance with the provisions of this 'Dispute Resolution' section as of the date you first accepted this Agreement." ECF 28-32. Plaintiffs' newly cited cases are inapposite on this point because each involved an arbitration provision that applied only to the agreement in which the provision appeared. Here, the agreements are broader: the GFR ToUs expressly include the "restaurant agreement between you and Grubhub," ECF 28-34, and the GH.com ToUs cover claims "that in any way relate to your use of the Sites," ECF 28-32.

For these reasons, the Court should grant Grubhub's motion to compel arbitration and stay or dismiss this action.

June 18, 2019                              /s/ Rebekah B. Kcehowski
                                          Rebekah B. Kcehowski
                                          James W. Carlson
                                          JONES DAY
                                          500 Grant Street, Suite 4500
                                          Pittsburgh, PA 15219
                                          T: (412) 391-3939
                                          F: (412) 394-7959
                                          rbkcehowski@jonesday.com
                                          jamescarlson@jonesday.com

                                          *Attorneys for Defendant*
                                          *Grubhub Inc.*

## **CERTIFICATE OF SERVICE**

I certify that, on June 18, 2019, I electronically filed this document with the Clerk

of the Court using CM/ECF and served it on counsel of record identified through

transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Rebekah B. Kcehowski*
Rebekah B. Kcehowski
