**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TIFFIN EPS, LLC,** *et al.*, : | |
|         **Plaintiffs,** : | |
| : | |
|    **v.** : | Civ. No. 18-5630 |
| : | |
| **GRUBHUB INC.,** : | |
|         **Defendant.** : | |
| : | |

## ORDER

On February 18, 2018, Plaintiffs Tiffin Elkins Park ("EPS") and Tiffin Mount Airy ("MA") brought this putative class action against GrubHub, each alleging breach of contract, conversion, and deceptive business practices. (Compl., Doc. No. 1.) On December 9, 2019, I granted GrubHub's Motion to Compel and directed Plaintiffs to arbitrate their claims. (Doc. No. 46.) EPS now moves to confirm the Arbitration Award, and MA seeks leave to file a Motion to Invalidate the Arbitration Agreement. (Doc. Nos. 52, 56.) GrubHub moves to dismiss the Complaint for failure to prosecute. (Doc. No. 53.) Because MA has simply refused to arbitrate, it has no right to proceed here. R&C Oilfield Servs. LLC v. Am. Wind Transp. Grp. LLC, ___ F.4th ___, 2022 WL 3350590, at * 5 (3d Cir. Aug. 15, 2022). Accordingly, I will: dismiss MA's claims; deny MA leave to move to invalidate the Arbitration Agreement; and confirm the Arbitration Award as to EPS.

    **I.**     **FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**

    A.  <u>GrubHub and Plaintiffs' Commercial Relationships Lead to Litigation</u>

EPS and MA are local restaurants both owned by Tiffin.com, Inc.; Manish Narula is the Present and CEO of Tiffin.com. (Compl. ¶¶ 12, 13, 46.) GrubHub is an online platform for restaurant pick-up and delivery orders that connects "more than 80,000 restaurants with diners in more than 1,600 cities across the United States." (Compl. ¶ 15, Doc. No. 1.) Restaurants pay

GrubHub a commission on food orders that are made through the GrubHub platform. (Id. at ¶ 22.) GrubHub "also charges commissions on food orders taken over the telephone," but its "contracts require that an actual food order must be placed through GrubHub.com for any commission obligation to arise." (Id. at ¶ 24.) "GrubHub creates a local telephone number for each restaurant" that is forwarded directly to the restaurant. (Id. at ¶ 28.) GrubHub "advertises that number on the restaurant's microsite on the GrubHub platform." (Id.) If a consumer calls the restaurant using this number and the call lasts longer than 45 seconds, GrubHub assumes that the consumer placed an order and, without verifying that a food order was actually placed, charges that restaurant a commission. (Id.)

In their 2018 Complaint, Plaintiffs allege that they and other putative class members "never agreed to pay a commission or advertising fee for phone calls that did not result in an 'order'"—which they define as "food and beverage subtotal, including delivery fee, placed through GrubHub.com to [the] restaurant." (Id. at ¶ 83.) They thus bring claims for breach of contract and conversion. (Id. at ¶¶ 82-95.) Plaintiffs further allege that "GrubHub engaged in unfair and deceptive acts and practices" in violation of Illinois law. (Id. at ¶¶ 96-101.)

On March 6, 2019, GrubHub moved to compel arbitration. (Doc. No. 15.) I denied the Motion without prejudice and allowed the Parties to conduct limited discovery regarding arbitrability. (Doc. No. 18.) Once that discovery was completed, GrubHub renewed its Motion to Compel Arbitration. (Doc. No. 28.) Plaintiffs argued there was no valid agreement to arbitrate.

B. Plaintiffs' Contracts with GrubHub

On April 23, 2011, Plaintiffs separately entered into contracts with GrubHub. (Kokos Decl. ¶ 18, Doc. No. 28-3.) Both contracts, which are governed by Illinois law, included a

2

paragraph incorporating the terms of use found at GrubHub.com, which were "subject to change." (Kokos Decl. Exs. 1-2.) If such a change is made, the restaurants would be bound by those new terms through their "continuing participation and receipt of orders." (Kokos Decl. Exs. 1-2.) EPS' contract (but not MA's contract) required GrubHub to give 30 days advance notice of any change to the GrubHub.com Terms of Use. (Kokos Decl. Exs. 1-2.) Because both contracts explicitly referred to the GrubHub.com Terms of Use, and stated that Plaintiffs were bound by those terms, the Terms of Use were incorporated into Plaintiffs' 2011 contracts. See Rosenblum v. Travelbyus.com Ltd., 299 F.3d 657, 664 (7th Cir. 2002) ("Generally, one instrument may incorporate another instrument by reference. The contract must show an intent to incorporate the other document and make it part of the contract itself.") (internal citations and quotations omitted).

    C.  Agreement to Arbitrate

At the time Plaintiffs and GrubHub entered into these contracts, neither the contracts themselves nor the GrubHub.com Terms of Use included an arbitration provision. (Kokos Decl. ¶ 28; Narula Decl. ¶ 6.) On April 6, 2016, GrubHub modified its GrubHub.com Terms of Use by, *inter alia*, adding a clause requiring AAA arbitration and a class waiver provision. (Kokos Decl. ¶ 28.) In June 2018, GrubHub again updated its Terms of Use, which retained the arbitration clause. (Kokos Decl. ¶ 36.) Plaintiffs argued that it had no notice of such changes to the GrubHub.com Terms of Use and thus there was no agreement to arbitrate. (Doc. Nos. 32, 38.)

MA's contract allowed GrubHub to modify the GrubHub.com Terms of Use without any formal notice and MA agreed to be bound by such changes by continued use of GrubHub's services. (Kokos Decl. Ex 1); See Hammarquist v. United Cont'l Holdings, Inc., 809 F.3d 946,

3

650 (7th Cir. 2016) (program rules allowed United to modify program benefits without notice). EPS' contract required 30 days' notice of any modification to the GrubHub.com Terms of Use. (Kokos Decl. Ex. 2.) The GrubHub.com Terms of Use—which EPS could access—stated the effective date, April 6, 2016 or June, 4, 2018. (Kokos Decl. Ex. 20, Doc. No. 28-23; Kokos Decl. Ex. 29, Doc. No. 28-32.) EPS continued to use GrubHub's services 30 days after both the April 2016 and June 2018 updates to the Terms of Use. (Kelly Dep. Tr. May 18, 2019, 87:24-88:4, Doc. No. 28-55.) EPS thus had notice of the arbitration requirement and assented to that requirement—as provided in its 2011 contract—by continuing to use GrubHub's services. See Taylor v. Samsung Elecs. Am., Civ. no. 16 C 50313, 2018 WL 3921145 (N.D. Ill. Aug. 16, 2018) (A "company's posting of its terms and conditions on its website provides users of its products a reasonable opportunity to read them."). Because Plaintiffs had agreed to be bound by the GrubHub.com Terms of Use, and in view of the liberal policy favoring arbitration, I ruled that Plaintiffs were contractually obligated to arbitrate their dispute, and granted GrubHub's Motion to Compel Arbitration. (Doc. No. 46.) See Chassen v. Fidelity Nat'l Fin., Inc., 836 F.3d 291, 304 (3d Cir. 2016) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)). I stayed the litigation before me pending arbitration. (Doc. No. 46); 9 U.S.C. § 3.

### D. Plaintiffs Resist Arbitration

On December 23, 2019, Plaintiffs moved for reconsideration, which I denied. (Doc. Nos. 47, 48.) On January 8, 2020, Plaintiffs asked me to certify my Order compelling arbitration for interlocutory appeal; I denied their request. (Doc. Nos. 49, 50.) On April 2, 2020, Plaintiffs filed a petition for writ of mandamus, asking the Third Circuit to "vacate [my] Order staying the action and compelling arbitration of [their] claims . . . and declare that [their] claims are not

subject to compulsory arbitration." In re Tiffin EPS, LLC, C.A. No. 20-1714, Dkt. No. 1 (3d Cir. Apr. 2, 2020). On May 29, 2020, after full briefing, the Third Circuit denied Plaintiffs' request for oral argument and denied their petition. (Doc. No. 51.)

### E. EPS Goes to Arbitration; MA Does Not

On July 7, 2020, EPS filed a Demand for Arbitration before the AAA, alleging breach of contract, conversion, and violations of the Illinois Consumer Fraud Act and Deceptive Business Practices Act. (Arbitration Award, Doc. No. 52-3.) On August 12, 2020, GrubHub filed with the AAA an Answer and a Counterclaim for unjust enrichment. (Id. at 4, 15.) MA refused to arbitrate its claims.

On July 22, 2021, the Arbitrator, the Honorable Barbara Byrd Wecker, rejected all EPS' claims and GrubHub's Counter Claim. (Id. at 1, 15-16.) Because the Arbitrator ordered that the expenses of Arbitration were to be shared and each Party was to bear its own counsel fees, she awarded GrubHub $15,311.25, representing the portion of the arbitration fees GrubHub had paid and were now owed by EPS. (Id. at 1, 16.)

### F. The Instant Proceedings

On March 18, 2022, EPS moved before me to confirm the Arbitration Award. (Doc. No. 52.) On March 29, 2022, GrubHub opposed the Motion and moved to dismiss the 2018 Complaint—including both EPS' and MA's claims. (Doc. No. 53.) On April 12, 2022, MA moved to lift the stay I had imposed and for leave to file a Motion to Invalidate the Arbitration Agreement. (Doc. No. 56.) The matter is fully briefed. (Doc. Nos. 52, 53, 55, 56, 57, 58, 60.)

## II.  MA ABANDONS ITS STATUS AS A PARTY HERE

Having failed to convince me (or the Third Circuit) that they should not be required to arbitrate their claims against GrubHub before they could proceed in this Court, EPS and MA

chose very different paths. Complying with my ruling, EPS went to arbitration, and now asks me to confirm the Arbitration Award, presumably so that it may appeal that unfavorable decision. If EPS prevails on appeal, the matter will likely be remanded to this Court, where EPS can pursue its breach of contract and related claims. Remarkably, MA, having refused to arbitrate, nonetheless seeks to proceed before me, seeking leave again to raise its unsuccessful challenge to the arbitration agreement. If successful, MA presumably would then proceed before me on its breach of contract and related claims. Should I dismiss its claims, MA presumably would appeal that "final" Order of dismissal and again try to persuade the Circuit that there was no agreement to arbitrate. It is difficult to accept that MA is acting in good faith. MA cannot alter my ruling (or that of the Circuit) by simply ignoring it. As I explain below, in refusing to arbitrate, MA has chosen to give up the judicial venue in which it now seeks to proceed.

### III.   MOTION TO DISMISS

GrubHub asks me to dismiss Plaintiffs' Complaint in its entirety for failure to prosecute. (Doc. No. 53.) Only MA has failed to prosecute, however.

I may, upon a defendant's motion, dismiss the action "[i]f the plaintiff fails to prosecute or to comply with . . . a court order." Fed. R. Civ. P. 41(b). A dismissal with prejudice is a "drastic sanction[]." Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984). Accordingly, I must consider the following factors:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

Id. at 868 (emphasis omitted). "None of the Poulis factors is alone dispositive, and . . . not all of the factors need to be satisfied to justify dismissal of a complaint for lack of prosecution."

Hildebrand v. Allegheny Cnty., 923 F.3d 128, 132 (3d Cir. 2019).

GrubHub argues that although EPS made an Arbitration Demand and moved for confirmation of the Arbitration Award, I should dismiss both EPS' and MA's claims for failure to prosecute because they have "pursued a joint strategy in this case from the very beginning." (Doc. No. 57 at 4.) It urges that Plaintiffs defined themselves collectively, alleged the same facts, are jointly represented by the same counsel, and are owned by the same parent company. (Id. at 4-5.) Yet, as I have discussed EPS has not failed to prosecute: it arbitrated its claims separately as required by the arbitration agreement. (See Doc. No. 15-22 at 14 ("[U]nless both you and GrubHub otherwise agree in writing, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of class or representative proceeding.").) Accordingly, I will deny GrubHub's Motion as to EPS.

As I have also discussed, in the some two and a half years since I ordered the Parties to arbitrate, MA has taken no action to prosecute its claims against GrubHub. To the contrary, in filings generating more heat than light, MA has simply refused to go to arbitration. (See Doc. No. 47-1 at 2; Doc. No. 56-1 at 7; Doc. No. 56-2 at 8.) MA nonetheless now argues that dismissal of its claims is not warranted because it "has violated no deadlines in this case, court-ordered, statutory, or otherwise." (Doc. No. 56-1.) MA urges that that arbitration would be "prohibitively expensive," and argues that the arbitration agreement is unenforceable. (Doc. No. 56-2 at 8-9.) As the Third Circuit very recently held, however, these concerns "do[] not excuse it from . . . complying with the order." R&C Oilfield Servs. LLC v. Am. Wind Transp. Grp. LLC, ___ F.4th ____, 2022 WL 3350590, at * 5 (3d Cir. Aug. 15, 2022). In its contemporaneously filed Motion for Leave to file a Motion to Invalidate the Arbitration Agreement, MA again states that "it has no intention of arbitrating its claims against GrubHub." (Doc. No. 56-2 at 8.) This

7

"clear statement" alone is sufficient to warrant dismissal. R&C Oilfield, ___ F.4th ___, 2022 WL 3350590, at *4 ("[A] district court need not balance the Poulis factors before dismissing a case with prejudice when a litigant willfully refuses to prosecute after receiving an adverse ruling."). Moreover, as I explain below, the Poulis factors weigh in favor of dismissal.

The first Poulis factor—the extent of MA's personal responsibility—favors dismissal. I must "evaluate[] the degree of responsibility in light of the party's relationship to counsel or the litigation itself." Elbaum v. Thomas Jefferson Univ. Hosps., Inc., Civ. No. 13-1538, 2014 WL 4309004, at *3 (E.D. Pa. 2014). When counsel's actions are the cause of the delay, this weighs against dismissal because the "client cannot always avoid the consequences of the acts or omissions of its counsel." Poulis, 747 F.2d at 868; see also Dunbar v. Triangle Lumber and Supply Co., 816 F.2d 126, 128-29 (3d Cir. 1987) (vacating involuntary dismissal because there was no evidence that the plaintiff knew of "counsel's defaults or otherwise bore some personal responsibility for his professional irresponsibility"). MA's refusal to arbitrate was not counsel's decision. MA's counsel (which also represents EPS) took EPS' claims to arbitration. MA candidly (indeed, defiantly) states that it is "personally responsible" for failing to submit its claims to arbitration. (Doc. No. 56-1 at 6.) This factor weighs strongly in favor of dismissal.

The second factor—prejudice to GrubHub—does not require a showing of "'irremediable harm' for the prejudice to weigh in favor of dismissal." Hildebrand, 923 F.3d at 134 (citing Sarborough v. Eubanks, 747 F.2d 871, 876 (3d Cir. 1984). MA's claims arise from an April 2011 contract and are based on its allegations that "[f]or at least seven years, if not longer, GrubHub has been withholding commissions for sham telephone food orders." (Compl. ¶¶ 1, 48.) Although GrubHub points to "the inevitable dimming of witnesses' memories," such "prejudice" is the result of GrubHub's insistence on arbitration, which delayed the Court's

8

resolution of this dispute.  Hildebrand, 923 F.3d at 134.  Accordingly, this factor weighs against dismissal.

"Conduct that occurs one or two times is insufficient to demonstrate a 'history of dilatoriness.'"  Briscoe v. Klaus, 538 F.3d 232, 261 (3d Cir. 2008) (quoting Scarborough, 747 F.2d at 875).  "Generally, the onus is on the party seeking damages to 'accelerate the arbitration process,' and a lack of 'substantive excuse' for a 'prolonged dormancy' reflects poorly on the plaintiff."  Elbaum, 2014 WL 4309004, at *3.  I must evaluate MA's "delay" in demanding arbitration "in light of its behavior over the life of the case."  Adams v. Trs. of N.J. Emps.' Pension Tr. Fund, 29 F.3d 863, 875 (3d Cir. 1994).  Once again, after I ruled that its claims were subject to arbitration, MA apparently decided it would resist that ruling—unsuccessfully.  Remarkably MA now states that it will proceed to arbitrate or pursue its claims in this Court only after EPS' "imminent appeal" of my Order compelling arbitration is decided.  (Doc. No. 56-1 at 7.)  Because MA has thus plainly delayed resolution of this matter, this factor weighs in favor of dismissal.

The fourth factor—MA's willfulness—is well documented.  Once again, in the two and a half years since I ordered arbitration, MA has simply refused to submit its claims to arbitration.  (See Pls.' Br. Mot. for Recons., Doc. No. 47-1 at 2 ("Plaintiffs do not intend to arbitrate their dispute with GrubHub.").)  In opposing GrubHub's Motion to Dismiss, MA acknowledges that its decision not to submit its claims to arbitration was a deliberate, willful decision.  (Doc. No. 56-1 at 7.)  Accordingly, this factor weighs strongly in favor of dismissal.

MA argues that the fifth factor—effectiveness of alternative sanctions—weighs against dismissal because "there are many less extreme measures available to the Court to compel Plaintiff's compliance," including setting "a reasonable deadline by which [it] must arbitrate its

9

claims." (Doc. No. 56-1 at 7.)  This argument is belied by MA's statement that "it has no intention of arbitrating its claims against GrubHub." (Doc. No. 56-2 at 8.)  Accordingly, this factor weighs strongly in favor of dismissal.

In weighing the sixth factor—the meritoriousness of the MA's claims—the standard is "moderate." Hildebrand, 923 F.3d at 137.  Here, the Arbitrator found EPS' claims—identical to those MA seeks to bring— to be meritless.  (Arbitration Award 1, 15-16.)  Moreover, MA acknowledges that its "contracts with GrubHub, though not identical, are substantially similar" to those between EPS and GrubHub.  (Doc. No. 56-2 at 9.)  MA provides no argument that its arbitration outcome would be different than EPS'.  Accordingly, this factor weighs in favor of dismissal.

On balance, the Poulis factors thus weigh in favor of dismissal of MA's claims notwithstanding the "strong policy favoring decisions on the merits," especially because the Arbitrator has decided EPS' identical claims on the merits.  Hildebrand, 923 F.3d at 132.  MA has explicitly and repeatedly refused to submit its claims to arbitration and defiantly states that it will continue to do so.   (See Doc. No. 47-1 at 2; Doc. No. 56-2 at 8.)  In these circumstances, I will dismiss MA's claims for failure to prosecute.  R&C Oilfield, ___ F.4th at ____, 2022 WL 3350590, at * 5 (affirming dismissal for failure to prosecute after the plaintiff's "inaction for more than a year and clear statement that it had no plans to pursue arbitration.").

MA's Motion to Lift the Stay and for Leave is now moot.

**IV.    MOTION TO CONFIRM ARBITRATION AWARD**

EPS moves to confirm the July 22, 2021 Arbitration Award.  (Doc. No. 51.)  Except in limited circumstances, the FAA requires the district court to confirm an arbitration order for an award that has not been vacated, modified, or corrected.  Teamsters Loc. 177 v. United Parcel

Serv., 966 F.3d 245, 248 (3d Cir. 2020); 9 U.S.C. § 9. "[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." Teamsters Loc. 177, 966 F.3d at 248. There is a "strong presumption . . . in favor of enforcing arbitration awards." Brentwood Med. Assoc. v. United Mine Workers of Am., 396 F.3d 237, 241 (3d Cir. 2005). Accordingly, I may decline to confirm only when: (1) the award was procured through fraud or other undue means; (2) one or more of the arbitrators was partial or corrupt; (3) the arbitrators committed misconduct; or (4) the arbitrators exceeded their power. 9 U.S.C. § 10(a).

Neither EPS nor GrubHub suggests any irregularities in the AAA arbitration. (See Doc. Nos. 53, 55, 57.) Accordingly, I must confirm EPS' Arbitration Award. See Teamsters Loc. 177 v. United Parcel Serv., 966 F.3d 245, 248 (3d Cir. 2020); 9 U.S.C. § 9.

## V. CONCLUSION

**AND NOW**, this 31st day of August, 2022, upon consideration of Plaintiff Tiffin EPS' Motion to Confirm Arbitration (Doc. No. 52), Defendant's Response (Doc. No. 53), and Tiffin EPS' Reply (Doc. No. 55), and upon consideration of Defendant's Motion to Dismiss (Doc. No 53), Plaintiff Tiffin EPS' Response (Doc. No. 55), Plaintiff Tiffin MA's Response (Doc. No. 56), and Defendant's Reply (Doc. No. 57), and upon consideration of Plaintiff Tiffin MA's Motion to Lift Stay and for Leave to File Motion to Invalidate Arbitration Agreement (Doc. No. 56), Defendant's Response (Doc. No. 58) and Tiffin MA's Reply (Doc. No. 60), and all related submissions, it is hereby **ORDERED** that:

1. Defendant's Motion to Dismiss for Failure to Prosecute (Doc. No. 53) is **GRANTED in part** as follows:

    a. Defendant's Motion to Dismiss (Doc. No. 53) as to Plaintiff Tiffin EPS is

      **DENIED;**

    b. Defendant's Motion to Dismiss (Doc. No. 53) as to Plaintiff Tiffin MA is **GRANTED.** Tiffin MA's claims are **DISMISSED with prejudice;**

2. Plaintiff Tiffin EPS' Motion to Confirm Arbitration (Doc. No. 52) is **GRANTED** and the Award is **CONFIRMED;** and

3. Plaintiff Tiffin MA's Motion to Lift Stay and for Leave to File Motion to Invalidate Arbitration Agreement (Doc. No. 56) is **DENIED as moot.**

                                              **AND IT IS SO ORDERED.**

                                                    */s/ Paul S. Diamond*

                                                      Paul S. Diamond, J.